**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

RECEIVED

2006 JUL 20 P 2: 53

ROBERT BLANKENSHIP,            )

      **Plaintiff,**           )

v.                          )

**PFIZER, INC., BOEHRINGER
INGELHEIM PHARMACEUTICALS,
INC., DAVID ROHLING, KMART OF
MICHIGAN, INC., ART REDDING,
KELLI STRANGE, et al.,**

      **Defendants.**

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**CIVIL ACTION NO.**

2: 06 cv 648 - VPM

(Removed from the Circuit Court
of Barbour County, Alabama,
(Clayton Division) CV-06-040)

## NOTICE OF REMOVAL

Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") files this Notice of Removal of the civil action filed by plaintiff Robert Blankenship, which is currently pending in the Circuit Court for Barbour County, Alabama (Clayton Division), to the United States District Court for the Middle District of Alabama, Northern Division, pursuant to the provisions of 28 U.S.C. §1441, *et seq.* This case is properly removable on the basis of the following facts:

### I.    Introduction

1.    In this pharmaceutical products liability case, plaintiff Robert Blankenship claims he was injured by his ingestion of a prescription medication, Mirapex®, which was prescribed to treat his Parkinson's Disease. *Complaint, ¶¶ 14, 26.* Plaintiff has sued two out-of-state pharmaceutical manufacturers, BIPI and Pfizer Inc. ("Pfizer"). In addition, plaintiff has sued the pharmacy from which he allegedly filled his prescriptions for Mirapex®, Kmart of Michigan, Inc. ("Kmart"), and two of its pharmacists, Kelli Strange and Art Redding (hereinafter

01363647.1

"Pharmacy Defendants").[1]  Plaintiff has also sued an individual sales representative employed by BIPI named David Rohling.[2]

2.     Plaintiff has alleged claims against the pharmacy defendants and Rohling sounding in products liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligence, wantonness and common-law fraud. *Complaint, ¶¶ 27-48.*  Plaintiff claims that Mirapex® caused him to become a compulsive gambler, which led him to lose virtually all of his life savings. *Complaint, ¶¶ 25-26.*  Plaintiff alleges that all of the defendants knew about the supposed association between Mirapex® and compulsive behaviors, including compulsive gambling, and failed to warn users and treating physicians about these potential adverse consequences. *Complaint, ¶¶21-24.*

3.     Plaintiff's Complaint fails to distinguish between the allegations directed at BIPI and Pfizer, the pharmacy defendants and defendant Rohling.  The Complaint merely states, in conclusory fashion, that all of the defendants knew of the alleged association between Mirapex® and compulsive behaviors and failed to warn plaintiff and his physicians about those alleged risks.  The Complaint provides no factual or legal basis for recovery against the pharmacy defendants and Rohling.  As a result, the pharmacy defendants and Rohling have been fraudulently joined, and their citizenship should be disregarded for purposes of diversity

---

[1] Kmart was voluntarily dismissed by plaintiff, without prejudice, on July 13, 2006.  Plaintiff's Complaint does not identify which of the corporate defendants, if any, that Kelli Strange and Art Redding are employed by or associated with.  As set forth in their respective Affidavits, Strange and Redding are employees of Kmart. *July 18, 2006 Affidavit of Kelli Strange ("Strange Aff."), ¶ 2; July 18, 2006 Affidavit of Art Redding ("Redding Aff."), ¶ 3.*  A copy of Strange's Affidavit and Redding's Affidavit are attached hereto as Exhibits A and B, respectively.

[2] Plaintiff's Complaint incorrectly alleges that Mr. Rohling is an agent or employee of Pfizer. *Complaint, ¶ 4.*  As set forth in Rohling's Affidavit attached hereto, he is, and was during the relevant time frame, a BIPI employee. *July 19, 2006 Affidavit of David Rohling ("Rohling Aff."), ¶¶ 2-3.*  A copy of Rohling's Affidavit is attached hereto as Exhibit C.

2

jurisdiction. Because plaintiff has sued no other non-diverse defendant, and all other requisites of diversity jurisdiction have been met, removal to this Court is proper.

## II.    Timeliness of Notice of Removal

4.      On June 20, 2006, plaintiff filed this action in the Circuit Court for Barbour County, Alabama. BIPI was served with the Summons and Complaint on June 22, 2006. Upon information and belief, Pfizer and Kmart were also served with the Summons and Complaint on June 22, 2006. Upon information and belief, defendants Rohling and Redding were served with the Summons and Complaint on June 23, 2006. Upon information and belief, defendant Strange was served with the Summons and Complaint on June 26, 2006. A true and correct copy of the entire court file, including all process and pleadings served on BIPI, is attached hereto as Exhibit D.

5.      June 22, 2006 is the earliest date on which any defendant to this action received, "through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action is based." 28 U.S.C. §1446(b). This Notice of Removal is filed within 30 days of that date and, therefore, is timely filed. No previous application for removal has been made.

6.      The United States District Court for the Middle District of Alabama, Northern Division, embraces the county in which the state court action is now pending, and this Court is the proper venue for this action pursuant to 28 U.S.C. § 81(b)(1).

7.      This suit is an action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332, and is one that may be removed to this Court under the provisions of 28 U.S.C. § 1441. Removal under 28 U.S.C. § 1441 is appropriate in that there exists complete diversity of citizenship between plaintiff and all properly joined defendants in

01363647.1

the underlying cause, and, the amount in controversy exceeds $75,000, exclusive of interest and costs.

### III.    Citizenship of the Parties

8.    Upon information and belief, plaintiff Robert Blankenship is now, and was at the time of the filing of this action, a citizen and resident of the State of Alabama.

9.    Now, and at the time this action was commenced, BIPI was and is a Delaware corporation with its principal place of business in Ridgefield, Connecticut.

10.    Now, and at the time this action was commenced, Pfizer was and is a Delaware corporation with its principal place of business in New York City, New York.

11.    Upon information and belief, defendant Kmart is, and at the time this action was commenced, a Michigan corporation with its principal place of business in Troy, Michigan.[3]

12.    Upon information and belief, defendant Kelli Strange is, and at the time this action was commenced, a citizen and resident of the State of Alabama.

13.    Upon information and belief, defendant Art Redding is, and at the time this action was commenced, a citizen and resident of the State of Georgia.

14.    Now, and at the time this action was commenced, defendant David Rohling is a citizen and resident of the State of Alabama.

15.    Although plaintiff has named several fictitious defendants to this action, they should be disregarded for purposes of determining diversity of citizenship and the propriety of removal. *GMFS, LLC v. Bounds*, 275 F. Supp. 2d 1350, 1354-55 (S.D. Ala. 2003).

---

[3] As mentioned earlier, Kmart was dismissed from this case on July 13, 2006, so its citizenship is of no consequence to this Court's jurisdiction.

01363647.1

16.    As set forth below, Strange and Rohling have been fraudulently joined to this action.[4] Therefore, their citizenship must be disregarded for purposes of determining diversity jurisdiction.

## IV.    Fraudulent Joinder

17.    It is well-settled that "diversity jurisdiction 'cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Bloodsworth v. Smith & Nephew*, Civil Action No. 2:05CV 622-D, 2005 WL 3470337, at *3 (M.D. Ala. Dec. 19, 2005). Removal of this suit should not be thwarted by plaintiff's attempt to improperly join the pharmacy defendants and Rohling in order to destroy diversity jurisdiction. As the Supreme Court has stated, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court...." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

18.    Under Eleventh Circuit law, fraudulent joinder can be established in one of three ways:

> (1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant, or (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, or (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Here, there is no possibility that plaintiff can prove any of his claims against the pharmacy defendants or Rohling. Plaintiff, in order to meet his burden, must demonstrate that a possibility of recovery against the

---

[4] Defendant Redding, although not a fraudulently joined party because he is diverse from plaintiff, is due to be dismissed for the same reasons that defendant Strange is fraudulently joined. For simplicity's sake, Redding and Strange are referred to herein as the pharmacy defendants.

non-diverse defendants is reasonable, not merely theoretical. *Bloodsworth*, 2005 WL 3470337 at *4. "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (quoting *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004). Plaintiff cannot meet this burden with respect to his claims against the pharmacy defendants and Rohling.

### A.    Plaintiff's Complaint Fails to State a Basis for Recovery Against the Pharmacy Defendants.

19.    Plaintiff's Complaint fails to state any claim under which there is a reasonable basis to impose liability on the pharmacy defendants under Alabama law. In his Complaint, plaintiff asserts claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Count One), negligence (Count Two), wantonness (Count Three) and fraud (Count Four). *Complaint*, ¶¶ 27-48. Plaintiff alleges that the pharmacy defendants failed to warn plaintiff and his physician about the alleged association between Mirapex® and compulsive behaviors. Plaintiff's Complaint, however, does not allege that the pharmacy defendants improperly filled any Mirapex® prescriptions. Both defendants Strange and Redding have submitted Affidavits attached hereto in which they attest that to the extent they dispensed Mirapex® to plaintiff, they did so strictly in accordance with the prescription of his physician. *Strange Aff., ¶ 3; Redding Aff., ¶ 4.*

20.    Under Alabama law, when a pharmacist dispenses a prescription drug in accordance with the instructions of the prescribing physician, the pharmacist incurs no liability as a matter of law and is protected by the learned intermediary doctrine. The rule applies whether the pharmacist is sued under the AEMLD, a negligence theory or any other Alabama law. *Walls v. Alpharma USPD*, 887 So.2d 881 (Ala. 2004); *Lansdell v. American Home*

6

*Products Corp.*, 1999 WL 33548541 (N.D. Ala. Oct. 26, 1999); *Sanks v. Parke-Davis*, 2000 WL

33910097 (M.D. Ala. 2000). As plaintiff has not alleged, much less established, that the

pharmacy defendants failed to properly dispense Mirapex® to plaintiff in accordance with his

physician's prescription, plaintiff has no reasonable possibility of imposing liability against the

pharmacy defendants based on the AEMLD or his negligence, wantonness or fraud claims.

21. Additionally, plaintiff states no cause of action against the pharmacy defendants

under the Alabama Medical Liability Act ("AMLA"), which subsumes all claims against a

"healthcare provider" in the course of the healthcare relationship. *See* Ala. Code § 6-5-542

(1987); *Ex parte Rite Aid of Alabama, Inc.*, 768 So.2d 960, 962 (Ala. 2000); *Cackowski v.

Walmart*, 767 So.2d 319, 324 (Ala. 2000); *Mobile Infirmary v. Delchamps*, 642 So.2d 954 (Ala.

1994); *Allred v. Shirley*, 598 So.2d 1346 (Ala. 1992). The only cause of action available to a

plaintiff under the AMLA is for breach of the standard of care. Ala. Code § 6-5-542(2) (1987).

22. Plaintiff has failed to allege any breach of any standard of care by the pharmacy

defendants and fails to offer any evidence of any breach, as required by the AMLA. Alabama

Code § 6-5-551 (1987). Thus, on its face, the complaint makes no legally cognizable claim

against the pharmacy defendants. Thus, for this additional reason as well, the pharmacy

defendants are fraudulently joined and due to be dismissed.

23. Moreover, plaintiff's claims against the pharmacy defendants fail as a matter of

law because he cannot show any causal relationship between their conduct and the defects of

which plaintiff complains. The pharmacy defendants did not develop, test or manufacture the

Mirapex, did not compound the Mirapex in anyway, had no knowledge of any alleged defective

condition of Mirapex, and did not contribute to the alleged defect. *Strange Aff.*, ¶¶4-7; *Redding

Aff.*, 5-8. As such, plaintiff has no claim against them under Alabama law. *See Fleming Farms*

*v. Dixie AG Supply, Inc.*, 631 So. 2d 922, 928 (Ala. 1994) (affirming summary judgment for distributor on AEMLD claim where distributor received product from manufacturer in a sealed container, received the product in its already defective condition and did not contribute to the defect, had no knowledge of the defective condition, and had no opportunity to inspect the product that was greater than that of the consumer's).

**B.    Plaintiff's Complaint Fails to State a Basis for Recovery Against Defendant David Rohling.**

24.    Plaintiff also asserts the same four counts of his Complaint against defendant Rohling alleging that Rohling failed to warn plaintiff and his physician about the alleged association between Mirapex® and compulsive behaviors.

25.    Rohling's only connection to this case is that he is a sales representative employed by BIPI. *See Rohling Aff., ¶¶ 2-3.* His role as a BIPI sales representative, however, does not create a reasonable basis for the imposition of liability against him under any of the theories pleaded by plaintiff.

26.    The Eleventh Circuit has recently spoken to the issue of the tactic of joining pharmaceutical sales representatives in an effort to thwart diversity jurisdiction, and held that this practice cannot preclude a District Court's jurisdiction in a case such as this. *Legg,* 428 F.3d at 1324. As set forth more fully below, the holding in *Legg* demonstrates why the joinder of Rohling in this case is clearly fraudulent.

27.    The first claim alleged by plaintiff is based on a failure to warn theory pursuant to the AEMLD. Rohling, however, cannot be held liable as a "seller" under the AEMLD because he did not sell or supply Mirapex®. *Bloodsworth,* 2005 WL 3470337 at *7 (finding that a sales representative was not a "seller" within the meaning of the AEMLD); *In re Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001) (applying Alabama law)

(pharmaceutical sales representatives are not sellers or suppliers of the prescription drugs they detail); *Devise v. Kenmore*, CV 03-J-943-S at 2 (N.D. Ala. May 12, 2003) (sales representative at Sears is not a seller under the AEMLD) (Exhibit E hereto); *Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C, Slip Op. at 8 (S.D. Ala. Sept. 3, 1996) (retail store manager is not a "seller", "neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass [employees of the seller or supplier].") (Exhibit F hereto).

28.    Moreover, Rohling did not even detail Mirapex® to plaintiff's physician until years after plaintiff had been taking Mirapex®.  In his Complaint, plaintiff alleges that he ingested Mirapex® beginning in 2000 and shortly thereafter began compulsively gambling. *Complaint, ¶¶ 14, 26.*  As set forth in his Affidavit, Rohling did not detail Mirapex® to plaintiff's physician, Dr. Alan Prince, until years later beginning in September 2003. *Rohling Aff., ¶ 12.*

29.    Rohling made no misrepresentations concerning the safety or efficacy of Mirapex during his dealing with Dr. Prince or any other physicians. *Rohling Aff., ¶¶ 11-12.*  All of Rohling's knowledge about Mirapex, including the FDA-approved prescribing information, package inserts and other information was provided to him by BIPI. *Rohling Aff., ¶¶ 7-8.*  As a sales representative, Rohling was not expected to and did not conduct independent research regarding Mirapex. *Rohling Aff., ¶ 10.*  Accordingly, plaintiff cannot demonstrate a reasonable possibility that Rohling may be held liable as a "seller" under the AEMLD.

30.    The next two claims in plaintiff's Complaint against Rohling - for negligence and wantonness – likewise present no reasonable basis for imposing liability on Rohling.   Under the learned intermediary doctrine, any duty to warn would be owed to plaintiff's prescribing

physician and is owed by the pharmaceutical company, not its sales representative. *Southern v. Pfizer, Inc.*, Civil Action No. 2:06-CV-836-VEH at *17 (N.D. Ala. June 23, 2006). For a sales representative to be "personally liable for the negligent acts of the corporation, 'there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act.'" *Legg*, 428 F.3d at 1324. In other words, the sales representative must have "personally participate[d] in the tort." *Turner v. Hayes*, 719 So.2d 1184, 1188 (Ala. Civ. App. 1997).

31.    To the extent any duty to warn was owed to plaintiff's prescribing physician in this case, that duty was owed by BIPI and/or Pfizer, not Rohling. *Southern*, Civil Action No. 2:06-CV-836-VEH at *16. There is also no evidence that Rohling personally participated in any acts that would subject him to potential liability under a negligent or wanton failure to warn theory. Rohling has never spoken to plaintiff; had never spoken to plaintiff's prescribing physician concerning the safety or efficacy of Mirapex prior to the time plaintiff began taking Mirapex® and made no misrepresentations to Dr. Prince concerning Mirapex®. *Rohling Aff.*, ¶¶ *4, 12.* Further, Rohling did not participate in the manufacture, development or testing of Mirapex, and neither had any control over, or involvement with the development or preparation of the prescribing information for Mirapex®, including the written warnings. *Rohling Aff.*, ¶¶ *6, 9.* As such, Rohling did not personally participate in any alleged tort and there is no reasonable possibility that he will be found liable under Alabama negligence or law or even the more heightened standard for wantonness. *Ammons v. Tesker Manufacturing Corp.*, 853 So.2d 210, 213 (Ala. 2002).

32.    The Fourth and final Count of plaintiff's claims against Rohling alleges fraud. This claim also has no reasonable possibility of success. A claim of fraud requires proof of: (1) a

10

false representation; (2) concerning a material fact; (3) relied upon by the plaintiff; and (4) who was damaged as a proximate result. *Fisher v. Comer Plantation*, 772 So.2d 455, 463 (Ala. 2000). Before a fraud claim may arise, the defendant must have owed the plaintiff a duty to disclose. *Nesbitt v. Frederick*, 2006 WL 1195872, *4 (Ala. 2006). In addition, absent a demonstration of bad faith, a plaintiff may not maintain a fraud claim against a pharmaceutical sales representative. *Bloodsworth*, 2005 WL 3470337 at *8. "[T]hose who are only conduits through which faulty information is supplied by one person to a third parson cannot be held liable for fraud unless they acted in bad faith."[5] *Legg*, 428 F.3d at 1324.

33.     As set forth by the court in *Southern*, it is the pharmaceutical company, not the sales representative that owes the plaintiff a duty to disclose. *Southern*, Civil Action No. 2:06-CV-836-VEH at *16. Accordingly, Rohling owed plaintiff no duty to disclose. Moreover, plaintiff has not presented any evidence of bad faith against Rohling, and in light of Rohling's Affidavit, it is apparent why he has not done so – there is no such evidence. Rohling made no misrepresentations concerning Mirapex® to Dr. Prince. Accordingly, there is no reasonable basis for imposing liability on defendant Rohling based on a claim of fraud.[6]

34.     Plaintiff also cannot prevail on a fraud claim because he has failed to plead fraud with particularity. *Compare* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated

---

[5] Moreover, Alabama law is clear that in order to be liable for failure to disclose, an individual has to have had actual knowledge of the alleged danger and its materiality in order to be held liable. *Hardy v. Blue Cross & Blue Shield*, 585 So.2d 39, 32 (Ala. 1991) (citing Cherokee Farms, Inc. v. Firemen's Fund Ins. Co., 526 So.2d 871 (Ala.1988); Wilson v. Brown, 496 So.2d 756 (Ala.1986); Harrell v. Dodson, 398 So.2d 272 (Ala.1981)). *See also University Federal Credit Union v. Grayson*, 2003 WL 22221231 at *5 (Ala. 2003) (same). Here, Rohling's Affidavit makes clear that he did not even call on Dr. Prince until years after plaintiff had begun taking the medication.

[6] To the extent that plaintiff's fraud claim is that Rohling misrepresented that Mirapex was safe and effective, the FDA determined that the drug was safe and effective in allowing it to be put on the market; this FDA finding cannot rise to the level of puffery, much less fraud.

11

with particularity), *with* Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule).

35.    In sum, none of the allegations contained in plaintiff's Complaint give rise to a reasonable basis for liability as to the pharmacy defendants or Rohling. Thus, plaintiff's joinder of these defendants can only be characterized as a sham, at the unfair expense not only of [the proper defendants] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company defendants], the real target, in a federal forum." *Legg*, 428 F.3d at 1320. For all these reasons, defendant the pharmacy defendants and Rohling have been fraudulently joined in this action and their citizenship should be disregarded for purposes of determining diversity jurisdiction.

## V.    Amount in Controversy

36.    The amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff has alleged in his Petition that he was a man of significant wealth and has lost virtually all of his life savings as a result of his compulsive gambling for which he seeks recovery from defendants. Plaintiff also seeks recovery for mental anguish and punitive damages. Given these allegations, which defendants deny in their entirety, plaintiff's Complaint establishes on its face that the amount in controversy exceeds $75,000, exclusive of costs and interest. *See, e.g,* *Tapscott*, 77 F.3d at 1359 (11th Cir. 1996) (when plaintiffs make an unspecified claim for damages, removing party need only show by a preponderance of the evidence that amount in controversy exceeds jurisdictional limit). Cases in Alabama similar to plaintiff's case have resulted in verdicts and settlements exceeding $75,000. *See* Exhibit G hereto.

01363647.1

## VI.    Co-Defendants' Consent to Remove

37.    Defendants Pfizer, Rohling, Strange and Redding join and consent to this removal.  Thus, all defendants, even those fraudulently joined, join in and consent to this removal.

## VII.    The Other Prerequisites for Removal Have Been Satisfied

38.    As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 and is between citizens of different states.

39.    As set forth above, this Notice of Removal is filed within thirty days of the service of the petition or process upon the first-served defendant.

40.    Defendants have sought no similar relief.

41.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

42.    A copy of this Notice of Removal is being served on counsel for plaintiff and filed with the Circuit Court of Barbour County, Alabama.

43.    If any question arises as to the propriety of the removal of this action, BIPI requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, defendant Boehringer Ingelheim Pharmaceuticals, Inc., desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the district and division of said Court for the County in which said action is pending, prays that the filing of this Notice of Removal with the Clerk of the Circuit Court of Barbour County, Alabama (Clayton Division) shall effect the removal of said suit to this Court,

01363647.1

and requests that this Court retain jurisdiction for all further proceedings.

Maibeth J. Porter
Alvin L. ("Peck") Fox
Edward A. ("Ted") Hosp

Attorneys for Defendant Boehringer Ingelheim
Pharmaceuticals, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203-2602
Telephone Number:  (205) 254-1000

Beth S. Rose, Esq.
Stuart M. Feinblatt, Esq.
Jennifer Ewers Hurley, Esq.
SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record to this proceeding by United States Mail, properly addressed and postage prepaid, or as indicated below, this 20th day of July, 2006:

J. Gregory Allen
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

L. Shane Seaborn
Penn & Seaborn, LLC
P. O. Box 688
Clayton, AL 36016-0688

F.M "Tripp" Haston, III
Andrew B. Johnson
Bradley Arant Rose & White LLP
One Federal Place
1819 5th Ave. North
Birmingham, AL 35203

Philip F. Hutcheson
Boardman, Carr, Weed & Hutcheson, P.C.
400 Boardman Dr.
Chelsea, AL 35043-8211

OF COUNSEL

15

01363647.1

# EXHIBIT   A

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **ROBERT BLANKENSHIP,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**PFIZER, INC.; BOEHRINGER INGELHEIM** )<br>**PHARMACEUTICALS, INC.; DAVID** )<br>**ROHLING; KMART OF MICHIGAN, INC.;** )<br>**ART REDDING; KELLI STRANGE; et al.,** )<br>)<br>**Defendants.** ) | **Civil Action No.**<br><br>2:06cv648- |

## AFFIDAVIT OF KELLI STRANGE

STATE OF ALABAMA )

COUNTY OF HOUSTON )

Before me, a notary public in and for said County and State, personally appeared Kelli Strange, who being by me duly sworn, deposes on oath and says:

1.    My name is Kelli Strange. I am over the age of twenty-one years and make this affidavit based upon my personal knowledge.

2.    I am a licensed pharmacist in the State of Alabama employed by Kmart of Michigan, Inc. ("Kmart Pharmacy") in Dothan, Alabama.

3.    To the extent that I dispensed Mirapex to any of Kmart Pharmacy's customers, I merely dispensed the drug to its customers strictly in accordance with the prescriptions of their doctors.

4.    I did not design, manufacture, test or develop Mirapex. I did not compound or alter the Mirapex in any way.

5.    I made no representations concerning Mirapex. I did not suppress any information concerning Mirapex.

6.    I did not have any knowledge of any alleged defective condition with respect to the Mirapex, and certainly did not contribute to any alleged defective condition.

7.    Upon information and belief, Kmart Pharmacy did not design, manufacture, test or develop Mirapex. Upon information and belief, Kmart Pharmacy is in the business of distributing finished

products and purchased this drug from the manufacturer and/or a distributor, which, in turn, purchased it from the manufacturer.

_Kelli Strange_
Kelli Strange

STATE OF ALABAMA          )
                          )
HOUSTON COUNTY            )

     I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Kelli Strange, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she executed the same voluntarily on the day the same bears date.

     Given under my hand this _18th_ day of _July_, 2006.

_Linda Carole Scott_
Notary Public

SEAL

My commission expires: __5-4-08__

# EXHIBIT   B

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BLANKENSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.** |
| **PFIZER, INC.; BOEHRINGER INGELHEIM** | ) | |
| **PHARMACEUTICALS, INC.; DAVID** | ) | 2:06 cv 648 |
| **ROHLING; KMART OF MICHIGAN, INC.;** | ) | |
| **ART REDDING; KELLI STRANGE; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF ARTHUR REDDING

STATE OF ALABAMA       )

COUNTY OF HOUSTON      )

Before me, a notary public in and for said County and State, personally appeared Arthur Redding, who being by me duly sworn, deposes on oath and says:

1.      My name is Arthur Redding. I am over the age of twenty-one years and make this affidavit based upon my personal knowledge.

2.      I am a citizen and resident of the State of Georgia. I have been a citizen and resident of the State of Georgia for the last 54 years.

3.      I am a licensed pharmacist in the State of Alabama employed by Kmart of Michigan, Inc. ("Kmart Pharmacy") in Dothan, Alabama.

4.      To the extent that I dispensed Mirapex to any of Kmart Pharmacy's customers, I merely dispensed the drug to its customers strictly in accordance with the prescriptions of their doctors.

5.      I did not design, manufacture, test or develop Mirapex. I did not compound or alter the Mirapex in any way.

6.      I made no representations concerning Mirapex. I did not suppress any information concerning Mirapex.

7.      I did not have any knowledge of any alleged defective condition with respect to the Mirapex, and certainly did not contribute to any alleged defective condition.

8.    Upon information and belief, Kmart Pharmacy did not design, manufacture, test or develop Mirapex.  Upon information and belief, Kmart Pharmacy is in the business of distributing finished products and purchased this drug from the manufacturer and/or a distributor, which, in turn, purchased it from the manufacturer.

_____
Arthur Redding

STATE OF ALABAMA    )
                    )
HOUSTON COUNTY      )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Arthur Redding, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this ___ day of _____, 2006.

_____
Notary Public

SEAL

My commission expires: 5-4-08

# EXHIBIT   C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **ROBERT BLANKENSHIP,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **CIVIL ACTION NO.** |
| **PFIZER, INC., BOEHRINGER** | )    2:06CV648 – |
| **INGELHEIM PHARMACEUTICALS,** | ) |
| **INC., DAVID ROHLING, KMART OF** | ) |
| **MICHIGAN, INC., ART REDDING,** | ) |
| **KELLI STRANGE, et al.** | ) |
| | ) |
|    **Defendants.** | ) |

## AFFIDAVIT OF DAVID ROHLING

STATE OF ALABAMA     )

COUNTY OF LEE     )

Before me, a notary public in and for said County and State, personally appeared David Rohling, who being by me duly sworn, deposes on oath and says:

1.     My name is David Rohling. I am over the age of twenty-one years and make this affidavit based upon my personal knowledge.

2.     I am currently an employee of Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI").

3.     I have been employed with BIPI as a Sales Representative since February 1999. I have never been employed by Pfizer, Inc. or Kmart of Michigan, Inc.

4.     At no time did I ever provide Mirapex or information regarding Mirapex directly to Robert Blankenship. Further, I have never spoken with or met Robert Blankenship.

5.    I am not a physician and, therefore, have never prescribed Mirapex.  I am also not a pharmacist and, therefore, have never filled a Mirapex prescription.

6.    At no time did I have involvement with the manufacture, development or testing of Mirapex.

7.    My knowledge about Mirapex, and the information that I used in the course of my employment, was provided to me by my employer, BIPI.  I had no knowledge of any alleged association between Mirapex and compulsive gambling until informed by my employer BIPI, as part of its sales force communications.

8.    BIPI provided me with FDA-approved prescribing information, package inserts and the other information I used in speaking with physicians regarding Mirapex and Parkinson's disease.

9.    I had no involvement in the development or preparation of the prescribing information or package inserts for Mirapex, and did not have control over the content of this prescribing information, including the written warnings, or other information provided to me concerning Mirapex.

10.    As a Sales Representative, I was not expected to conduct independent research regarding drugs I detailed and I did not do so.

11.    I made no misrepresentations concerning the safety or efficacy of Mirapex and acted in good faith at all times in my dealings with physicians who may have prescribed Mirapex.

2

12.    It is my understanding that Mr. Blankenship was prescribed Mirapex by Alan David Prince, M.D., of Dothan, Alabama.  I detailed Dr. Prince on Mirapex from approximately September 2003 through December 2004.  I never left any samples of Mirapex with Dr. Prince.  I made no misrepresentations to Dr. Prince concerning the safety or efficacy of Mirapex and acted in good faith at all times in my dealings with Dr. Prince.

Dated this _19_ day of July, 2006.

_____
DAVID ROHLING

Sworn to and subscribed before
me this _19_ day of July, 2006

_____
Notary Public

My Commission Expires: _2/26/08_

3

# EXHIBIT   D

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

| | |
|---|---|
| ROBERT BLANKENSHIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PFIZER, INC.; BOEHRINGER | )   CIVIL ACTION NO. CV-2006-040 |
| INGELHEIM PHARMACEUTICALS, | ) |
| INC.; DAVID ROHLING; KMART OF | ) |
| MICHIGAN, INC.; ART REDDING; | ) |
| KELLI STRANGE, et al., | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF DISMISSAL

Plaintiff, pursuant to Rule 41(a)(1)(i), hereby gives notice of dismissal of

Defendant Kmart of Michigan, Inc. as a party defendant in this case.  No other

Defendants are affected by this notice other than Kmart of Michigan, Inc.


_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

FILED
JUL 13 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

1

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the foregoing upon the following by placing a copy of same in the U.S. Mail, postage prepaid, and properly addressed this _13th_ day of ___July___ , 2006.

_____
OF COUNSEL

Defendant Pfizer, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Defendant Boehringer Ingelheim Pharmaceuticals, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Defendant David Rohling
1246 Grove Park
Auburn, AL  36830-2118

Defendant Kmart of Michigan, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

Defendant Art Redding
693 Southside Drive
Blakely, Georgia  39823-3736

Defendant Kelli Strange
181 Broad Street
Cottonwood, AL  36320

2. Article Number

7106 4575 1291 2923 8244

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

Kmart of Michigan, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)     B. Date of Delivery   6/22/0

C. Signature
X  S. Slauson          ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

CV 2006 040

PS Form 3811, June 2000          Domestic Return Receipt

---

2. Article Number

7106 4575 1291 2923 8213

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

Kelli Strange
181 Broad Street
Cottonwood, Alabama 36320

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)     B. Date of Delivery   6/26/06
   Paul Strange

C. Signature
X  Paul Strange          ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

CV 2006 040

PS Form 3811, June 2000          Domestic Return Receipt

---

PS Form 3811, June 2000          Domestic Return Receipt

7106 4575 1291 2923 8251

4. Article Addressed to:

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Boehringer Ingelheim Pharmaceuticals, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

CV 2006 040



2. Article Number

7106 4575 1291 2923 8268

3. Service Type  CERTIFIED MAIL
4. Restricted Delivery? (Extra Fee)  ☐ Yes
1. Article Addressed to:

Pfizer, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

COMPLETE THIS SECTION ON DELIVERY
A. Received by (Please Print Clearly)  B. Date of Delivery
C. Signature
X                                    ☐ Agent
                                     ☐ Addressee
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

CV 2006 040

PS Form 3811, June 2000                    Domestic Return Receipt

---

2. Article Number

7106 4575 1291 2923 8251

3. Service Type  CERTIFIED MAIL
4. Restricted Delivery? (Extra Fee)  ☐ Yes
1. Article Addressed to:

Boehringer Ingelheim Pharmaceuticals, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

COMPLETE THIS SECTION ON DELIVERY
A. Received by (Please Print Clearly)  B. Date of Delivery
C. Signature
X                                    ☐ Agent
                                     ☐ Addressee
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

CV 2006 040

PS Form 3811, June 2000                    Domestic Return Receipt

06/20/2006 11:11:19 AM          Ann Easley          3349547555          Page 2

)
)

**State of Alabama**
**Unified Judicial System**

**Form ARCivP-93    Rev. 5/99**

# COVER SHEET
## CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

**Case Number**
CV A 06 0040

**Date of Filing:** Month Day Year    **Judge Code:**

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _Barbour_ , ALABAMA
_(Name of County)_

_Robert Blankenship_                    _Spencer, et al_
Plaintiff                              Defendant

First Plaintiff: ☐ Business  ☑ Individual    First Defendant: ☑ Business  ☐ Individual
☐ Government  ☐ Other                        ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** (check one):    ☑ INITIAL FILING    A☐ APPEAL FROM DISTRICT COURT    D☐ OTHER: _____
                          R☐ REMANDED         T☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P., for procedure)

**RELIEF REQUESTED:** ☐ MONETARY AWARD REQUESTED    ☑ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
AL L 021    Date 6-20-06    Signature of Attorney/Party filing this form _J. Greg Allen_

**MEDIATION REQUESTED:**    ☐ YES  ☐ NO  ☐ UNDECIDED

)                    .    .    .                    )

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

ROBERT BLANKENSHIP,                    )

    Plaintiff,                    )
                        )

vs.                    )
                        )

PFIZER, INC.; BOEHRINGER INGELHEIM    )    CIVIL ACTION NO. CV-*2006 040*
PHARMACEUTICALS, INC.; DAVID    )
ROHLING; KMART OF MICHIGAN, INC.;    )
ART REDDING; KELLI STRANGE, et al.,    )
                        )

    Defendants.                    )

**F I L E D**
**JUN 2 0 2006**
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:        **Art Redding**
                **693 Southside Drive**
                **Blakely, Georgia  39823-3736**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights.  You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

        **J. GREG ALLEN**
        **BEASLEY, ALLEN, CROW, METHVIN,**
         **PORTIS & MILES, P.C.**
        **P. O. Box 4160**
        **Montgomery, Alabama  36103-4160**

the attorney for the Plaintiff.   THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

Dated: *06-20-06*

                             *David S. Nix*
                             CIRCUIT CLERK

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

ROBERT BLANKENSHIP,                )

    Plaintiff,                        )

vs.                                )

PFIZER, INC.; BOEHRINGER INGELHEIM )
PHARMACEUTICALS, INC.; DAVID       )
ROHLING; KMART OF MICHIGAN, INC.;  )
ART REDDING; KELLI STRANGE, et al.,)
                                   )
    Defendants.                       )



F I L E D

JUN 2 0 2006

DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

CIVIL ACTION NO. CV- *2006 040*

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:          **David Rohling**
                   **1246 Grove Park**
                   **Auburn, Alabama 36830-2118**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights.  You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                   **J. GREG ALLEN**
                   **BEASLEY, ALLEN, CROW, METHVIN,**
                    **PORTIS & MILES, P.C.**
                   **P. O. Box 4160**
                   **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiff.    THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

*David S. Nix*
CIRCUIT CLERK

Dated: *06-20-06*



7106 4575 1291 2923 8237

US Postal Service
Receipt for
Certified
Mail

No Insurance Coverage
Provided
Do Not Use for International
al Mail

| | Postage | $ | | |
|---|---|---|---|---|
| | Certified Fee | | | |
| | Return Receipt Fee (Endorsement Required) | | | Postmark Here |
| | Restricted Delivery Fee (Endorsement Required) | | | |
| | Total Postage & Fees | $ | | |

Sent To:

David Rohling
1246 Grove Park
Auburn, Alabama 36830-2118

PS Form       0, June 2000       US Postal Service       Certified Mail Receipt

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

ROBERT BLANKENSHIP, )
)
Plaintiff, )
)
vs. )
)
PFIZER, INC.; BOEHRINGER INGELHEIM )
PHARMACEUTICALS, INC.; DAVID )
ROHLING; KMART OF MICHIGAN, INC.; )
ART REDDING; KELLI STRANGE, et al., )
)
Defendants. )

CIVIL ACTION NO. CV-*2006 040*

F I L E D
JUN 2 0 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

### SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:          **Kelli Strange**
**181 Broad Street**
**Cottonwood, Alabama 36320**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

**J. GREG ALLEN**
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
**P. O. Box 4160**
**Montgomery, Alabama 36103-4160**

the attorney for the Plaintiff. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

*David S. Nix*
CIRCUIT CLERK

Dated: *06-20-06*

US Postal Service
**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To:

Kelli Strange
181 Broad Street
Cottonwood, Alabama 36320

PS Form 3800, June 2000          US Postal Service          **Certified Mail Receipt**

7106 4575 1291 2923 6213

)             .     :     )

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

```
F I L E D
JUN 2 0 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA
```

ROBERT BLANKENSHIP,                    )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )
                                       )
PFIZER, INC.; BOEHRINGER INGELHEIM     )    CIVIL ACTION NO. CV-*2006 040*
PHARMACEUTICALS, INC.; DAVID           )
ROHLING; KMART OF MICHIGAN, INC.;      )
ART REDDING; KELLI STRANGE, et al.,    )
                                       )
        Defendants.                    )

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:      **Pfizer, Inc.**
                  **c/o The Corporation Company**
                  **2000 Interstate Park Drive, Suite 204**
                  **Montgomery, AL  36109**

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights.  You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                  **J. GREG ALLEN**
                  **BEASLEY, ALLEN, CROW, METHVIN,**
                    **PORTIS & MILES, P.C.**
                  **P. O. Box 4160**
                  **Montgomery, Alabama  36103-4160**

the attorney for the Plaintiff.    THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                        *David S. Nix*
                                       CIRCUIT CLERK

Dated: *06-20-06*



US Postal Service
**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7106 4575 1291 2923 8246

Sent To:

Pfizer, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

PS Form 3800, June 2000     US Postal Service     **Certified Mail Receipt**

3

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

F I L E D

JUN 2 0 2006

DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

ROBERT BLANKENSHIP, )
          )
     Plaintiff, )
          )
          )
vs. )
          )   CIVIL ACTION NO. CV- 2006 040
PFIZER, INC.; BOEHRINGER INGELHEIM )
PHARMACEUTICALS, INC.; DAVID )
ROHLING; KMART OF MICHIGAN, INC.; )
ART REDDING; KELLI STRANGE, et al., )
          )
     Defendants. )

## SUMMONS

     This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:     Boehringer Ingelheim Pharmaceuticals, Inc.
                c/o The Corporation Company
                2000 Interstate Park Drive, Suite 204
                Montgomery, AL 36109

     The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                J. GREG ALLEN
                BEASLEY, ALLEN, CROW, METHVIN,
                  PORTIS & MILES, P.C.
                P. O. Box 4160
                Montgomery, Alabama 36103-4160

the attorney for the Plaintiff. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                        _David S. Nix_
                                        CIRCUIT CLERK

Dated: _06-20-06_

US Postal Service
Receipt for
Certified
Mail
No Insurance Coverage
Provided
Do Not Use for Internation-
al Mail

7106 4575 1291 2923 8251

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To:

Boehringer Ingelheim Pharmaceuticals, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

PS Form 3800, June 2000     US Postal Service     **Certified Mail Receipt**

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

ROBERT BLANKENSHIP, )
)
Plaintiff, )
)
vs. )
)
PFIZER, INC.; BOEHRINGER INGELHEIM )
PHARMACEUTICALS, INC.; DAVID )
ROHLING; KMART OF MICHIGAN, INC.; )
ART REDDING; KELLI STRANGE, et al., )
)
Defendants. )

**F I L E D**
**JUN 2 0 2006**
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

CIVIL ACTION NO. CV-*2006 040*

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:    Kmart of Michigan, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

J. GREG ALLEN
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, Alabama 36103-4160

the attorney for the Plaintiff. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

*David S. Nix*
CIRCUIT CLERK

Dated: *06-20-06*

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

7106 4575 1291 2923 8244

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To:

Kmart of Michigan, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

PS Form 3800, June 2000          US Postal Service          **Certified Mail Receipt**

IN THE CIRCUIT COURT
FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION



ROBERT BLANKENSHIP,        )
                           )
     Plaintiff,            )
                           )
vs.                        )
                           )
PFIZER, INC.; BOEHRINGER   )     CIVIL ACTION NO. CV-*2006 040*
INGELHEIM PHARMACEUTICALS, )
INC.; DAVID ROHLING; KMART OF )
MICHIGAN, INC.; ART REDDING; )
KELLI STRANGE; "A", that person, )
corporation or other legal entity who )
designed, manufactured, sold, )
distributed and failed to warn of the )
potential complications associated with )
the use of the drug Mirapex; "B", that )
person, corporation or other legal )
entity who failed to provide adequate )
warnings with respect to the )
complications associated with the use )
of the drug Mirapex; "C", that person, )
corporation or other legal entity who )
provided information to treating )
physician of Robert Blankenship; "D", )
that person, corporation or other legal )
entity who failed to adequately warn )
Mr. Blankenship's treating physician of )
the complications associated with the )
use of the drug Mirapex; "E", that )
person, corporation or other legal )
entity who filled the prescription for )
Robert Blankenship for the drug )
Mirapex and failed to warn of the )
complications associated with use of )
the drug; "F", that person, corporation )
or other legal entity who's negligence, )
wantonness or other wrongful conduct )
combined with the negligence, )
wantonness or other wrongful conduct )

1

|                                                                                                    |     |
| -------------------------------------------------------------------------------------------------- | --- |
| of other defendants to cause the damages alleged herein, all of said fictitious defendants are unknown to Plaintiff at this time but will be substituted by amendment when ascertained, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

### Statement of the Parties

1.    Plaintiff, Robert Blankenship is a resident citizen of the Clayton Division of Barbour County in the State of Alabama. Robert Blankenship is over the age of nineteen years and has capacity to bring this claim.

2.    Defendant Pfizer, Inc. (hereinafter "Pfizer") is a U.S. corporation with its principal place of business located in New York, New York. At all times material Defendant Pfizer was doing business by agent in Barbour County, Alabama. Defendant Pfizer is currently involved in and/or responsible for the research, development, manufacturing, sales, distribution and marketing the drug Mirapex in the United States.

3.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. (hereinafter "Boehringer") is a U.S. corporation with its principal place of business located in Ridgefield, Connecticut. At all times material Defendant Boehringer was doing business by agent in Barbour County, Alabama. Defendant Boehringer is currently involved in and/or responsible for research, development, manufacturing, sales, distribution and marketing of Mirapex.

2

)                                        )

4.     Defendant David Rohling (hereinafter "Rohling") is believed to be over the age of nineteen years and a resident citizen of Lee County, Alabama. David Rohling is an agent or employee of Defendant Pfizer.

5.     Defendant Kmart of Michigan, Inc. (hereinafter "Kmart") is believed to be a foreign corporation but at all times material did business in Alabama.

6.     Defendant Art Redding (hereinafter "Redding") is believed to be over the age of nineteen years and a resident citizen of Early County, Georgia.

7.     Defendant Kelli Strange (hereinafter "Strange") is believed to be over the age of nineteen years and a resident citizen of Houston County, Alabama.

8.     Fictitious Defendant "A" is that person, corporation or other legal entity who designed, manufactured, sold, distributed and failed to warn of the potential complications associated with the use of the drug Mirapex.

9.     Fictitious Defendant "B" is that person, corporation or other legal entity who failed to provide adequate warnings with respect to the complications of the use of the drug Mirapex.

10.     Fictitious Defendant "C" is that person, corporation or other legal entity who provided information to treating physician prescribing the drug Mirapex.

11.     Fictitious Defendant "D" is that person, corporation or other legal entity who failed to adequately warn treating physician of the complications associated with the use of the drug Mirapex.

)                                    )

12.     Fictitious Defendant "E" is that person, corporation or other legal entity who filled the prescription for Robert Blankenship for the drug Mirapex and failed to warn of the complications associated with use of the drug.

13.     Fictitious Defendant "F" is that person, corporation or other legal entity who's negligence, wantonness or other wrongful conduct combined with the negligence, wantonness or other wrongful conduct of other defendants to cause the damages alleged herein.

## Statement of the Facts

14.     In November of 2000, Robert Blankenship was diagnosed with early stage Parkinson's Disease.  His treating physician prescribed the drug Mirapex to treat the tremors associated with Parkinson's Disease.

15.     Mirapex is the trade name for pramipexole dihydrochloride. Mirapex is a medication promoted for and commonly prescribed as an aid in the treatment of the symptoms of Parkinson's Disease or Restless Leg Syndrome.

16.     Mirapex has been widely advertised and marketed by Defendants Pfizer, Boehringer, Rohling and Fictitious Defendants "A" through "D" as a safe and effective Parkinson's Disease/Restless Leg Syndrome medication.

17.     People with Parkinson's Disease do not produce enough dopamine in their brains.  When not enough dopamine is available, people can experience tremors, rigidity and other symptoms associated with Parkinson's Disease. Mirapex belongs to a class of drugs known as dopamine agonists.  Mirapex works by mimicking the action of dopamine in the brain.  Mirapex is designed to stimulate  dopamine  receptors  thereby  replicating  its  behavior  without

4

discriminating between the nerve endings it attaches to, including those related to "pleasure centers".

18.    The Defendants' strategy has been to aggressively market and sell Mirapex by understating risks associated with the use of the product and intentionally misleading users and treating physicians about the potential adverse consequences which the Defendants knew of should have known would result in the use of the product including compulsive behaviors such as compulsive gambling.

19.    Defendants widely and successfully marketed Mirapex to induce widespread use of the product.  The marketing campaign consisted of direct-to-customer advertisements, promotional literature placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential Mirapex users.

20.    The marketing campaign included significant advertising to develop the image or impression in consumers and physicians that the use of Mirapex was safer and had fewer side effects and adverse reactions than other methods for treating Parkinson's Disease, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

21.    Mirapex has long been associated with compulsive/obsessive behavior including compulsive/obsession gambling and has been identified as a cause for these behaviors in users.

22.    The Defendants knew or should have known that there was a significant risk of serious adverse impacts from ingesting Mirapex.

23.    Numerous studies examining the link between compulsive behavior and dopamine agonists, including Mirapex, have been conducted outlining catastrophic effects of the drug.

24.    Mr. Blankenship's prescribing physician was unaware, and therefore gave no information to Mr. Blankenship that Mirapex was associated with compulsive behavior as a result of being a dopamine agonist. Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" failed to warn Mr. Blankenship of the potential complications including compulsive gambling that was associated with the use of dopamine agonist, including the drug Mirapex.

25.    Prior to the taking of the drug Mirapex, Robert Blankenship had accumulated significant wealth as a result of many years as a peanut and cattle farmer. Prior to taking Mirapex, Mr. Blankenship was not a gambler.

26.    Shortly after taking Mirapex, Robert Blankenship began compulsively gambling and lost virtually all of his life savings.

## COUNT ONE
### (Alabama Extended Manufacturer's Liability Doctrine [AEMLD])

27.    Plaintiff realleges all allegations contained in paragraphs 1 through 26 of the complaint as if set out here in full.

28.    Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" designed, manufactured, sold or otherwise placed into the stream of commerce without adequate warnings or

)                                    )

information the drug Mirapex which was unreasonably dangerous by failing to disclose the before mentioned complications.

29.    The drug was marketed aggressively by direct advertising without warnings of the potential compulsive behavior complications.

30.    Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" failed to warn the treating physicians of the dangers and complications associated with the use of Mirapex including serious behavioral changes that could result as a consequence of the use of this drug.

31.    The drug, as marketed, was unreasonably dangerous and defective and as a proximate consequence it caused Mr. Blankenship to engage in compulsive gambling which resulted in the loss of his life savings.

32.    Robert Blankenship suffered severe mental anguish as a proximate consequence of the use of the drug Mirapex.

WHEREFORE, Plaintiff Robert requests damages against Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" in such amount as allowed by the laws of the State of Alabama including punitive damages and to such other further relief to which they may be entitled.

### COUNT TWO
### (Negligence)

33.    Plaintiff realleges all allegations contained in paragraphs 1 through 32 of the complaint as if set out here in full.

34.     Defendants Pfizer, Boehringer and Fictitious Defendants "A" through "F" negligently designed, marketed and sold the drug Mirapex without adequate warnings.

35.     Defendant Rohling negligently failed to warn the treating physician of any potential complications such as compulsive behavior even though Rohling knew or should have known of the association between Mirapex and compulsive behavior.

36.     Defendants Kmart, Redding and Strange negligently failed to warn Mr. Blankenship of any potential complications such as compulsive behavior even though said Defendants knew or should have known of the association between Mirapex and compulsive behavior.

37.     As a proximate result of the wrongful conduct as alleged herein, Plaintiff suffered economic damages and mental anguish damages.

WHEREFORE, Plaintiff Robert Blankenship demands judgment against Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" in such amount as a jury may award and for the costs of this action.

## COUNT THREE
### (Wantonness)

38.     Plaintiff realleges all allegations contained in paragraphs 1 through 37 of the complaint as if set out here in full.

39.     Defendants Pfizer, Boehringer and Fictitious Defendants "A" through "F" wantonly and/or knowingly designed, marketed and sold the drug Mirapex without adequate warnings.

40.    Defendant Rohling wantonly failed to warn the treating physician of any potential complications such as compulsive behavior even though Rohling knew or should have known of the association between Mirapex and compulsive behavior.

41.    Defendants Kmart, Redding and Strange wantonly failed to warn Mr. Blankenship of any potential complications such as compulsive behavior even though said Defendants knew or should have known of the association between Mirapex and compulsive behavior.

42.    As a proximate result of the wrongful conduct as alleged herein, Plaintiff suffered economic damages and mental anguish damages.

WHEREFORE, Plaintiff Robert Blankenship demands judgment against Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" in such amount as a jury may award including punitive damages and for the costs of this action.

### COUNT FOUR
#### (Fraud)

43.    Plaintiff realleges all allegations contained in paragraphs 1 through 42 of the complaint as if set out here in full.

44.    Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" fraudulently misrepresented the safety of the drug by implying that the drug was safe and fraudulently suppressed evidence concerning the dangers of the drug which could result in personal property loss and mental anguish.

9

45.    Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" were under a duty to disclose the safety and efficacy of the drug to the treating physicians and patients.

46.    Said Defendants breached their duty to disclose, suppressing known information, regarding potential complications with the use of the drug Mirapex.

47.    As a proximate consequence of the fraudulent suppression and misrepresentations, Plaintiff Robert Blankenship was injured and damaged in that he lost his life savings and suffered mental anguish.

48.    Plaintiff only recently discovered the misrepresentation and fraudulent concealment.

WHEREFORE, Plaintiff Robert Blankenship demands judgment against Defendants Pfizer, Boehringer, Rohling, Kmart, Redding and Strange and Fictitious Defendants "A" through "F" for compensatory and punitive damages and to any other, further relief to which he may be entitled under the laws of the State of Alabama.


                                        J. GREG ALLEN (ALL021)
                                        Attorney for Plaintiffs


OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

_____
Shane Seaborn (J&R)
S. SHANE SEABORN
Attorney for Plaintiffs

PENN & SEABORN, LLC
P. O. Box 688
Clayton, AL 36016
(334) 775-9778

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF
THIS CAUSE.

_____
OF COUNSEL

11

FOR BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION



ROBERT BLANKENSHIP,       )
                              )
     Plaintiff,          )
                              )
vs.                           )
                              )
PFIZER, INC.; BOEHRINGER    )     CIVIL ACTION NO. CV- *2006 040*
INGELHEIM PHARMACEUTICALS, )
INC.; DAVID ROHLING; KMART OF )
MICHIGAN, INC.; ART REDDING;  )
KELLI STRANGE, et al.,       )
                              )
     Defendants.        )

## PLAINTIFF'S FIRST INTERROGATORIES
## TO DEFENDANT PFIZER, INC.

### DIRECTIONS FOR ANSWERING DISCOVERY
### AND PRODUCING MATERIALS AND THINGS

1.     Interrogatories are to be answered under oath within the time provided by the <u>Alabama Rules of Civil Procedure</u>.

2.     Materials to be produced for inspection and copying are to be produced at the offices of Beasley, Allen, Crow Methvin, Portis & Miles, P.C., 218 Commerce Street, Montgomery, Alabama 36104.

3.     Responses are to be supplemented and additional documents and materials produced if the information and documents requested become available to you. This supplementation is required by the <u>Alabama Rules of Civil Procedure</u> or other rules governing this Court.

1

## DEFINITIONS/ABBREVIATIONS

NOTE: The Plaintiff sets forth the following definitions of various words and phrases which are contained in the attached Requests for Discovery. The Plaintiff provides the following definitions for the purpose of clarifying the meaning of various words and phrases contained herein in order to help this Defendant to understand the objectives of Plaintiff's discovery efforts and to allow it and its representatives to readily respond to the Requests. It is expressly stipulated and agreed by the Plaintiff that an affirmative response on the part of the Defendant will not be construed as an admission that any definition contained therein is either factually correct or legally binding on the Defendant for any purpose other than giving complete and accurate answers to all Discovery requests made by the Plaintiff in this case.

1.    "You," "your," "your company," or "the Defendant" means the Defendant to whom the attached Request is addressed and on whose behalf the response is being made. In the event that the Defendant is a corporation, then either or each of these words or phrases is intended to refer to each and any department, division, office, agency, or affiliate thereof. Further, either and each of said words or phrases is intended to include any successor(s) or predecessor(s) firm or corporation and is intended to include any parent(s) corporation as well as any other corporate business entity with which said corporation has merged or consolidated. Further, each or either of such words or phrases is intended to include present and former officers, directors, agents, employees and any and all

2

other persons, firms or corporations acting or purporting to act on behalf of "you" or "your company" or said "defendant."

    2.    "Document" means the original or any copy of any written, recorded, transcribed, printed, or impressed matter of whatever kind, however produced or reproduced, including but not limited to sound pictorial recordings, computerized information, books, pamphlets, letters, correspondence, memoranda, telegrams, electronic or mechanical transmissions, communications of all kinds, reports, operating statements, working papers, handwritings, notes, charts, papers, writing, printings, transcriptions, tapes and records of all kinds.

    3.    The term "photograph" shall mean all pictures, movies, videotapes, drawings, sketches, diagrams, and plans.

    4.    Unless otherwise specified, the temporal scope of the requests herein is from the date Mirapex was first placed on the market or the date the manufacturer first sought FDA approval to market the drug to present.

    5.    "Identify" when used with respect to a <u>document</u> means to describe the document in sufficient particularity to withstand valid objections to such description appearing in a subpoena duces tecum or request or motion for production of such document, including, but not limited to, the type of document (i.e., "letter"), date, authority and address; and to state the name, address, and business relationship (if any) to each party to this action, of each and every person who has such document in his or her possession, custody or control and the location of such document.

3

)                                                      )

6.    "Identify" when used with respect to an <u>individual</u> means to state the person's full name, present occupation and business affiliation, present home address and business address, present home telephone number and business telephone number and present and past business affiliations or relationships, if any, with any of the parties to this action.

7.    "Identify" when used with respect to a <u>business enterprise</u>, means to state that enterprise's legal name, the names under which it does business if other than its legal name, its form (e.g. proprietorship, partnership, corporation, etc.) of doing business; if incorporated, the State of incorporation, the address of its principal office or place of business, and the name and address of each of its officers and directors at all times material to the matter inquired about; if a partnership, the name and address and interest of each partner at all times material to the matters inquired about.

8.    "Describe" when used with respect to any <u>oral communication or statement</u>, means to identify each and every person present or who engaged therein, and the substance of what was said; the date and time of such oral communications or statements; and where each person was when such oral communications or statements were made.

## INTERROGATORIES

1.    Please identify all persons who provided information responsive to these interrogatories indicating the person's name, address, relationship to the Defendant and which interrogatory or interrogatories they provided answers to.

2.    State the correct corporate name of this Defendant, any name under which the Defendant does business and its principle place of business.

3.    State the division, subsidiary, department or operating unit responsible for the following regarding Mirapex including the name of the person in charge of the department, or operating unit.

(a) Pre-clinical Trials (including in vitro and animal testing);

(b) Clinical Trials (including all Phase I, II, III and IV clinical trials);

(c) Regulatory Approval and Compliance;

(d) Manufacturing;

(e) Marketing;

(f) Labeling;

(g) Promotion;

(h) Distribution; and,

(i) Advertising (including direct to consumer advertising and advertising directed to healthcare providers).

4.    Please identify the person(s) having primary responsibility for the following Mirapex related functions, indicating the job title, current corporate affiliation and dates that the person(s) were responsible for those functions.

(a) Preclinical testing, including in vitro studies and animal studies;

(b) Clinical Testing (including Phase I, II, III and IV clinical trials);

(c) Regulatory Approval or Compliance;

(d) FDA Liaison;

)                )

(e)  Marketing;

(f)  Labeling;

(g)  Promotion;

(h)  Sales;

(i)  Advertising (including direct to consumer advertising);

(j)  Legal Affairs; and,

(k)  Securing insurance or reinsurance for any liability related event.

5.      Please provide the following requested information concerning the following Mirapex related events:

(a)      The date that the Investigational New Drug Application (INDA) was filed with the FDA;

(b)      The date and all attendees at the "end of Phase II" meeting at the FDA;

(c)      The date the Mirapex New Drug Application (NDA) was filed with the FDA, stating the indication(s) for which the application was filed;

(d)      The date that the FDA approved the Mirapex NDA and the indication(s) for which Mirapex was approved;

(e)      The date that Mirapex was first made available for sale in the United States;

(f)      The date any Supplemental New Drug Application (SNDA) was filed, the indication(s) for which the application(s) was filed, the FDA's decision with respect to each SNDA and the date(s) of each FDA's decision;

(g)      The date of any label change of Mirapex stating the substance and purpose(s) of any labeling change;

(h)      The date of any "Dear Doctor Letter' or "Dear Healthcare Provider" letters regarding Mirapex indicating the substance and purpose of that letter; and,

(i)    The date any warning was provided to any treating physicians that indicates Mirapex may be associated with compulsive behavior.

6.    Please provide the following financial data available regarding Pfizer and Mirapex.

(a)    Pfizer's gross sales of all drugs for each year between 1999 and 2005;

(b)    Pfizer's gross sales of Mirapex for each year between 1999 and 2005; and,

(c)    Net profits attributable to the sale of Mirapex for each year between 1999 and 2005.

7.    What is the legal and financial relationship between Pfizer and Boehringer Ingelheim Pharmaceuticals, Inc.?

8.    State the total amount of insurance that you believe may be available to satisfy any claim that has been or will be made against you, your predecessors, successors, and assigns as a result of the use of Mirapex or for its sale or distribution. This requires that you provide the following information:

(a)    Identify each and every liability, comprehensive, general liability, advertising liability or product liability policy (and every other policy which may provide coverage to any claim for injury associated in this litigation) that you purchased or on which you are a named insured (including policies purchased or acquired by related corporate entities), including all excess layers and/or umbrella policies, stating the policy number, name and address of insurer who issued the insurance policy and indicate any self-insurer retention;

)                                        )

(b)     State the type of coverage provided by each identified policy (e.g., claims made, occurrence based, etc.); and,

(c)     State the limits of liability per claim and the aggregate for each such policy.

9.     Identify and describe any and all indemnity agreements, agreements to assume liability, agreements to assume the defense or any other such agreement between you, your insurer and any other person regarding or pertaining to claims for injuries alleged as a result of ingestion of Mirapex. This includes, but is not limited to, agreements with prescribing healthcare providers.

10.     Please state the number of Mirapex related claims for injuries you have settled and, for each such claim, please provide the following information:

(a)     The place or jurisdiction of the case and, if filed, the complete caption; and,

(b)     The name, firm name, address and telephone number of the lawyers who made the claim.

11.     Was Mirapex approved for Marketing in any country (or jurisdictional entity such as the European Union) other than the United States?

12.     For each country that approved Mirapex for marketing, please state the following:

(a)     The Country and the Regulatory agency that approved Mirapex;

(b)     The Company or sponsor that sought regulatory approval for Mirapex;

(c)     The date(s) that Mirapex was approved;

(d)     The indications for which Mirapex was approved;

(e)     The foreign trade names for Mirapex;

(f)     Any regulatory restrictions placed on the use of Mirapex by any foreign regulatory authority; and,

(g)     If Mirapex has ever been removed or withdrawn from market in any country.

13.     Did any non-U.S. regulatory agency decline to approve an application to market Mirapex for a particular indication or indications?

14.     For each country (or jurisdictional entity such as the European Union) whose regulatory agency declined to approve the marketing of Mirapex for a particular indication or indications as identified in your answer to Interrogatory no. 13, please state the following:

(a)     The regulatory agency which declined to approve the marketing of Mirapex;

(b)     The indication(s) for which approval was declined; and,

(c)     The stated reasons why the foreign agency declined to approved Mirapex.

15.     For any country or jurisdictional entity which provided different warnings that were in effect in the United States, please state the country and how the warnings were different and identify (by bates number) all warnings, instructions and product labels that accompanied Mirapex in other countries.

)                                    )

16.    Please identify all Regional Sales Divisions responsible for marketing Mirapex during the time it was on the market indicating:

(a)    The identity of each sales division;

(b)    The person(s) who headed each division, indicating the date(s) that such persons held that position; and,

(c)    The current business relationship between Pfizer and any person identified.


17.    Please identify all sales representatives or other employees who were responsible for detailing Mirapex in Dothan, Alabama and include:

(a)    Name (including maiden – married name);

(b)    Last known address; and,

(c)    Whether and when you requested the detailer or sales representative to maintain or produce any "call notes" that reflect or relate to visits with physicians and health care providers.


18.    Please identify all persons or entities responsible for developing Pfizer's direct to consumer advertising campaign for Mirapex indicating their address and current affiliation with Defendant.


19.    Please identify all Advertising Agencies or Marketing Agencies who conducted Marketing studies or surveys for Pfizer with respect to Mirapex. In your answer, please also identify the Pfizer employee(s) responsible for securing these firms and for negotiating their contractual arrangements.

)                                              )

20.    Please identify any and all databases that reflect the activities of Pfizer sales force with respect to Mirapex indicating in your answers the purpose(s) and the general content of each such database.

21.    Please state Pfizer's television advertising budget for Mirapex for each year 1999-2005.

22.    What was this Defendant's annual budget for field sales force costs and activities relating to the promotion of Mirapex including, but not limited to, the budget for samples, product meetings, and representative literature, for the years 1999-2005?

23.    Give the name, address, and job title of the person employed or retained by this Defendant most familiar with maintaining any and all post-marketing studies, whether initiated, funded or conducted by this Defendant or some other source or entity.

24.    List all competitor drugs to Mirapex including the drug name and manufacturer's name.

25.    What instructions were given to your sales representatives for providing information to physicians or responding to physician inquiries about the risks or potential risks associated with Mirapex?

26.    Have any of your sales or marketing employees (including detail persons) been investigated or fined as a result of their activities detailing Mirapex? If so, please identify

(a)    The person(s) who were investigated;

(b)    The internal or external body doing the investigation;

(c)    The results of the investigation (including the amount of any fine);

(d)    All documents referring or relating to each such investigation.

27.    State the full extent of this Defendant's knowledge relating to the possibility that Mirapex may be associated with compulsive behavior, including the dates when the knowledge was obtained.

28.    Please identify every clinical (Human) study initiated by Pfizer involving Mirapex. Include in your answer the following information:

(a)    Protocol Number and Study Name;

(b)    All Clinical investigators, including name, address and affiliated medical institution;

(c)    Whether the study was completed and, if not, why not;

(d)    The location (by bates number) of the final study report;

(e)    Whether the study was submitted for publication and, if so, whether it was accepted for publication;

(f)    All amendments to the study protocol and the reasons why the protocol was amended;

(g)    The location (by bates number) of all informed consent forms;

(h)    The citation to the study if it was published;

12

(i)   The date that the data from each study was "locked" and the date that the data was unblended;

(j)   The number or patient who enrolled in each study and the number of people who completed each study; and,

(k)   Whether the study went into open-label extension.

29.   For each clinical trial patient who sustained an investigator reported act of compulsive behavior event which was evaluated to determine whether it should be associated with Mirapex, please identify the patient by anonymous patient number and identify all records that refer and relate to that patient.

30.   Please identify each and every outside consultant that you employed with respect to the compulsive behavior issues related to Mirapex giving their name, address and indicating the work you asked each consultant to do.

31.   Is Mirapex capable of causing compulsive gambling?

32.   Is Mirapex capable of causing compulsive behavior?

33.   Please list all testimony provided by Pfizer employees concerning behavioral issues of Mirapex, giving the date of the testimony, the person giving testimony, the circumstances of testimony (deposition, trial, investigative hearings, etc.) and the persons in possession of the transcript of such testimony.

13

34.    Identify each person whom you anticipate may testify as an expert witness in this action, and for each such person state:

    (a)    The subject matter on which the expert is expected to testify;

    (b)    The substance of the facts and opinions to which the expert is expected to testify;

    (c)    A summary of the grounds for each opinion;

    (d)    All civil actions or other legal proceedings in which such person has testified, by deposition or at trial, since January 1, 1995, including for each action or proceeding the name of the case, the jurisdiction/court in which such action or proceeding is or was pending, the case number, name and address of opposing counsel, and whether the testimony was by deposition, at trial or other hearing, by affidavit or other sworn declaration, or any combination of the foregoing.  In addition, produce a current resume, curriculum vitae or similar other detailed statement of the person's background and qualifications.

35.    Has anyone with this Defendant ever recommended adding a warning or information suggesting any association between the use of Mirapex and compulsive gambling?

36.    If so, please state the name, address, position and job title of all persons and attach any written documentation of the suggestion.

37.    Please identify any other claim or lawsuit filed against this Defendant alleging Mirapex caused compulsive behavior.

38.    Please attach a copy of any complaint, claim or documentation of

any oral complaint as described above.

_J. Greg Allen_
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

### CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the _19th_ day of _June_, 2006.

_J. Greg Allen_
OF COUNSEL

)                                    )

**FOR BARBOUR COUNTY, ALABAMA**
**CLAYTON DIVISION**



ROBERT BLANKENSHIP,                    )
                                       )
    Plaintiff,     )
                                       )
vs.                                    )
                                       )
PFIZER, INC.; BOEHRINGER               )    CIVIL ACTION NO. CV-*2006 040*
INGELHEIM PHARMACEUTICALS,             )
INC.; DAVID ROHLING; KMART OF          )
MICHIGAN, INC.; ART REDDING;           )
KELLI STRANGE, et al.,                 )
                                       )
    Defendants.    )

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF**
**DOCUMENTS TO DEFENDANT PFIZER, INC.**

    Pursuant to the Alabama Rules of Civil Procedure, Plaintiff in the above-styled action hereby requests that Defendant Pfizer, Inc. ("Pfizer") produce for inspection and copying the documents and things described below that are in the possession, custody, and control of Defendant, its employees, subordinates, agents and attorneys.

    If a privilege is claimed as to any document otherwise covered by this request for production, Plaintiff requests that each document to which privilege is claimed be identified with such particularity and in such a manner that the Court, and not counsel unilaterally, may determine whether the document is indeed entitled to privileged status.

1

)                                              )

Plaintiff requests a separate response to each request and that any documents produced be designated as responsive to that specific request and that any supplemental productions be treated in the same manner.

1.    Any information about Mirapex for direct dissemination to the patient and/or his/her family, or for other direct advertising or marketing to consumers, including, but not limited to patient hand-outs, instructions to doctors for answering patient inquiries, or videos.

2.    The Defendant's records of account that demonstrate the costs incurred or otherwise paid by the Defendant in conducting its clinical trials of Mirapex.

3.    The complete text of all drafts of the product information leaflets, package inserts and brochures that were intended for publication or other distribution to doctors, pharmacists and/or consumers concerning Mirapex.

4.    Any written documents, notes, correspondence, studies, memos, etc. that mention, refer to, suggest or imply that use of Mirapex or other dopamine agonist may cause compulsive behavior.

5.    All reports and other documents provided to the FDA or other governmental organization regarding compulsive behavior, adverse experiences or effects or events from the use of Mirapex.

6.    Provide a detailed privilege log of all documents that have been removed from any file or not produced because of a claimed privilege, work product doctrine, trade secret or confidential business information, or other

2

)                                    )

privilege or basis for nondisclosure. Identify each document with such specificity that Plaintiff may fashion a particularized motion to compel as to each non-disclosed document.

7.    If this Defendant has relied upon or referred to any document in answering any interrogatory, please attach copies of each such document to your answers.

8.    All tangible and electronic internal correspondence, person specific and/or general, including but not limited to, memos, e-mails, or other electronic data transmissions, to and from all sales and marketing personnel employed by, retained by, associated with or in any way affiliated with Defendant, which in any way discusses, relates to, or involves potential concerns about behavioral issues associated with taking Mirapex.

9.    Any and all internal correspondence, memos and e-mail or other electronic data transmission, to the date of this request, to or from Defendant's sales and marketing staff and personnel, including, but not limited to, Mirapex drug sales representatives, detail personnel and their managers, which in any way relates to, involves, or discusses what information regarding compulsive behavior and use of Mirapex.

10.    A copy of the minutes of each and every management committee meeting held by Defendant that in anyway related to Mirapex, including, but not limited to, pre-marketing safety concerns, adverse events, marketing strategies, potential market penetration, potential profits, potential sales, strategies regarding how to respond to and deal with FDA concerns, strategies to persuade

any person that adverse events related to Mirapex were not serious and should be dismissed, ignored or downplayed; package insert revision discussions, or any other subject matter related to the research, development, marketing, sales and safety concerns relating to Mirapex.

11.    Any collection of adverse events regarding the drug Mirapex.

12.    Any studies in your possession regarding the potential for compulsive behavior from the use of dopamine agonists.

13.    Any internal studies or investigations regarding Mirapex and the potential for compulsive behavior.

14.    Any memoranda, notes, correspondence, emails, etc. regarding compulsive gambling and use of dopamine agonists.

15.    Any letters to or from the FDA regarding compulsive gambling and the use of Mirapex.

16.    Any documents which reflect any studies of any association between the use of Mirapex and compulsive gambling.

17.    Any letters or records of oral communication regarding any questions by patients or doctors as to whether there is an association between compulsive gambling and the use of Mirapex.

18.    Any lawsuits involving the drug Mirapex where it is alleged that compulsive behavior resulted in the use of the drug.

19.    All published literature in the possession of the Defendant's concerning Mirapex and the association with compulsive behavior.

4

20.    Any documents of which this Defendant has knowledge of concerning or relating to Mirapex and compulsive gambling.

21.    All clinical studies which Defendant has knowledge of regarding Mirapex and compulsive behavior.

22.    All documents which relate to, refer to and/or discuss the dates on which the drug Mirapex was detailed to Dr. Alan Prince.

23.    All documents that were provided by this Defendant to all Detail persons in connection with his or her efforts to detail Mirapex to Dr. Prince.

24.    The new drug application for Mirapex and all attachments.

25.    All emails from any employee of this Defendant that refers to Mirapex and compulsive gambling.

_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

**CERTIFICATE OF SERVICE**

    I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the ___19ᵗʰ___ day of _____June_____, 2006.

                                               _____

                                    OF COUNSEL

)                                                          )

**FOR BARBOUR COUNTY, ALABAMA**
**CLAYTON DIVISION**

ROBERT BLANKENSHIP,                    )
                                       )
    Plaintiff,                         )
                                       )
vs.                                    )
                                       )
PFIZER, INC.; BOEHRINGER               )     CIVIL ACTION NO. CV- *2006 040*
INGELHEIM PHARMACEUTICALS,             )
INC.; DAVID ROHLING; KMART OF          )
MICHIGAN, INC.; ART REDDING;           )
KELLI STRANGE, et al.,                 )
                                       )
    Defendants.                        )

**F I L E D**
**JUN 2 0 2006**
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

**PLAINTIFF'S FIRST INTERROGATORIES**
**TO DEFENDANT BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.**

**DIRECTIONS FOR ANSWERING DISCOVERY**
**AND PRODUCING MATERIALS AND THINGS**

    1.    Interrogatories are to be answered under oath within the time provided by the Alabama Rules of Civil Procedure.

    2.    Materials to be produced for inspection and copying are to be produced at the offices of Beasley, Allen, Crow Methvin, Portis & Miles, P.C., 218 Commerce Street, Montgomery, Alabama 36104.

    3.    Responses are to be supplemented and additional documents and materials produced if the information and documents requested become available to you. This supplementation is required by the Alabama Rules of Civil Procedure or other rules governing this Court.

1

)                              )

## DEFINITIONS/ABBREVIATIONS

NOTE: The Plaintiff sets forth the following definitions of various words and phrases which are contained in the attached Requests for Discovery. The Plaintiff provides the following definitions for the purpose of clarifying the meaning of various words and phrases contained herein in order to help this Defendant to understand the objectives of Plaintiff's discovery efforts and to allow it and its representatives to readily respond to the Requests. It is expressly stipulated and agreed by the Plaintiff that an affirmative response on the part of the Defendant will not be construed as an admission that any definition contained therein is either factually correct or legally binding on the Defendant for any purpose other than giving complete and accurate answers to all Discovery requests made by the Plaintiff in this case.

1.    "You," "your," "your company," or "the Defendant" means the Defendant to whom the attached Request is addressed and on whose behalf the response is being made. In the event that the Defendant is a corporation, then either or each of these words or phrases is intended to refer to each and any department, division, office, agency, or affiliate thereof. Further, either and each of said words or phrases is intended to include any successor(s) or predecessor(s) firm or corporation and is intended to include any parent(s) corporation as well as any other corporate business entity with which said corporation has merged or consolidated. Further, each or either of such words or phrases is intended to include present and former officers, directors, agents, employees and any and all

2

)                                    )

other persons, firms or corporations acting or purporting to act on behalf of "you" or "your company" or said "defendant."

2.      "Document" means the original or any copy of any written, recorded, transcribed, printed, or impressed matter of whatever kind, however produced or reproduced, including but not limited to sound pictorial recordings, computerized information, books, pamphlets, letters, correspondence, memoranda, telegrams, electronic or mechanical transmissions, communications of all kinds, reports, operating statements, working papers, handwritings, notes, charts, papers, writing, printings, transcriptions, tapes and records of all kinds.

3.      The term "photograph" shall mean all pictures, movies, videotapes, drawings, sketches, diagrams, and plans.

4.      Unless otherwise specified, the temporal scope of the requests herein is from the date Mirapex was first placed on the market or the date the manufacturer first sought FDA approval to market the drug to present.

5.      "Identify" when used with respect to a <u>document</u> means to describe the document in sufficient particularity to withstand valid objections to such description appearing in a subpoena duces tecum or request or motion for production of such document, including, but not limited to, the type of document (i.e., "letter"), date, authority and address; and to state the name, address, and business relationship (if any) to each party to this action, of each and every person who has such document in his or her possession, custody or control and the location of such document.

3

)                                    )

6.    "Identify" when used with respect to an <u>individual</u> means to state the person's full name, present occupation and business affiliation, present home address and business address, present home telephone number and business telephone number and present and past business affiliations or relationships, if any, with any of the parties to this action.

7.    "Identify" when used with respect to a <u>business enterprise</u>, means to state that enterprise's legal name, the names under which it does business if other than its legal name, its form (e.g. proprietorship, partnership, corporation, etc.) of doing business; if incorporated, the State of incorporation, the address of its principal office or place of business, and the name and address of each of its officers and directors at all times material to the matter inquired about; if a partnership, the name and address and interest of each partner at all times material to the matters inquired about.

8.    "Describe" when used with respect to any <u>oral communication or statement</u>, means to identify each and every person present or who engaged therein, and the substance of what was said; the date and time of such oral communications or statements; and where each person was when such oral communications or statements were made.

<u>INTERROGATORIES</u>

1.    Please identify all persons who provided information responsive to these interrogatories indicating the person's name, address, relationship to the Defendant and which interrogatory or interrogatories they provided answers to.

)                              )

2.    State the correct corporate name of this Defendant, any name under which the Defendant does business and its principle place of business.

3.    State the division, subsidiary, department or operating unit responsible for the following regarding Mirapex including the name of the person in charge of the department, or operating unit.

(a) Pre-clinical Trials (including in vitro and animal testing);

(b) Clinical Trials (including all Phase I, II, III and IV clinical trials);

(c) Regulatory Approval and Compliance;

(d) Manufacturing;

(e) Marketing;

(f) Labeling;

(g) Promotion;

(h) Distribution; and,

(i) Advertising (including direct to consumer advertising and advertising directed to healthcare providers).

4.    Please identify the person(s) having primary responsibility for the following Mirapex related functions, indicating the job title, current corporate affiliation and dates that the person(s) were responsible for those functions.

(a) Preclinical testing, including in vitro studies and animal studies;

(b) Clinical Testing (including Phase I, II, III and IV clinical trials);

(c) Regulatory Approval or Compliance;

(d) FDA Liaison;

(e) Marketing;

(f) Labeling;

(g) Promotion;

(h) Sales;

(i) Advertising (including direct to consumer advertising);

(j) Legal Affairs; and,

(k) Securing insurance or reinsurance for any liability related event.


5.     Please provide the following requested information concerning the

following Mirapex related events:

    (a)    The date that the Investigational New Drug Application (INDA) was filed with the FDA;

    (b)    The date and all attendees at the "end of Phase II" meeting at the FDA;

    (c)    The date the Mirapex New Drug Application (NDA) was filed with the FDA, stating the indication(s) for which the application was filed;

    (d)    The date that the FDA approved the Mirapex NDA and the indication(s) for which Mirapex was approved;

    (e)    The date that Mirapex was first made available for sale in the United States;

    (f)    The date any Supplemental New Drug Application (SNDA) was filed, the indication(s) for which the application(s) was filed, the FDA's decision with respect to each SNDA and the date(s) of each FDA's decision;

    (g)    The date of any label change of Mirapex stating the substance and purpose(s) of any labeling change;

    (h)    The date of any "Dear Doctor Letter' or "Dear Healthcare Provider" letters regarding Mirapex indicating the substance and purpose of that letter; and,

(i)    The date any warning was provided to any treating physicians that indicates Mirapex may be associated with compulsive behavior.

6.    Please provide the following financial data available regarding Boehringer and Mirapex.

(a)    Boehringer's gross sales of all drugs for each year between 1999 and 2005;

(b)    Boehringer's gross sales of Mirapex for each year between 1999 and 2005; and,

(c)    Net profits attributable to the sale of Mirapex for each year between 1999 and 2005.

7.    What is the legal and financial relationship between Pfizer and Boehringer Ingelheim Pharmaceuticals, Inc.?

8.    State the total amount of insurance that you believe may be available to satisfy any claim that has been or will be made against you, your predecessors, successors, and assigns as a result of the use of Mirapex or for its sale or distribution. This requires that you provide the following information:

(a)    Identify each and every liability, comprehensive, general liability, advertising liability or product liability policy (and every other policy which may provide coverage to any claim for injury associated in this litigation) that you purchased or on which you are a named insured (including policies purchased or acquired by related corporate entities), including all excess layers and/or umbrella policies, stating the policy number, name and address of insurer who issued the insurance policy and indicate any self-insurer retention;

)                                    )

    (b)    State the type of coverage provided by each identified policy (e.g., claims made, occurrence based, etc.); and,

    (c)    State the limits of liability per claim and the aggregate for each such policy.

    9.    Identify and describe any and all indemnity agreements, agreements to assume liability, agreements to assume the defense or any other such agreement between you, your insurer and any other person regarding or pertaining to claims for injuries alleged as a result of ingestion of Mirapex. This includes, but is not limited to, agreements with prescribing healthcare providers.

    10.    Please state the number of Mirapex related claims for injuries you have settled and, for each such claim, please provide the following information:

    (a)    The place or jurisdiction of the case and, if filed, the complete caption; and,

    (b)    The name, firm name, address and telephone number of the lawyers who made the claim.

    11.    Was Mirapex approved for Marketing in any country (or jurisdictional entity such as the European Union) other than the United States?

    12.    For each country that approved Mirapex for marketing, please state the following:

    (a)    The Country and the Regulatory agency that approved Mirapex;

    (b)    The Company or sponsor that sought regulatory approval for Mirapex;

(c)     The date(s) that Mirapex was approved;

(d)     The indications for which Mirapex was approved;

(e)     The foreign trade names for Mirapex;

(f)     Any regulatory restrictions placed on the use of Mirapex by any foreign regulatory authority; and,

(g)     If Mirapex has ever been removed or withdrawn from market in any country.

13.     Did any non-U.S. regulatory agency decline to approve an application to market Mirapex for a particular indication or indications?

14.     For each country (or jurisdictional entity such as the European Union) whose regulatory agency declined to approve the marketing of Mirapex for a particular indication or indications as identified in your answer to Interrogatory no. 13, please state the following:

(a)     The regulatory agency which declined to approve the marketing of Mirapex;

(b)     The indication(s) for which approval was declined; and,

(c)     The stated reasons why the foreign agency declined to approved Mirapex.

15.     For any country or jurisdictional entity which provided different warnings that were in effect in the United States, please state the country and how the warnings were different and identify (by bates number) all warnings, instructions and product labels that accompanied Mirapex in other countries.

9

)                                        )

16.     Please identify all Regional Sales Divisions responsible for marketing Mirapex during the time it was on the market indicating:

    (a)    The identity of each sales division;

    (b)    The person(s) who headed each division, indicating the date(s) that such persons held that position; and,

    (c)    The current business relationship between Boehringer and any person identified.

17.     Please identify all sales representatives or other employees who were responsible for detailing Mirapex in Dothan, Alabama and include:

    (a)    Name (including maiden – married name);

    (b)    Last known address; and,

    (c)    Whether and when you requested the detailer or sales representative to maintain or produce any "call notes" that reflect or relate to visits with physicians and health care providers.

18.     Please identify all persons or entities responsible for developing Boehringer's direct to consumer advertising campaign for Mirapex indicating their address and current affiliation with Defendant.

19.     Please identify all Advertising Agencies or Marketing Agencies who conducted Marketing studies or surveys for Boehringer with respect to Mirapex. In your answer, please also identify the Boehringer employee(s) responsible for securing these firms and for negotiating their contractual arrangements.

)                    )

20.    Please identify any and all databases that reflect the activities of Boehringer sales force with respect to Mirapex indicating in your answers the purpose(s) and the general content of each such database.

21.    Please state Boehringer's television advertising budget for Mirapex for each year 1999-2005.

22.    What was this Defendant's annual budget for field sales force costs and activities relating to the promotion of Mirapex including, but not limited to, the budget for samples, product meetings, and representative literature, for the years 1999-2005?

23.    Give the name, address, and job title of the person employed or retained by this Defendant most familiar with maintaining any and all post-marketing studies, whether initiated, funded or conducted by this Defendant or some other source or entity.

24.    List all competitor drugs to Mirapex including the drug name and manufacturer's name.

25.    What instructions were given to your sales representatives for providing information to physicians or responding to physician inquiries about the risks or potential risks associated with Mirapex?

26.    Have any of your sales or marketing employees (including detail persons) been investigated or fined as a result of their activities detailing Mirapex? If so, please identify

    (a)    The person(s) who were investigated;

    (b)    The internal or external body doing the investigation;

    (c)    The results of the investigation (including the amount of any fine);

    (d)    All documents referring or relating to each such investigation.

27.    State the full extent of this Defendant's knowledge relating to the possibility that Mirapex may be associated with compulsive behavior, including the dates the knowledge was obtained.

28.    Please identify every clinical (Human) study initiated by Boehringer involving Mirapex. Include in your answer the following information:

    (a)    Protocol Number and Study Name;

    (b)    All Clinical investigators, including name, address and affiliated medical institution;

    (c)    Whether the study was completed and, if not, why not;

    (d)    The location (by bates number) of the final study report;

    (e)    Whether the study was submitted for publication and, if so, whether it was accepted for publication;

    (f)    All amendments to the study protocol and the reasons why the protocol was amended;

    (g)    The location (by bates number) of all informed consent forms;

    (h)    The citation to the study if it was published;

(i)    The date that the data from each study was "locked" and the date that the data was unblended;

(j)    The number or patient who enrolled in each study and the number of people who completed each study; and,

(k)    Whether the study went into open-label extension.

29.    For each clinical trial patient who sustained an investigator reported act of compulsive behavior event which was evaluated to determine whether it should be associated with Mirapex, please identify the patient by anonymous patient number and identify all records that refer and relate to that patient.

30.    Please identify each and every outside consultant that you employed with respect to the compulsive behavior issues related to Mirapex giving their name, address and indicating the work you asked each consultant to do.

31.    Is Mirapex capable of causing compulsive gambling?

32.    Is Mirapex capable of causing compulsive behavior?

33.    Please list all testimony provided by Boehringer employees concerning behavioral issues of Mirapex, giving the date of the testimony, the person giving testimony, the circumstances of testimony (deposition, trial,

investigative hearings, etc.) and the persons in possession of the transcript of such testimony.

34.     Identify each person whom you anticipate may testify as an expert witness in this action, and for each such person state:

(a)     The subject matter on which the expert is expected to testify;

(b)     The substance of the facts and opinions to which the expert is expected to testify;

(c)     A summary of the grounds for each opinion;

(d)     All civil actions or other legal proceedings in which such person has testified, by deposition or at trial, since January 1, 1995, including for each action or proceeding the name of the case, the jurisdiction/court in which such action or proceeding is or was pending, the case number, name and address of opposing counsel, and whether the testimony was by deposition, at trial or other hearing, by affidavit or other sworn declaration, or any combination of the foregoing. In addition, produce a current resume, curriculum vitae or similar other detailed statement of the person's background and qualifications.

35.     Has anyone with this Defendant ever recommended adding a warning or information suggesting any association between the use of Mirapex and compulsive gambling?

36.     If so, please state the name, address, position and job title of all persons and attach any written documentation of the suggestion.

37.     Please identify any other claim or lawsuit filed against this

14

Defendant alleging Mirapex caused compulsive behavior.

38.    Please attach a copy of any complaint, claim or documentation of any oral complaint as described above.

_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the __19th__ day of _____June_____, 2006.

_____
OF COUNSEL

**FOR BARBOUR COUNTY, ALABAMA**
**CLAYTON DIVISION**

ROBERT BLANKENSHIP,      )
                             )
    Plaintiff,           )
                             )
vs.                         )
                             )
PFIZER, INC.; BOEHRINGER     )
INGELHEIM PHARMACEUTICALS,  )
INC.; DAVID ROHLING; KMART OF  )
MICHIGAN, INC.; ART REDDING;   )
KELLI STRANGE, et al.,        )
                             )
    Defendants.        )

CIVIL ACTION NO. CV- *2006 040*

FILED
JUN 2 0 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF**
**DOCUMENTS TO DEFENDANT BOEHRINGER INGELHEIM**
**PHARMACEUTICALS, INC.**

Pursuant to the Alabama Rules of Civil Procedure, Plaintiff in the above-styled action hereby requests that Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") produce for inspection and copying the documents and things described below that are in the possession, custody, and control of Defendant, its employees, subordinates, agents and attorneys.

If a privilege is claimed as to any document otherwise covered by this request for production, Plaintiff requests that each document to which privilege is claimed be identified with such particularity and in such a manner that the Court, and not counsel unilaterally, may determine whether the document is indeed entitled to privileged status.

)                                    )

Plaintiff requests a separate response to each request and that any documents produced be designated as responsive to that specific request and that any supplemental productions be treated in the same manner.

1.    Any information about Mirapex for direct dissemination to the patient and/or his/her family, or for other direct advertising or marketing to consumers, including, but not limited to patient hand-outs, instructions to doctors for answering patient inquiries, or videos.

2.    The Defendant's records of account that demonstrate the costs incurred or otherwise paid by the Defendant in conducting its clinical trials of Mirapex.

3.    The complete text of all drafts of the product information leaflets, package inserts and brochures that were intended for publication or other distribution to doctors, pharmacists and/or consumers concerning Mirapex.

4.    Any written documents, notes, correspondence, studies, memos, etc. that mention, refer to, suggest or imply that use of Mirapex or other dopamine agonist may cause compulsive behavior.

5.    All reports and other documents provided to the FDA or other governmental organization regarding compulsive behavior, adverse experiences or effects or events from the use of Mirapex.

6.    Provide a detailed privilege log of all documents that have been removed from any file or not produced because of a claimed privilege, work product doctrine, trade secret or confidential business information, or other

2

)                                    )

privilege or basis for nondisclosure. Identify each document with such specificity that Plaintiff may fashion a particularized motion to compel as to each non-disclosed document.

7.     If this Defendant has relied upon or referred to any document in answering any interrogatory, please attach copies of each such document to your answers.

8.     All tangible and electronic internal correspondence, person specific and/or general, including but not limited to, memos, e-mails, or other electronic data transmissions, to and from all sales and marketing personnel employed by, retained by, associated with or in any way affiliated with Defendant, which in any way discusses, relates to, or involves potential concerns about behavioral issues associated with taking Mirapex.

9.     Any and all internal correspondence, memos and e-mail or other electronic data transmission, to the date of this request, to or from Defendant's sales and marketing staff and personnel, including, but not limited to, Mirapex drug sales representatives, detail personnel and their managers, which in any way relates to, involves, or discusses what information regarding compulsive behavior and use of Mirapex.

10.     A copy of the minutes of each and every management committee meeting held by Defendant that in anyway related to Mirapex, including, but not limited to, pre-marketing safety concerns, adverse events, marketing strategies, potential market penetration, potential profits, potential sales, strategies regarding how to respond to and deal with FDA concerns, strategies to persuade

3

any person that adverse events related to Mirapex were not serious and should be dismissed, ignored or downplayed; package insert revision discussions, or any other subject matter related to the research, development, marketing, sales and safety concerns relating to Mirapex.

11.    Any collection of adverse events regarding the drug Mirapex.

12.    Any studies in your possession regarding the potential for compulsive behavior from the use of dopamine agonists.

13.    Any internal studies or investigations regarding Mirapex and the potential for compulsive behavior.

14.    Any memoranda, notes, correspondence, emails, etc. regarding compulsive gambling and use of dopamine agonists.

15.    Any letters to or from the FDA regarding compulsive gambling and the use of Mirapex.

16.    Any documents which reflect any studies of any association between the use of Mirapex and compulsive gambling.

17.    Any letters or records of oral communication regarding any questions by patients or doctors as to whether there is an association between compulsive gambling and the use of Mirapex.

18.    Any lawsuits involving the drug Mirapex where it is alleged that compulsive behavior resulted in the use of the drug.

19.    All published literature in the possession of the Defendant's concerning Mirapex and the association with compulsive behavior.

)                    )

20.    Any documents of which this Defendant has knowledge of concerning or relating to Mirapex and compulsive gambling.

21.    All clinical studies which Defendant has knowledge of regarding Mirapex and compulsive behavior.

22.    All documents which relate to, refer to and/or discuss the dates on which the drug Mirapex was detailed to Dr. Alan Prince.

23.    All documents that were provided by this Defendant to all Detail persons in connection with his or her efforts to detail Mirapex to Dr. Prince.

24.    The new drug application for Mirapex and all attachments.

25.    All emails from any employee of this Defendant that refers to Mirapex and compulsive gambling.

_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

)                                        )

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the ___19th___ day of ___June___, 2006.

_____
OF COUNSEL

**FOR BARBOUR COUNTY, ALABAMA**
**CLAYTON DIVISION**



ROBERT BLANKENSHIP,     )
                               )
   Plaintiff,            )
                               )
vs.                         )
                               )
PFIZER, INC.; BOEHRINGER    )   CIVIL ACTION NO. CV- *2006 040*
INGELHEIM PHARMACEUTICALS, )
INC.; DAVID ROHLING; KMART OF )
MICHIGAN, INC.; ART REDDING;  )
KELLI STRANGE, et al.,       )
                               )
   Defendants.          )

**PLAINTIFF'S CONSOLIDATED DISCOVERY**
**TO DEFENDANT KMART OF MICHIGAN, INC.**

**DIRECTIONS FOR ANSWERING INTERROGATORIES**
**AND PRODUCING MATERIALS AND THINGS**

    1.    Interrogatories are to be answered under oath within the time provided by the <u>Alabama Rules of Civil Procedure</u>.

    2.    Materials to be produced for inspection and copying are to be produced at the offices of Beasley, Allen, Crow Methvin, Portis & Miles, P.C., 218 Commerce Street, Montgomery, Alabama 36104.

    3.    Responses are to be supplemented and additional documents and materials produced if the information and documents requested become available to you. This supplementation is required by the <u>Alabama Rules of Civil Procedure</u> or other rules governing this Court.

1

)                                    )

## DEFINITIONS/ABBREVIATIONS

NOTE: The Plaintiff sets forth the following definitions of various words and phrases which are contained in the attached Requests for Discovery. The Plaintiff provides the following definitions for the purpose of clarifying the meaning of various words and phrases contained herein in order to help this Defendant to understand the objectives of Plaintiff's discovery efforts and to allow it and its representatives to readily respond to the Requests. It is expressly stipulated and agreed by the Plaintiff that an affirmative response on the part of the Defendant will not be construed as an admission that any definition contained therein is either factually correct or legally binding on the Defendant for any purpose other than giving complete and accurate answers to all Discovery requests made by the Plaintiff in this case.

1.      "You," "your," "your company," or "the Defendant" means the Defendant to whom the attached Request is addressed and on whose behalf the response is being made. In the event that the Defendant is a corporation, then either or each of these words or phrases is intended to refer to each and any department, division, office, agency, or affiliate thereof. Further, either and each of said words or phrases is intended to include any successor(s) or predecessor(s) firm or corporation and is intended to include any parent(s) corporation as well as any other corporate business entity with which said corporation has merged or consolidated. Further, each or either of such words or phrases is intended to include present and former officers, directors, agents, employees and any and all

other persons, firms or corporations acting or purporting to act on behalf of "you" or "your company" or said "defendant."

2.     "Document" means the original or any copy of any written, recorded, transcribed, printed, or impressed matter of whatever kind, however produced or reproduced, including but not limited to sound pictorial recordings, computerized information, books, pamphlets, letters, correspondence, memoranda, telegrams, electronic or mechanical transmissions, communications of all kinds, reports, operating statements, working papers, handwritings, notes, charts, papers, writing, printings, transcriptions, tapes and records of all kinds.

3.     The term "photograph" shall mean all pictures, movies, videotapes, drawings, sketches, diagrams, and plans.

4.     Unless otherwise specified, the temporal scope of the requests herein is from the date Mirapex was first placed on the market or the date the manufacturer first sought FDA approval to market the drug to present.

5.     "Identify" when used with respect to a document means to describe the document in sufficient particularity to withstand valid objections to such description appearing in a subpoena duces tecum or request or motion for production of such document, including, but not limited to, the type of document (i.e., "letter"), date, authority and address; and to state the name, address, and business relationship (if any) to each party to this action, of each and every person who has such document in his or her possession, custody or control and the location of such document.

)                                    )

6.    "Identify" when used with respect to an <u>individual</u> means to state the person's full name, present occupation and business affiliation, present home address and business address, present home telephone number and business telephone number and present and past business affiliations or relationships, if any, with any of the parties to this action.

7.    "Identify" when used with respect to a <u>business enterprise</u>, means to state that enterprise's legal name, the names under which it does business if other than its legal name, its form (e.g. proprietorship, partnership, corporation, etc.) of doing business; if incorporated, the State of incorporation, the address of its principal office or place of business, and the name and address of each of its officers and directors at all times material to the matter inquired about; if a partnership, the name and address and interest of each partner at all times material to the matters inquired about.

8.    "Describe" when used with respect to any <u>oral communication or statement,</u> means to identify each and every person present or who engaged therein, and the substance of what was said; the date and time of such oral communications or statements; and where each person was when such oral communications or statements were made.

## INTERROGATORIES/REQUEST FOR PRODUCTION

1.    What types of information, warnings, instructional use, literature was supplied by the manufacturer to Kmart to its customers about Mirapex? How was it prepared and who prepared it? Was oral counseling given? Please produce any documents reflecting or concerning the same.

2.     What types of warnings and/or special directions for use were in the Kmart literature?  Were there any warnings and/or special directions for use not also present or different from that in the package insert for the drug?  Produce any and all documents reflecting or concerning the same.

3.     Please identify any and all pharmacist who worked at Kmart during the period 2000-2006.

4.     What were the qualifications, and continuing education units status, of the Kmart pharmacist?

5.     Produce any and all records regarding Robert Blankenship for all prescriptions filled at Kmart.

6.     Produce all insurance agreements or policies under which a person transacting insurance may be liable to satisfy part or all of a judgment which may be entered in this civil action or to indemnify or reimburse for payments made to satisfy the judgment.  It is also requested that a verified or attested copy of the declaration sheet relating to any of the aforementioned insurance policies also be produced.

7.     All documents or records of the Defendant relating to any advertisements for Mirapex, the product prescribed to the Robert Blankenship, whether in professional journals or not.

8.     All documents concerning any warnings or instructions for use or other matters concerning the use and/or consumption and possible health risks regarding Mirapex, the product prescribed to the Mr. Blankenship.

5

)                                    )

9.    All documents provided by any manufacturer of any Mirapex product containing instructions or warnings for the ultimate consumers of the product.

10.    All published literature in the possession of the Defendant concerning Mirapex and compulsive gambling.

11.    Any documents of which defendant has knowledge of concerning or relating to Mirapex and compulsive gambling.

12.    All clinical studies which Defendant has knowledge of regarding Mirapex and compulsive gambling.

13.    Provide all intracompany memoranda, computer records, notes, correspondence and emails from 1999 to the present concerning the issue of whether Mirapex can cause or induce compulsive gambling.

14.    Has this Defendant ever been sued for products liability pertaining to Mirapex?  If so, state:

   (a)    When was such suit filed?

   (b)    Who made such claim or filed such suit, giving the address of the person who made such claim?

   (c)    What was the nature of the claim?

   (d)    What injuries or damages were claimed in each suit or claim?

   (e)    What was the result of such claim or suit?

   (f)    Please produce documents showing such.

15.    In regard to expert witnesses consulted by this Defendant, state the subject matter upon which each such expert was consulted and if it is expected that

such expert witness will testify in support of the allegations made in your answer or in defense to the Plaintiff's claims, please state the subject matter upon which each such expert is expected to testify.

16. Give the name, address, and job title with this Defendant of the person most familiar with maintaining the records of consumer complaints that are made.

17. If this Defendant has relied upon any document in answering any interrogatory, please attach copies of each such document to your answers.

18. Produce any and all studies regarding the safety and effectiveness of the drug Mirapex.

19. The personnel file of the pharmacist(s) that filled Mirapex for Robert Blankenship.

20. All correspondence relating to Robert Blankenship to or from this Defendant.

_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff


OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

)                                    )

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the __19th__ day of _____June_____, 2006.

_____
OF COUNSEL

)                                    )

**FOR BARBOUR COUNTY, ALABAMA**
**CLAYTON DIVISION**

FILED
JUN 2 0 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

| | |
|---|---|
| ROBERT BLANKENSHIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PFIZER, INC.; BOEHRINGER | ) |
| INGELHEIM PHARMACEUTICALS, | ) |
| INC.; DAVID ROHLING; KMART OF | ) |
| MICHIGAN, INC.; ART REDDING; | ) |
| KELLI STRANGE, et al., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO. CV- *2006 040*

**PLAINTIFF'S CONSOLIDATED INTERROGATORIES AND REQUEST FOR**
**PRODUCTION TO DEFENDANT DAVID ROHLING**

**I.**

**DIRECTIONS FOR ANSWERING INTERROGATORIES AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff in the above-styled action serves these Interrogatories upon

Defendant, David Rohling, and request that they be answered fully in writing and

under oath within the time provided by the Alabama Rules of Civil Procedure.

Each interrogatory is addressed to the knowledge and information of Defendant's

attorneys, investigators, agents, employees, and other representatives. When a

question is directed to Defendant, the question is also directed to the

aforementioned persons.

These Interrogatories shall be deemed continuing so as to require

supplemental answers if the persons or entities to whom these Interrogatories

1

)                                              )

are addressed obtain further information between the time the initial answers are

served and the time of trial.

## DEFINITIONS AND INSTRUCTIONS

"Document" shall be given the broadest meaning possible under the Alabama Rules of Civil Procedure. By way of example, document means any written, recorded, or graphic material, whether prepared by you or by an other person, that is in your possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic form and any other communications or information recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings and telephone or other communications; transparencies, view-graphs, foils, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; publications; photographs, diagrams, graphs, charts, and other drawings; photocopies, microfilm, microfiche, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, laser, and optical disks), and other electronic recordings; financial models, statistical models and other data compilations; and computer printouts. The term includes all drafts of a document; the original document (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, or other markings). The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

"Tangible thing" or "tangible item" shall mean any physical object, physical evidence, laboratory exhibit, specimen, and the like.

"Related to" or "relating to" means consisting of, referring to, pertaining to, reflecting, supporting, prepared in connection with, used in preparation for, or being in anyway legally or logically connected with the matter discussed.

"Identify" or "identity with respect to a document or tangible thing" shall mean to set forth the type of document or tangible thing (e.g., letter), its date of creation, author(s), recipient(s), title, if any, and subject matter. If a document is no longer in your possession, custody or control, so state and identify the document to the best of your knowledge and state what disposition was made of it, when and by whom.

"Identify" or "identity with respect to a natural person" shall mean to set forth his or her name, his or her business position and affiliation at the time in

)                                            )

question, his or her last known business position and affiliation, and his or her last known business and home addresses, including telephone numbers. Once a person has been fully identified in your answer, such person may be identified thereafter by name alone.

"Communication" refers to any transfer of information, ideas, opinions or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or verbal transfers between natural persons, but includes all other transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

The term "identify" as used herein in connection with a communication requires that you state (a) the date of the communication, (b) its type (e.g., letter, phone call, or fact to face meeting), (c) the identity of each participant (see the definitions of identify as used in connection with person above), (d) its place, if a face to face meeting, (e) the identity of each document constituting or reflecting the communication (see the definitions of identify as used in connection with documents, above) and(f) the substance of the communication.

"You" and "Your" shall mean the Defendant, individually and, where appropriate, any representative, agent, or attorney or prior attorney of the Defendant.

"Plaintiff" or "Plaintiffs" shall mean the Plaintiff or Plaintiffs herein individually, and, where appropriate, any representative, agent, or attorney or primary attorney of the plaintiff.

"Defendant" or "Defendants" shall mean any of the Defendants named in the instant action.

"Health care provider" or "mental care provider" shall mean any person who is or has in the past been serving in the health or mental care profession, including, but not limited to, physicians, doctors, surgeons, internists, nephrologists, neurologists, psychiatrists, psychologists, psychotherapists, cardiologists, LPNs, social workers, nurses and family practitioners.

"Detail person" shall refer to any current and/or former employee of you and/or any other entity who sold, marketed, promoted, and/or introduced Mirapex to medical and pharmaceutical professionals.

"Detail" or "Detailed" shall refer to the act of selling, marketing, promoting and/or introducing pharmaceuticals to medical and pharmaceutical professionals.

3

)                                              )

## II

### INTERROGATORIES

1.    State the full legal name of this Defendant.

2.    State the current mailing and physical address of this Defendant.

3.    State any physical address at which within the last ten (10) years this Defendant resided if different from the address(s) identified in Interrogatory No. 2 above.

4.    State the relationship between yourself and any other Defendant in this lawsuit.   Please produce any documents that are evidence of such relationship.

5.    Please fully identify all individuals assisting in the provision of answers and materials responsive to these discovery requests.

6.    Please fully identify each and every employer by whom you have been employed for the past ten (10) years.

7.    With respect and relating to the individual(s) and/or entity(s) identified in Interrogatory No. 6 above, please state the following as to each:

    a. Dates during which you were employed;

    b. Positions you have held;

)                                    )

   c. Exact duties for which you were hired to perform;

   d. Specific duties you have performed if different from those identified in Interrogatory No. 7(c) above;

   e. Geographic location(s) in which you held the positions and/or performed the duties identified in Interrogatory No 7 (b), (c) and (d) above;

   f. Fully identify your immediate supervisors and/or the names of the persons to whom you reported;

   g. Fully identify all persons who you have supervised and/or who have reported to you;

   8.    Please fully identify all sales representatives, sales managers and/or cluster leaders within your cluster who have at any time resided within the geographic sales territory that encompasses Barbour County, Alabama.

   9.    With respect and relating to the individual(s) identified in Interrogatory No. 8 above, please state the following as to each:

       a. Current employer, if other than Boehringer Ingelheim or Pfizer;

       b. Last known physical address.

   10.   Please fully identify all health care providers upon whom you have called or in any way contacted during the performance of your duties as an employee, representative or agent of any individual or entity identified in Interrogatory No. 6 above.

   11.   Please fully identify all health care providers upon whom any of the individuals identified in Interrogatory No. 7(g) have called or in any way contacted

during the performance of their duties as an employee, representative or agent of any individual or entity identified in Interrogatory No. 6 above.

    12.    In regard to expert witnesses consulted by this Defendant, state the subject matter upon which each such expert was consulted and if it is expected that such expert witness will testify in support of the allegations made in your answer or in defense to the Plaintiff's claims, please state the subject matter upon which each such expert is expected to testify.

<u>III</u>

### REQUESTS FOR PRODUCTION

    Plaintiff requests that Defendant, David Rohling, produce the following documents within the time and manner provided by law:

    1.    Produce all materials provided to you by Boehringer Ingelheim and/or Pfizer regarding Mirapex, its benefits and risks.

    2.    Produce all materials provided to you by your employer, if other than Boehringer Ingelheim and/or Pfizer, regarding Mirapex, its benefits and risks.

    3.    Produce all marketing materials provided to you by Boehringer Ingelheim and/or Pfizer, or your employer if other than Boehringer Ingelheim and/or Pfizer, that were designated by Boehringer Ingelheim and/or Pfizer as materials that are not to be left with physicians called upon.

4.    All product launch materials provided to you by Boehringer Ingelheim and/or Pfizer, including but not limited to, all product information, marketing information, sales training materials, question/answer sheets (situational examples of how to answer physician concerns), approved sales training aides, launch notebook, and the like.

5.    All product information ever provided to you by Boehringer Ingelheim and/or Pfizer.

6.    All Marketing information ever provided to you by Boehringer Ingelheim and/or Pfizer.

7.    All sales training materials ever provided to you by Boehringer Ingelheim and/or Pfizer.

8.    All question/answer sheets (situational examples of how to answer physician concerns) provided to you by Boehringer Ingelheim and/or Pfizer.

9.    All approved sales training aides provided to you by Boehringer Ingelheim and/or Pfizer.

10.    A copy of the product launch notebook(s) provided to you by Boehringer Ingelheim and/or Pfizer.

)                                          )

_____
J. GREG ALLEN (ALL021)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343

### CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing document with the Circuit Clerk, along with the Summons and Complaint, on this the  19th  day of ____June____, 2006.

_____
OF COUNSEL

8

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### (CLAYTON DIVISION)

| | | |
|---|---|---|
| **ROBERT BLANKENSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **PFIZER, INC., BOEHRINGER** | ) | **CV-2006-040** |
| **INGELHEIM PHARMACEUTICALS,** | ) | |
| **INC., DAVID ROHLING, KMART OF** | ) | |
| **MICHIGAN, INC., ART REDDING,** | ) | |
| **KELLI STRANGE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF FILING NOTICE OF REMOVAL

Please take notice that Defendant Boehringer Ingelheim Pharmaceuticals, Inc., has

caused to be filed on the 20th day of July, 2006, in the United States District Court for the Middle

District of Alabama, Northern Division, a Notice of Removal for the removal of the above-styled

action to said Court. A copy of the Notice of Removal, without exhibits, is attached hereto as

Exhibit A.

Maibeth J. Porter
Alvin L. ("Peck") Fox
Edward A. ("Ted") Hosp

Attorneys for Defendant Boehringer Ingelheim
Pharmaceuticals, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203-2602
Telephone Number: (205) 254-1000

Beth S. Rose, Esq.
Stuart M. Feinblatt, Esq.
Jennifer Ewers Hurley, Esq.
SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record to this proceeding by United States Mail, properly addressed and postage prepaid, or as indicated below, this 20th day of July, 2006:

J. Gregory Allen
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

L. Shane Seaborn
Penn & Seaborn, LLC
P. O. Box 688
Clayton, AL 36016-0688

F.M "Tripp" Haston, III
Andrew B. Johnson
Bradley Arant Rose & White LLP
One Federal Place
1819 5th Ave. North
Birmingham, AL 35203

Philip F. Hutcheson
Boardman, Carr, Weed & Hutcheson, P.C.
400 Boardman Dr.
Chelsea, AL 35043-8211

OF COUNSEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT BLANKENSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **PFIZER, INC., BOEHRINGER** | ) | |
| **INGELHEIM PHARMACEUTICALS,** | ) | |
| **INC., DAVID ROHLING, KMART OF** | ) | (Removed from the Circuit Court |
| **MICHIGAN, INC., ART REDDING,** | ) | of Barbour County, Alabama, |
| **KELLI STRANGE, et al.,** | ) | (Clayton Division) CV-06-040) |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") files this Notice of Removal of the civil action filed by plaintiff Robert Blankenship, which is currently pending in the Circuit Court for Barbour County, Alabama (Clayton Division), to the United States District Court for the Middle District of Alabama, Northern Division, pursuant to the provisions of 28 U.S.C. §1441, *et seq.* This case is properly removable on the basis of the following facts:

### I.    Introduction

1.    In this pharmaceutical products liability case, plaintiff Robert Blankenship claims he was injured by his ingestion of a prescription medication, Mirapex®, which was prescribed to treat his Parkinson's Disease. *Complaint, ¶¶ 14, 26.* Plaintiff has sued two out-of-state pharmaceutical manufacturers, BIPI and Pfizer Inc. ("Pfizer"). In addition, plaintiff has sued the pharmacy from which he allegedly filled his prescriptions for Mirapex®, Kmart of Michigan, Inc. ("Kmart"), and two of its pharmacists, Kelli Strange and Art Redding (hereinafter

"Pharmacy Defendants").[1]  Plaintiff has also sued an individual sales representative employed by BIPI named David Rohling.[2]

2.      Plaintiff has alleged claims against the pharmacy defendants and Rohling sounding in products liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligence, wantonness and common-law fraud. *Complaint, ¶¶ 27-48.* Plaintiff claims that Mirapex® caused him to become a compulsive gambler, which led him to lose virtually all of his life savings. *Complaint, ¶¶ 25-26.* Plaintiff alleges that all of the defendants knew about the supposed association between Mirapex® and compulsive behaviors, including compulsive gambling, and failed to warn users and treating physicians about these potential adverse consequences. *Complaint, ¶¶21-24.*

3.      Plaintiff's Complaint fails to distinguish between the allegations directed at BIPI and Pfizer, the pharmacy defendants and defendant Rohling.  The Complaint merely states, in conclusory fashion, that all of the defendants knew of the alleged association between Mirapex® and compulsive behaviors and failed to warn plaintiff and his physicians about those alleged risks.  The Complaint provides no factual or legal basis for recovery against the pharmacy defendants and Rohling.  As a result, the pharmacy defendants and Rohling have been fraudulently joined, and their citizenship should be disregarded for purposes of diversity

---

[1] Kmart was voluntarily dismissed by plaintiff, without prejudice, on July 13, 2006.  Plaintiff's Complaint does not identify which of the corporate defendants, if any, that Kelli Strange and Art Redding are employed by or associated with.  As set forth in their respective Affidavits, Strange and Redding are employees of Kmart. *July 18, 2006 Affidavit of Kelli Strange ("Strange Aff."), ¶ 2; July 18, 2006 Affidavit of Art Redding ("Redding Aff."), ¶ 3.* A copy of Strange's Affidavit and Redding's Affidavit are attached hereto as Exhibits A and B, respectively.

[2] Plaintiff's Complaint incorrectly alleges that Mr. Rohling is an agent or employee of Pfizer. *Complaint, ¶ 4.* As set forth in Rohling's Affidavit attached hereto, he is, and was during the relevant time frame, a BIPI employee. *July 19, 2006 Affidavit of David Rohling ("Rohling Aff."), ¶¶ 2-3.* A copy of Rohling's Affidavit is attached hereto as Exhibit C.

2

jurisdiction. Because plaintiff has sued no other non-diverse defendant, and all other requisites of diversity jurisdiction have been met, removal to this Court is proper.

## II.    Timeliness of Notice of Removal

4.    On June 20, 2006, plaintiff filed this action in the Circuit Court for Barbour County, Alabama. BIPI was served with the Summons and Complaint on June 22, 2006. Upon information and belief, Pfizer and Kmart were also served with the Summons and Complaint on June 22, 2006. Upon information and belief, defendants Rohling and Redding were served with the Summons and Complaint on June 23, 2006. Upon information and belief, defendant Strange was served with the Summons and Complaint on June 26, 2006. A true and correct copy of the entire court file, including all process and pleadings served on BIPI, is attached hereto as Exhibit D.

5.    June 22, 2006 is the earliest date on which any defendant to this action received, "through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action is based." 28 U.S.C. §1446(b). This Notice of Removal is filed within 30 days of that date and, therefore, is timely filed. No previous application for removal has been made.

6.    The United States District Court for the Middle District of Alabama, Northern Division, embraces the county in which the state court action is now pending, and this Court is the proper venue for this action pursuant to 28 U.S.C. § 81(b)(1).

7.    This suit is an action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332, and is one that may be removed to this Court under the provisions of 28 U.S.C. § 1441. Removal under 28 U.S.C. § 1441 is appropriate in that there exists complete diversity of citizenship between plaintiff and all properly joined defendants in

the underlying cause, and, the amount in controversy exceeds $75,000, exclusive of interest and costs.

### III.    Citizenship of the Parties

8.    Upon information and belief, plaintiff Robert Blankenship is now, and was at the time of the filing of this action, a citizen and resident of the State of Alabama.

9.    Now, and at the time this action was commenced, BIPI was and is a Delaware corporation with its principal place of business in Ridgefield, Connecticut.

10.    Now, and at the time this action was commenced, Pfizer was and is a Delaware corporation with its principal place of business in New York City, New York.

11.    Upon information and belief, defendant Kmart is, and at the time this action was commenced, a Michigan corporation with its principal place of business in Troy, Michigan.[3]

12.    Upon information and belief, defendant Kelli Strange is, and at the time this action was commenced, a citizen and resident of the State of Alabama.

13.    Upon information and belief, defendant Art Redding is, and at the time this action was commenced, a citizen and resident of the State of Georgia.

14.    Now, and at the time this action was commenced, defendant David Rohling is a citizen and resident of the State of Alabama.

15.    Although plaintiff has named several fictitious defendants to this action, they should be disregarded for purposes of determining diversity of citizenship and the propriety of removal. *GMFS, LLC v. Bounds*, 275 F. Supp. 2d 1350, 1354-55 (S.D. Ala. 2003).

---

[3] As mentioned earlier, Kmart was dismissed from this case on July 13, 2006, so its citizenship is of no consequence to this Court's jurisdiction.

4

16.    As set forth below, Strange and Rohling have been fraudulently joined to this action.[4]  Therefore, their citizenship must be disregarded for purposes of determining diversity jurisdiction.

### IV.    Fraudulent Joinder

17.    It is well-settled that "diversity jurisdiction 'cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Bloodsworth v. Smith & Nephew*, Civil Action No. 2:05CV 622-D, 2005 WL 3470337, at *3 (M.D. Ala. Dec. 19, 2005).  Removal of this suit should not be thwarted by plaintiff's attempt to improperly join the pharmacy defendants and Rohling in order to destroy diversity jurisdiction.  As the Supreme Court has stated, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court...." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

18.    Under Eleventh Circuit law, fraudulent joinder can be established in one of three ways:

> (1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant, or (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, or (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  Here, there is no possibility that plaintiff can prove any of his claims against the pharmacy defendants or Rohling. Plaintiff, in order to meet his burden, must demonstrate that a possibility of recovery against the

---

[4] Defendant Redding, although not a fraudulently joined party because he is diverse from plaintiff, is due to be dismissed for the same reasons that defendant Strange is fraudulently joined.  For simplicity's sake, Redding and Strange are referred to herein as the pharmacy defendants.

non-diverse defendants is reasonable, not merely theoretical. *Bloodsworth*, 2005 WL 3470337 at *4. "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (quoting *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004). Plaintiff cannot meet this burden with respect to his claims against the pharmacy defendants and Rohling.

### A. Plaintiff's Complaint Fails to State a Basis for Recovery Against the Pharmacy Defendants.

19.    Plaintiff's Complaint fails to state any claim under which there is a reasonable basis to impose liability on the pharmacy defendants under Alabama law. In his Complaint, plaintiff asserts claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Count One), negligence (Count Two), wantonness (Count Three) and fraud (Count Four). *Complaint*, ¶¶ 27-48. Plaintiff alleges that the pharmacy defendants failed to warn plaintiff and his physician about the alleged association between Mirapex® and compulsive behaviors. Plaintiff's Complaint, however, does not allege that the pharmacy defendants improperly filled any Mirapex® prescriptions. Both defendants Strange and Redding have submitted Affidavits attached hereto in which they attest that to the extent they dispensed Mirapex® to plaintiff, they did so strictly in accordance with the prescription of his physician. *Strange Aff., ¶ 3; Redding Aff., ¶ 4.*

20.    Under Alabama law, when a pharmacist dispenses a prescription drug in accordance with the instructions of the prescribing physician, the pharmacist incurs no liability as a matter of law and is protected by the learned intermediary doctrine. The rule applies whether the pharmacist is sued under the AEMLD, a negligence theory or any other Alabama law. *Walls v. Alpharma USPD*, 887 So.2d 881 (Ala. 2004); *Lansdell v. American Home*

*Products Corp.*, 1999 WL 33548541 (N.D. Ala. Oct. 26, 1999); *Sanks v. Parke-Davis*, 2000 WL 33910097 (M.D. Ala. 2000). As plaintiff has not alleged, much less established, that the pharmacy defendants failed to properly dispense Mirapex® to plaintiff in accordance with his physician's prescription, plaintiff has no reasonable possibility of imposing liability against the pharmacy defendants based on the AEMLD or his negligence, wantonness or fraud claims.

21.     Additionally, plaintiff states no cause of action against the pharmacy defendants under the Alabama Medical Liability Act ("AMLA"), which subsumes all claims against a "healthcare provider" in the course of the healthcare relationship. *See* Ala. Code § 6-5-542 (1987); *Ex parte Rite Aid of Alabama, Inc.*, 768 So.2d 960, 962 (Ala. 2000); *Cackowski v. Walmart*, 767 So.2d 319, 324 (Ala. 2000); *Mobile Infirmary v. Delchamps*, 642 So.2d 954 (Ala. 1994); *Allred v. Shirley*, 598 So.2d 1346 (Ala. 1992). The only cause of action available to a plaintiff under the AMLA is for breach of the standard of care. Ala. Code § 6-5-542(2) (1987).

22.     Plaintiff has failed to allege any breach of any standard of care by the pharmacy defendants and fails to offer any evidence of any breach, as required by the AMLA. Alabama Code § 6-5-551 (1987). Thus, on its face, the complaint makes no legally cognizable claim against the pharmacy defendants. Thus, for this additional reason as well, the pharmacy defendants are fraudulently joined and due to be dismissed.

23.     Moreover, plaintiff's claims against the pharmacy defendants fail as a matter of law because he cannot show any causal relationship between their conduct and the defects of which plaintiff complains. The pharmacy defendants did not develop, test or manufacture the Mirapex, did not compound the Mirapex in anyway, had no knowledge of any alleged defective condition of Mirapex, and did not contribute to the alleged defect. *Strange Aff., ¶¶4-7; Redding Aff., 5-8.* As such, plaintiff has no claim against them under Alabama law. *See Fleming Farms*

7

*v. Dixie AG Supply, Inc.*, 631 So. 2d 922, 928 (Ala. 1994) (affirming summary judgment for distributor on AEMLD claim where distributor received product from manufacturer in a sealed container, received the product in its already defective condition and did not contribute to the defect, had no knowledge of the defective condition, and had no opportunity to inspect the product that was greater than that of the consumer's).

**B.      Plaintiff's Complaint Fails to State a Basis for Recovery Against Defendant David Rohling.**

24.      Plaintiff also asserts the same four counts of his Complaint against defendant Rohling alleging that Rohling failed to warn plaintiff and his physician about the alleged association between Mirapex® and compulsive behaviors.

25.      Rohling's only connection to this case is that he is a sales representative employed by BIPI. *See Rohling Aff., ¶¶ 2-3.* His role as a BIPI sales representative, however, does not create a reasonable basis for the imposition of liability against him under any of the theories pleaded by plaintiff.

26.      The Eleventh Circuit has recently spoken to the issue of the tactic of joining pharmaceutical sales representatives in an effort to thwart diversity jurisdiction, and held that this practice cannot preclude a District Court's jurisdiction in a case such as this. *Legg,* 428 F.3d at 1324.   As set forth more fully below, the holding in *Legg* demonstrates why the joinder of Rohling in this case is clearly fraudulent.

27.      The first claim alleged by plaintiff is based on a failure to warn theory pursuant to the AEMLD.   Rohling, however, cannot be held liable as a "seller" under the AEMLD because he did not sell or supply Mirapex®. *Bloodsworth,* 2005 WL 3470337 at *7 (finding that a sales representative was not a "seller" within the meaning of the AEMLD); *In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001) (applying Alabama law)

(pharmaceutical sales representatives are not sellers or suppliers of the prescription drugs they detail); *Devise v. Kenmore*, CV 03-J-943-S at 2 (N.D. Ala. May 12, 2003) (sales representative at Sears is not a seller under the AEMLD) (Exhibit E hereto); *Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C, Slip Op. at 8 (S.D. Ala. Sept. 3, 1996) (retail store manager is not a "seller", "neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass [employees of the seller or supplier].") (Exhibit F hereto).

28.    Moreover, Rohling did not even detail Mirapex® to plaintiff's physician until years after plaintiff had been taking Mirapex®. In his Complaint, plaintiff alleges that he ingested Mirapex® beginning in 2000 and shortly thereafter began compulsively gambling. *Complaint*, ¶¶ *14, 26.* As set forth in his Affidavit, Rohling did not detail Mirapex® to plaintiff's physician, Dr. Alan Prince, until years later beginning in September 2003. *Rohling Aff.*, ¶ *12.*

29.    Rohling made no misrepresentations concerning the safety or efficacy of Mirapex during his dealing with Dr. Prince or any other physicians. *Rohling Aff.*, ¶¶ *11-12.* All of Rohling's knowledge about Mirapex, including the FDA-approved prescribing information, package inserts and other information was provided to him by BIPI. *Rohling Aff.*, ¶¶ *7-8.* As a sales representative, Rohling was not expected to and did not conduct independent research regarding Mirapex. *Rohling Aff.*, ¶ *10.* Accordingly, plaintiff cannot demonstrate a reasonable possibility that Rohling may be held liable as a "seller" under the AEMLD.

30.    The next two claims in plaintiff's Complaint against Rohling - for negligence and wantonness – likewise present no reasonable basis for imposing liability on Rohling. Under the learned intermediary doctrine, any duty to warn would be owed to plaintiff's prescribing

physician and is owed by the pharmaceutical company, not its sales representative. *Southern v. Pfizer, Inc.*, Civil Action No. 2:06-CV-836-VEH at *17 (N.D. Ala. June 23, 2006). For a sales representative to be "personally liable for the negligent acts of the corporation, 'there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act.'" *Legg*, 428 F.3d at 1324. In other words, the sales representative must have "personally participate[d] in the tort." *Turner v. Hayes*, 719 So.2d 1184, 1188 (Ala. Civ. App. 1997).

31.    To the extent any duty to warn was owed to plaintiff's prescribing physician in this case, that duty was owed by BIPI and/or Pfizer, not Rohling. *Southern*, Civil Action No. 2:06-CV-836-VEH at *16. There is also no evidence that Rohling personally participated in any acts that would subject him to potential liability under a negligent or wanton failure to warn theory. Rohling has never spoken to plaintiff; had never spoken to plaintiff's prescribing physician concerning the safety or efficacy of Mirapex prior to the time plaintiff began taking Mirapex® and made no misrepresentations to Dr. Prince concerning Mirapex®. *Rohling Aff.*, ¶¶ 4, 12. Further, Rohling did not participate in the manufacture, development or testing of Mirapex, and neither had any control over, or involvement with the development or preparation of the prescribing information for Mirapex®, including the written warnings. *Rohling Aff.*, ¶¶ 6, 9. As such, Rohling did not personally participate in any alleged tort and there is no reasonable possibility that he will be found liable under Alabama negligence or law or even the more heightened standard for wantonness. *Ammons v. Tesker Manufacturing Corp.*, 853 So.2d 210, 213 (Ala. 2002).

32.    The Fourth and final Count of plaintiff's claims against Rohling alleges fraud. This claim also has no reasonable possibility of success. A claim of fraud requires proof of: (1) a

01363647.1

false representation; (2) concerning a material fact; (3) relied upon by the plaintiff; and (4) who was damaged as a proximate result. *Fisher v. Comer Plantation*, 772 So.2d 455, 463 (Ala. 2000). Before a fraud claim may arise, the defendant must have owed the plaintiff a duty to disclose. *Nesbitt v. Frederick*, 2006 WL 1195872, *4 (Ala. 2006). In addition, absent a demonstration of bad faith, a plaintiff may not maintain a fraud claim against a pharmaceutical sales representative. *Bloodsworth*, 2005 WL 3470337 at *8. "[T]hose who are only conduits through which faulty information is supplied by one person to a third parson cannot be held liable for fraud unless they acted in bad faith."[5] *Legg*, 428 F.3d at 1324.

33.    As set forth by the court in *Southern*, it is the pharmaceutical company, not the sales representative that owes the plaintiff a duty to disclose. *Southern*, Civil Action No. 2:06-CV-836-VEH at *16. Accordingly, Rohling owed plaintiff no duty to disclose. Moreover, plaintiff has not presented any evidence of bad faith against Rohling, and in light of Rohling's Affidavit, it is apparent why he has not done so – there is no such evidence. Rohling made no misrepresentations concerning Mirapex® to Dr. Prince. Accordingly, there is no reasonable basis for imposing liability on defendant Rohling based on a claim of fraud.[6]

34.    Plaintiff also cannot prevail on a fraud claim because he has failed to plead fraud with particularity. *Compare* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated

---

[5] Moreover, Alabama law is clear that in order to be liable for failure to disclose, an individual has to have had actual knowledge of the alleged danger and its materiality in order to be held liable. *Hardy v. Blue Cross & Blue Shield*, 585 So.2d 39, 32 (Ala. 1991) (citing Cherokee Farms, Inc. v. Firemen's Fund Ins. Co., 526 So.2d 871 (Ala.1988); Wilson v. Brown, 496 So.2d 756 (Ala.1986); Harrell v. Dodson, 398 So.2d 272 (Ala.1981)). *See also University Federal Credit Union v. Grayson*, 2003 WL 22221231 at *5 (Ala. 2003) (same). Here, Rohling's Affidavit makes clear that he did not even call on Dr. Prince until years after plaintiff had begun taking the medication.

[6] To the extent that plaintiff's fraud claim is that Rohling misrepresented that Mirapex was safe and effective, the FDA determined that the drug was safe and effective in allowing it to be put on the market; this FDA finding cannot rise to the level of puffery, much less fraud.

11

with particularity), *with* Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule).

35.    In sum, none of the allegations contained in plaintiff's Complaint give rise to a reasonable basis for liability as to the pharmacy defendants or Rohling. Thus, plaintiff's joinder of these defendants can only be characterized as a sham, at the unfair expense not only of [the proper defendants] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company defendants], the real target, in a federal forum." *Legg*, 428 F.3d at 1320. For all these reasons, defendant the pharmacy defendants and Rohling have been fraudulently joined in this action and their citizenship should be disregarded for purposes of determining diversity jurisdiction.

## V.    Amount in Controversy

36.    The amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff has alleged in his Petition that he was a man of significant wealth and has lost virtually all of his life savings as a result of his compulsive gambling for which he seeks recovery from defendants. Plaintiff also seeks recovery for mental anguish and punitive damages. Given these allegations, which defendants deny in their entirety, plaintiff's Complaint establishes on its face that the amount in controversy exceeds $75,000, exclusive of costs and interest. *See, e.g, Tapscott*, 77 F.3d at 1359 (11th Cir. 1996) (when plaintiffs make an unspecified claim for damages, removing party need only show by a preponderance of the evidence that amount in controversy exceeds jurisdictional limit). Cases in Alabama similar to plaintiff's case have resulted in verdicts and settlements exceeding $75,000. *See* Exhibit G hereto.

12

## VI.    Co-Defendants' Consent to Remove

37.    Defendants Pfizer, Rohling, Strange and Redding join and consent to this removal.  Thus, all defendants, even those fraudulently joined, join in and consent to this removal.

## VII.    The Other Prerequisites for Removal Have Been Satisfied

38.    As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 and is between citizens of different states.

39.    As set forth above, this Notice of Removal is filed within thirty days of the service of the petition or process upon the first-served defendant.

40.    Defendants have sought no similar relief.

41.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

42.    A copy of this Notice of Removal is being served on counsel for plaintiff and filed with the Circuit Court of Barbour County, Alabama.

43.    If any question arises as to the propriety of the removal of this action, BIPI requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, defendant Boehringer Ingelheim Pharmaceuticals, Inc., desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the district and division of said Court for the County in which said action is pending, prays that the filing of this Notice of Removal with the Clerk of the Circuit Court of Barbour County, Alabama (Clayton Division) shall effect the removal of said suit to this Court,

and requests that this Court retain jurisdiction for all further proceedings.

_____

Maibeth J. Porter
Alvin L. ("Peck") Fox
Edward A. ("Ted") Hosp

Attorneys for Defendant Boehringer Ingelheim
Pharmaceuticals, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203-2602
Telephone Number: (205) 254-1000

Beth S. Rose, Esq.
Stuart M. Feinblatt, Esq.
Jennifer Ewers Hurley, Esq.
SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record to this proceeding by United States Mail, properly addressed and postage prepaid, or as indicated below, this 20th day of July, 2006:

J. Gregory Allen
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

L. Shane Seaborn
Penn & Seaborn, LLC
P. O. Box 688
Clayton, AL 36016-0688

F.M "Tripp" Haston, III
Andrew B. Johnson
Bradley Arant Rose & White LLP
One Federal Place
1819 5th Ave. North
Birmingham, AL 35203

Philip F. Hutcheson
Boardman, Carr, Weed & Hutcheson, P.C.
400 Boardman Dr.
Chelsea, AL 35043-8211

OF COUNSEL

01363647.1

# EXHIBIT   E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 MAY 12 PH 3:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

SHIRLEY and JOHN DEVISE,

    PLAINTIFFS,

vs.

                                  CASE NO. CV 03-J-943-S

KENMORE INC., et al.,

    DEFENDANTS.

ENTERED

MAY 1 2 2003

## MEMORANDUM OPINION

This matter is before the court on the defendant Ned Bibb's motion to dismiss complaint (doc. 4); defendants Whirlpool Corporation ("Whirlpool") and Sears, Roebuck & Co. ("Sears") and Ned Bibb's notice of removal (doc. 1); the plaintiffs' opposition to defendant Ned Bibb's motion to dismiss (doc. 10) and the plaintiffs' brief in support of said opposition.

Defendants removed this action from the Circuit Court of Jefferson County, Alabama, asserting that this court has jurisdiction under 28 U.S.C. § 1332. Notice of Removal, ¶ 3. Defendants allege that the matter in controversy exceeds $75,000.00 and it is between citizens of different states. Notice of Removal, ¶¶ 4, 5, 12, and 13. Although defendant Ned Bibb, an individual, is not diverse from the plaintiffs, defendants Whirlpool and Sears allege that Ned Bibb was fraudulently joined. Notice of Removal, ¶ 13.

12

On motions to dismiss, the court must take the facts of the complaint as true, and view those facts in the light most favorable to the nonmoving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998). The court finds such facts to be as follows:

The plaintiffs alleges they purchased a a Kenmore dishwasher from defendant Sears in October, 1999. That dishwasher caught fire in February, 2003, causing serious injuries to the plaintiffs.[1] ~~Complaint, ¶ 13.~~ Defendant Bibb was the salesman who sold the dishwasher in question to the plaintiffs. Complaint, ¶ 8. The plaintiffs bring claims under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") (Count I); negligent/wanton conduct (Count II); failure to warn (Count III); express or implied warranty (Count IV); a second AEMLD claim (Count V); and fraudulent suppression (Count VI).

On the face of the complaint, complete diversity, a prerequisite for jurisdiction under 28 U.S.C. § 1332, is lacking. "Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity – every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir.1996), *rev'd on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). *See also*

---

[1]The parties do not dispute that the dishwasher in question was manufactured by defendant Whirlpool under the brand name "Kenmore."

2

*Carden v. Arkoma Associates*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 94 L.Ed.2d 615 (1990) ("Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship); citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). The only means by which this case may remain in this court is if the lack of diversity which appears on the face of the complaint is through the fraudulent joinder of the non-diverse party, as alleged by the defendant.

> Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Coker*, 709 F.2d at 1440.... In *Tapscott*, 77 F.3d at 1355 (11th Cir.1996), a third situation of fraudulent joinder was identified--i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Id.* at 1360. In the instant case, the parties do not suggest that there has been "outright fraud in the plaintiff's pleading of jurisdictional facts," so we concern ourselves only with the first and third types of fraudulent joinder. Turning to the first type, "If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker*, 709 F.2d at 1440-41. The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate ....

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998).

3

The defendants, as the parties removing the action to federal court, have the burden to establish federal jurisdiction. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11ᵗʰ Cir.1998); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11ᵗʰ Cir.1996). All doubts (and uncertainties) about federal court jurisdiction must be resolved in favor of a remand to state court. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11ᵗʰ Cir.1994)); *Diaz*, 85 F.3d at 1505. "The burden of the removing defendant is a 'heavy one.' To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11ᵗʰ Cir.1997) (citation omitted).[2]  The court can only grant the motion to dismiss the non-diverse defendant, and therefore retain jurisdiction, if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Hawthorne*, 140 F.3d at 1370.

---

[2]This court is cognizant of the Eleventh Circuit's admonition in *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11ᵗʰ Cir.1994), where the Court stated "Federal courts are courts of limited jurisdiction. While a defendant does have a right, by statute, to remove in certain situations, plaintiff is still the master of his own claim (citations omitted). Defendant's right to remove and plaintiff's right to chose his own forum are not on equal footing ... removal statutes are construed narrowly ... uncertainties are resolved in favor of remand (citations omitted)."

4

The court finds non-diverse defendant Bibb is named in two counts of the complaint – AEMLD (Count I) and fraudulent suppression (Count VI).[3]

Defendants assert that an individual sales representative cannot be held liable pursuant to the AEMLD. Additionally, defendants assert that the fraud claim in Count VI of the complaint is subsumed under the AEMLD, but if not subsumed, defendant Bibb had no duty to warn of any danger. Notice of Removal, ¶¶ 15-16. The plaintiffs respond that the complaint clearly states that defendant Bibb was the individual who sold the dishwasher to the plaintiffs. Opposition at 2. The plaintiffs then argue that "[h]ere there is doubt that the fraudulent suppression claim states a cause of action." Opposition at 4. The court can only assume that the plaintiffs meant to argue that "there is NO doubt that the fraudulent suppression claim states a cause of action."

The AEMLD establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a matter of law." *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala.1976). Defendant Bibb is

---

[3]Plaintiffs' complaint also asserts claims of negligence, wantonness, and breach of warranty. Even if these claims were stated against defendant Bibb, which they are not, plaintiffs have not and can not show that these causes of action are not subsumed by AEMLD. *See e.g.*, *Veal v. Teleflex, Inc.*, 586 So.2d 188, 190-191 (Ala.1991) (Plaintiff's defective product claim held to be a claim under AEMLD and, thus, trial court did not err in refusing to charge the jury on negligence and wantonness.); *Pitts v. Dow Chemical Co.*, 859 F.Supp. 543, 550-51 (M.D.Ala.1994) (Plaintiff's negligence claim related to an alleged unreasonably unsafe product held not to state a claim distinct from AEMLD.). *See also McClain v. Metabolife International, Inc.*, 193 F.Supp.2d 1252, 1256 (N.D.Ala.2002).

5

clearly not a manufacturer, supplier, or seller of dishwashers who markets said product. At most, he is a sales representative for the seller, defendant Sears.[4] *See Brock v. Baxter Healthcare Corp.*, 96 F.Supp.2d 1352, 1356; citing *Casrell*, 335 So.2d at 132-33. As defendant Bibb is not a manufacturer, distributor or seller of the dishwasher at issue, the court finds that the plaintiffs have failed to state a claim upon which relief can be granted against this defendant under the AEMLD.

For fraudulent suppression, the plaintiffs must show that the defendant (1) had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or not acting. *Spain v. Brown & Williamson Tobacco*; 230 F.3d 1300, 1311 (11th Cir.2000); citing *Ex Parte Household Retail Services*, 744 So.2d 871, 879 (Ala.1999).

A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact. *State Farm Fire and Casualty Co. v. Owen*, 729 So.2d 834, 837 (Ala.1998). A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case. *Keck*

---

[4] A seller is one who is engaged in the business of selling that type product. *See, e.g., Brock v. Baxter Healthcare Corp.*, 96 F.Supp.2d 1352, 1356 (S.D.Ala.2000).

*v. Dryvit Systems, Inc.*, 830 So.2d 1, 11 (Ala.2002); citing § 6-5-102, Ala.Code 1975;

*Ex parte Farmers Exchange Bank*, 783 So.2d 24, 27 (Ala.2000). Plaintiffs rely on

*McClain v. Metabolife International, Inc.*, 193 F.Supp.2d 1252 (N.D.Ala.2002) for the

proposition that fraud claims made in addition to AEMLD claims survive a motion to

dismiss. *See id.* at 1256-1257. However, in that case only the manufacturer was

named as a defendant. Similarly, in the other case upon which plaintiffs rely, *Lowe*

*v. Metabolife*, 206 F.Supp.2d 1195 (S.D.Ala.2002), an individual salesperson was not

sued. Thus, that court's holding that the fraud claim could survive a motion to dismiss

is not relevant to the issue before this court.

Defendants dispute that defendant Bibb had any duty to disclose anything to the

plaintiffs at all. The plaintiffs do not allege any particular relationship with defendant

Bibb which would have placed on him a duty to disclose a material fact. They also

do not allege that they relied on any statement of defendant Bibb to purchase the

dishwasher in question.[5] In fact, they do not even allege that defendant Bibb stated

the dishwasher was safe. Plaintiffs state no fact allegedly known by Bibb, which he

had a duty to disclose but failed to do so.[6] Rather, they merely ask this court to rule

---

[5]In fact, plaintiffs allege only that defendant Bibb "suppressed information that he knew
or should have known regarding the fire causing potential of the dishwasher ...." Complaint. ¶
13.

[6]Plaintiffs do not even allege that defendants Sears or Whirlpool had knowledge of a
defect in the dishwasher they purchased at the time they purchased it (or ever). Given no such

7

that an individual salesman for a large company, who may or may not have done any more than ring up a sale for the plaintiffs, should be liable for an alleged defect in the product which does not manifest itself for more than three years. The court declines to extend such liability here.

Even assuming this court was willing to place a duty to disclose upon the individual defendant, Rule 9 of the Alabama Rules of Civil Procedure requires that fraud be alleged "with particularity." *Smith v. National Sec. Ins. Co.*, 2003 WL 1787934, *3 (Ala.April 4, 2003); citing *Garrett v. Raytheon Co.*, 368 So.2d 516 (Ala.1979). Under Rule 9(b), A.R.C.P., the pleading must show the time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained. *Smith*, 2003 WL 1787934, *3. *See also Allstate Ins. Co. v. Ware* , 824 So.2d 739, 742 (Ala.2002). Thus, under Rule 9, A.R.C.P., for a pleading to state a claim of fraud, "[t]he pleading must show [the] time, [the] place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained." *Bethel v. Thorn*, 757 So.2d 1154, 1158 (Ala.1999); citing *Lester*, 622 So.2d at 311 (quoting *Miller v. Mobile County Board of Health*, 409 So.2d 420, 422 (Ala.1981) (quoting the

---

allegation, the plaintiffs do not allege any basis by which defendant Bibb would have such knowledge. Without that, he could have no duty to disclose.

8

Committee Comments to Rule 9(b))) (alterations in *Lester* ); *see also Robinson v. Allstate Ins. Co.*, 399 So.2d 288, 290 (Ala. 1981) ("The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained.").

The court, having reviewed the allegations set forth in Counts I and VI of the plaintiffs' complaint, finds the allegations fail to state a cause of action against the resident defendant. The fact that defendant Bibb, acting on behalf of defendant Sears, sold the plaintiffs a dishwasher which caught fire three and a half years later, is, in and of itself, insufficient to state a cause of action. The plaintiffs need not have a winning case against the allegedly fraudulent defendant; they need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate. *Triggs*, 154 F.3d at 1287. That possibility does not exist in the pleadings before this court.

The court having considered the foregoing, finds find that the joinder was fraudulent and that defendant Bibb's motion to dismiss is due to be GRANTED. The court shall so order.

DONE this the ____ day of May, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

9

# EXHIBIT  F

.... DISTRICT COURT
SO. DIST. OF AL.
MOBILE, AL. 36602

SEP  3  3 02 PM '96

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NELLIE BOWMAN,                    )
                                  )
            Plaintiff,            )        CIVIL ACTION NO.
                                  )
                                  )        96-0441-P-C
v.                                )
                                  )
COLEMAN COMPANY, INC., et al.,    )
                                  )
            Defendants.           )

## REPORT AND RECOMMENDATION

Plaintiff Nellie Bowman ("Ms. Bowman") has filed a motion to remand this action to the Circuit Court of Mobile County, Alabama on the ground that removal was improvidently granted (tab 7). In a motion addressing the same substantive issues, defendant Michael Elkins ("Mr. Elkins") has moved for dismissal of all claims asserted against him by the plaintiffs (tab 3). These motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 26. After careful consideration of the arguments raised by the parties in their briefs and at oral argument, the Court recommends that the motion to remand be DENIED and the motion to dismiss be GRANTED for the reasons set forth below.

I.  Factual Background[1]

On November 3, 1995, the plaintiff's son, Andrew Bowman ("Mr. Bowman"), purchased a Coleman PowerMate, 17,000 BTU, propane radiant heater, Model No. 5017-751T, at a Lowe's

_____

[1] For the purposes of the motions being considered, the facts are construed in the light most favorable to the plaintiff. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (in considering fraudulent joinder issue, questions of fact must be assessed in plaintiff's favor); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (in summary judgment context, court considers all inferences drawn from underlying facts in light most favorable to nonmovant).

retail store in Mobile, Alabama. Because he was dissatisfied with a similar heater which had not functioned properly, Mr. Bowman spoke with Mr. Elkins, the Lowe's store manager, about the possibility of exchanging his old heater for a new one. Mr. Elkins agreed to allow Mr. Bowman to exchange his malfunctioning heater for the Coleman heating unit which is the subject of this lawsuit. Prior to the sale of the new heater, Mr. Elkins allegedly advised Mr. Bowman that the Coleman unit was a good heater and that Mr. Bowman would not experience any problems with it. On February 3, 1996, the plaintiff sustained severe burns when the Coleman PowerMate heater which her son had purchased at Lowe's on Mr. Elkins' verbal endorsement allegedly malfunctioned.

On March 26, 1996, Ms. Bowman filed the instant lawsuit against defendants Coleman Company, Inc. ("Coleman"), Lowe's Home Centers, Inc. ("Lowe's"), and Mr. Elkins in the Circuit Court of Mobile County, Alabama. On May 10, 1996, the defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441 et seq. In their notice of removal, defendants indicated that federal subject matter jurisdiction was predicated on diversity of citizenship. The plaintiff now seeks remand of this action to state court on the ground that this Court lacks diversity jurisdiction. Defendant Mr. Elkins has also moved for dismissal of all causes of action raised against him. Pursuant to Rule 12(b), Fed.R.Civ.Pro., the Court is construing the motion to dismiss as a motion for summary judgment under Rule 56, Fed.R.Civ.Pro. Both motions have been thoroughly briefed, and oral argument was held before the undersigned on June 3, 1996.

## II. Legal Analysis

### A. Fraudulent Joinder of Defendant Mr. Elkins

The merits of plaintiff's motion to remand hinge on the presence or absence of complete

2

diversity of citizenship in this action. See 28 U.S.C. § 1332(a) (conferring upon federal district courts original jurisdiction over actions between citizens of different states where amount in controversy exceeds $50,000). It is well-established that diversity jurisdiction requires complete diversity of citizenship, such that no party on one side of a controversy may be a citizen of the same state as any party on the other side. See, e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359 (11th Cir. 1996); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989). In the case at bar, it is undisputed that the plaintiff is a citizen of Alabama, while defendant Coleman is a Kansas corporation with its principal place of business in Kansas and defendant Lowe's is a North Carolina corporation with its principal place of business in North Carolina. Defendant Mr. Elkins is a citizen of Alabama. Despite the lack of diversity between the plaintiff and Mr. Elkins, the defendants removed this action on the ground that Mr. Elkins' citizenship should not be considered because he was fraudulently joined as a defendant.

The presence of a non-diverse party who has been fraudulently joined does not destroy a federal court's diversity jurisdiction over an action. See Tapscott, 77 F.3d at 1359; Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). A defendant is considered fraudulently joined if there is "no possibility the plaintiff can establish any cause of action against the resident defendant."[1] Cabalceta, 883 F.2d at 1561; Aubrey v. United Companies Lending Corp., 872 F. Supp. 925, 929 (S.D. Ala. 1995). As the parties seeking removal, the defendants bear the burden of proving that there is no possibility that a state court would find the plaintiff's complaint to state

---

[1] A second avenue for establishing fraudulent joinder exists where the plaintiff has fraudulently pled jurisdictional facts in order to bring a resident defendant into state court. See Tapscott, 77 F.3d at 1360 n.17; Cabalceta, 883 F.2d at 1561. The defendants in this case have not alleged fraud in the pleading of jurisdictional facts; therefore, this means of establishing fraudulent joinder is not applicable here.

3

a cause of action against Mr. Elkins, and that Mr. Elkins' joinder in this matter was therefore fraudulent. See Cabalceta, 883 F.2d at 1561; Lane v. Champion International Corp., 827 F. Supp. 701, 707 (S.D. Ala. 1993) (declaring that removing party must establish fraudulent joinder by clear and convincing evidence). In ruling on this issue, the district court must assess all questions of fact and controlling law in favor of the plaintiff. See Id.; Coker, 709 F.2d at 1440.

### 1. Plaintiff's Claims Under AEMLD

The first cause of action asserted against Mr. Elkins in the complaint is a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). A plaintiff can invoke the AEMLD only as to manufacturers and sellers of allegedly defective products. See Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala. 1987). The Alabama Supreme Court recently summarized the criteria which a plaintiff must satisfy in order to maintain an AEMLD action against a seller of a product as follows:

> "To establish liability under the AEMLD, the plaintiff must show that he suffered an injury caused by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold." Carter v. Cantrell Machine Co., Inc., 662 So.2d 891, 892 (Ala. 1995) (citing Sapp v. Beech Aircraft Corp., 564 So.2d 418 (Ala. 1990)).

An obvious threshold inquiry to a finding of AEMLD liability is a determination of whether a particular defendant may be labeled a "seller" of a product. The defendants argue vigorously that Mr. Elkins cannot properly be deemed a seller of the Coleman heater purchased by Mr. Bowman. Because Mr. Elkins was an employee of Lowe's, defendants contend, he was merely an agent of the seller and therefore cannot be liable under the AEMLD. In response, the plaintiff asserts that it is incongruous at best for the defendants to contend that Mr. Elkins, a

4

salesperson by trade, should not be considered a seller under the AEMLD.

Alabama courts have not addressed the question of whether a retail store employee may properly be considered as seller of a product, for AEMLD purposes.[3] However, several other jurisdictions have faced similar questions in analogous circumstances. For example, in Memphis Bank & Trust Co. v. Water Services, Inc., 758 S.W.2d 525 (Tenn. 1988), the Tennessee Supreme Court examined whether a salesman for a manufacturer of a water treatment device could be deemed a "seller" or a "manufacturer" for products liability purposes. In that case, the court set aside a judgment against the salesman, pursuant to the following findings:

> "[The individual defendant] is shown by the uncontradicted evidence in this case to
> be a sales representative of the corporate defendant. On all sales made for his
> employer he was paid a commission. He was neither a stockholder, a director nor
> an officer of the corporate defendant, insofar as the record shows. The
> corporation is clearly both a 'manufacturer' and a 'seller' . . . . [The individual
> defendant] was neither." Id. at 526.

Likewise, in Musser v. Vilsmeier Auction Co., 562 A.2d 279 (Pa. 1989), the Pennsylvania Supreme Court held that an auctioneer is not a "seller" for the purposes of establishing products liability. In support of this decision, that court reasoned that the auctioneer was simply "the means of marketing" the product, and that he was "not equipped to pass upon the quality of the myriad [] products he is called upon to auction". Id. at 282; see also Tauber-Arons Auctioneers Co., Inc. v. Superior Court for County of Los Angeles, 161 Cal.Rptr. 789, 798 (Cal.App.2 Dist. 1980) (finding that auctioneer cannot be liable under strict products liability where auctioneer is a marketer who played "no more than a random and accidental role" in the distribution of a

_____

[3]At oral argument, the plaintiff directed the Court's attention to Caudle v. Partridge, 566
So.2d 244 (Ala. 1990), in which an individual seller was held liable under the AEMLD. However,
the individual's liability in Caudle was predicated on his status as a sole proprietor, not as a
salesman; therefore, the Caudle decision is inapposite.

5

defective product). More importantly, the Musser court observed that:

> "Sellers may sell in any fashion they choose: sky writing, signs, handbills, electronic media or any method to suit their purpose, including auction. When they do they remain liable and the agents of their method are but agents and extensions of their enterprise [and are not liable]." Musser, 562 A.2d at 283.

Though cases like Memphis Bank and Musser originate in and apply the law of other jurisdictions, they strongly suggest that Mr. Elkins cannot be considered a "seller" under AEMLD.[6]

More generally, the applicable case law is clear that the policy aims of strict products liability for sellers would not be furthered by sweeping individuals such as Mr. Elkins within the doctrine's ambit. Indeed, in creating the AEMLD, Alabama's high court explained its intention to place "the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp., 335 So.2d 134, 139 (Ala. 1976). This rationale is consistent with the policy justifications articulated by numerous other state courts for expanding products liability to embrace all entities within the distributive chain of a defective product. For example, in Nutting v. Ford Motor Company, 584 N.Y.S.2d 653, 657 (N.Y.A.D.3 Dept 1992), a New York court observed that the policy considerations for seller liability included the following:

> "[T]he ability of the seller, because of its continuing relationship with the manufacturer, to exert pressure for the improved safety of products and to recover

_____

[6] This view is further bolstered by the fact that numerous jurisdictions have held that liability in a products liability case should extend only to those in the distributive chain through which products travel in order to reach the market. See, e.g., Parker v. St. Vincent Hospital, 919 P.2d 1104 (N.M. App. 1996); Dunn v. Kanawha County Board of Education, 459 S.E.2d 151 (W.Va. 1995); Daly v. General Motors Corp., 575 P.2d 1162, 1170 (Cal. 1978); Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc., 528 S.W.2d 703, 705 (Ky. 1975); Allison Steel Mfg. Co. v. Superior Court of Maricopa County, Division Three, 511 P.2d 198, 202 (Ariz.App. 1973). While a salesman may be an agent of an entity in the distributive chain, the salesman himself is not a part of such a chain.

increased costs within their commercial dealings, or through contribution or indemnification in litigation; additionally, by marketing the products as a regular part of their business such sellers may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods." Id. at 657 (quoting Suldian v. Charles Ross & Son Co., 503 N.E.2d 1358 (N.Y. 1986)); see also Crowe v. Public Building Commission of Chicago, 370 N.E.2d 32, 34 (Ill.App. 1 Dist. 1977) (supplier liability for defective products is driven by general considerations of justice which dictate that those who create the risk and reap the profit should also bear the loss); Karel v. Remington Arms Co., 101 Cal. Rptr. 314, 323 (Cal.App. 2 Dist. 1972) (sellers are held liable because they have participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance on the product).

Mr. Elkins is an employee of a corporate defendant. In his position as store manager, he has no authority to compel or prevent the distribution of particular products by Lowe's, for such product distribution decisions are vested in the Lowe's home office, rather than in its individual store managers. See Elkins Deposition, at 34-35, 74. While Lowe's likely has accumulated sufficient market power to exert pressure on manufacturers to improve the safety of their products, Elkins has not. Likewise, it is Lowe's, and not Mr. Elkins, who reaps the profit from the distribution of products such as the Coleman heater; therefore, it is Lowe's, and not Mr. Elkins, who should be required to bear the risk of such products being defective.[5] Finally, Lowe's has a participatory market connection with Coleman, through which avenue Lowe's may be able to recoup the increased costs which it incurs as a result of seller liability. Mr. Elkins does not. In short, the policy goals underlying the AEMLD would not be advanced in any way by holding

---

[5]Mr. Elkins is a salaried employee of Lowe's. See Elkins Deposition, at 12. Although Lowe's does have an employee bonus program based, in part, on store profits, there is no evidence that this program would allow Mr. Elkins to reap any appreciable share of Lowe's profits earned from the distribution of defective products. The Court is of the opinion that a simple employee bonus plan, without more, is insufficient to activate the policy considerations of aligning profits and risks which underlie seller liability in the AEMLD context.

7

persons such as Mr. Elkins liable in their role as store managers or sales representatives.

In light of the foregoing analysis, the Court believes that neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass salespersons, store managers, or other agents of a retailer. Accordingly, the undersigned is of the opinion that there is no possibility that Ms. Bowman could successfully assert her AEMLD claim against Mr. Elkins in state court.

### 2. Plaintiff's Negligence/Wantonness Claims

The remaining causes of action advanced against Mr. Elkins in the complaint are negligence and wantonness claims. In particular, the plaintiffs allege that the store manager's actions were negligent and wanton inasmuch as he knew or should have known that the Coleman heater sold to Mr. Bowman was unsafe.[6] Defendants contend that there is no possibility that Ms. Bowman could assert these causes of action against Mr. Elkins in state court.

To recover in a negligence or wantonness action, a plaintiff must establish the following elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach."[7] Kelly v. M. Trigg Enterprises, Inc., 605 So.2d

---

[6]According to the plaintiff, Mr. Elkins knew or should have known the heating unit was unsafe because it lacked a regulator and because there was no indication on its container that it had been approved by any independent testing laboratory.

[7]The criteria listed here are shared by both negligence and wantonness actions. In addition to those elements listed above, a party seeking to recover on a wantonness theory must also show that the defendant's omission of a duty was done with knowledge and consciousness of the likelihood of injury which would result from such an omission. See Lynn Strickland Sales and Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala. 1987) (wantonness characterized by state of mind in which duty was omitted); Tyler v. City of Enterprise, 577 So.2d 876, 877 (Ala. 1991) (both negligence and wantonness claims require showing that defendant owed duty).

8

1183, 1190 (Ala. 1992) (quoting Hall v. Thomas, 564 So.2d 936, 937 (Ala. 1990)). Defendants argue that the plaintiff's negligence and wantonness claims against Mr. Elkins must fail because he owed her no duty of care. See Ledbetter v. United American Ins. Co., 624 So.2d 1371, 1373 (Ala. 1993) (whether there is duty is threshold inquiry in negligence case). In response, the plaintiff articulates three separate duties which Mr. Elkins allegedly owed to her: (1) a duty to prevent an unsafe product from entering the stream of commerce; (2) a duty to warn of the dangerous nature of a product; and (3) a duty to be careful not to hurt others.

With respect to the first alleged duty, it is clear that Mr. Elkins lacked the authority from Lowe's to prevent the Coleman heater from entering the stream of commerce. As stated above, Lowe's, and not Mr. Elkins, was responsible for deciding which products to distribute at the Mobile store. Plaintiff cites no authority for the proposition that a salesman or store manager owes customers a duty to prevent unsafe products from entering the stream of commerce.[6] Moreover, the recognition of such a duty would impose strict products liability on persons such as Mr. Elkins based on an employer's decision to market a certain product. As a practical matter, this rule would result in salespeople with no control over product marketing or distribution decisions being declared negligent for those decisions. Under Alabama law, "the duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that he do or refrain from doing some act for the safety and well-being of the plaintiff." Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 125-26 (Ala. 1984). Clearly, no public policy interest would be advanced by holding a salesperson liable in negligence for a corporate

---

[6]By the time the products reach the salesman, they have already entered the stream of commerce. The salesman simply acts as a marketing medium, an agent of his employer, in disseminating the goods.

9

decision into which he had no input and over which he had no control. The undersigned is of the opinion that Mr. Elkins owed Mr. Bowman no duty to prevent harmful products from entering the stream of commerce.

Second, the plaintiff asserts that Mr. Elkins owed her a duty to warn of the dangerous nature of the product. In support of this argument, Ms. Bowman cites Caudle v. Partridge, 566 So.2d 244, 247 (Ala. 1990), in which the Alabama high court stated that manufacturers and sellers have a duty to warn the public about products which they know or should know to be dangerous. See id. As indicated previously, Mr. Elkins is neither a seller nor a manufacturer; therefore, the Caudle decision does not impose any such duty to warn on him.[8]

Third and finally, Ms. Bowman invokes the general duty imposed by Alabama law on all persons to be careful not to hurt others. See Smithers v. McGaffety, 622 So.2d 322, 324 (Ala. 1993); Southeastern Greyhound Lines v. Callahan, 13 So.2d 660, 663 (Ala. 1943). While Alabama courts do recognize such a general duty, they also state that the determination of whether this duty exists in a particular context should be based on the consideration of "a number of factors, including public policy, social considerations, and foreseeability." Smithers, 622 So.2d at 324. For the reasons outlined previously, neither public policies nor social

---

[8] It is true that an individual may voluntarily shoulder a duty to inspect a product, in which case a duty to warn would arise. See Adams v. Travelers Insurance Co., 494 So.2d 401, 403-04 (Ala. 1986). However, the uncontroverted evidence is that Mr. Elkins undertook no such voluntary duty and, indeed, lacked the training and expertise to perform inspections of Lowe's products. See Elkins Deposition, at 15-16, 33-34, 75-76. As a result, Adams cannot serve as a basis for finding that Mr. Elkins owed Mr. Bowman a duty to warn about the unsafe nature of the Coleman heater which he purchased. Accord Cook v. Safeway Stores, Inc., 330 P.2d 375, 376 (Okla. 1958) (store clerk owes duty to supply customers wholesome food only where clerk has knowledge of unfitness or assumes duty to inspect food); Crosby v. Calaway, 16 S.E.2d 155, 159 (Ga. App. 1941) (same).

considerations would be furthered by the imposition of a duty of care on Mr. Elkins in this case. Moreover, the undersigned is of the opinion that the dangerous nature of the heater was not foreseeable to Mr. Elkins, who did not possess the training, expertise, background, or responsibility to inspect or test products such as the Coleman heater for defects. Therefore, the undersigned is of the opinion that no general duty of care is applicable in this case.

As this analysis demonstrates, it is evident that Mr. Elkins owed Ms. Bowman no duty which could give rise to personal liability on a negligence or wantonness theory. Hence, the undersigned believes that there is no possibility that the plaintiff could maintain such negligence or wantonness claims in state court. Given the Magistrate Judge's previous recommendations with respect to the AEMLD claims, the undersigned is of the opinion that the plaintiff fraudulently joined Mr. Elkins in this action, as there is no possibility that she could successfully interpose any of her claims against him in state court. Because Mr. Elkins has been fraudulently joined, his citizenship is immaterial for the purposes of evaluating the presence or absence of diversity jurisdiction in federal court. Complete diversity exists among the remaining parties. It is therefore the recommendation of the undersigned that the plaintiff's motion to remand be DENIED on the ground that there is complete diversity of citizenship among all parties properly joined and served in this litigation and that federal jurisdiction properly lies.

### B. Mr. Elkins' Motion to Dismiss

By order dated July 11, 1996, this Court advised the parties that it would construe Mr. Elkins' motion to dismiss as a motion for summary judgment. The undersigned is of the opinion that the foregoing recommendation on the fraudulent joinder issue effectively disposes of the summary judgment issue, as well. Indeed, the undersigned has already determined that there is no

11

possibility that the plaintiff could pursue any of her state law claims against Mr. Elkins in state court. There being no possibility of relief, it necessarily follows that there can be no genuine issue of material fact with respect to any of plaintiff's claims against Mr. Elkins. Therefore, the Magistrate Judge believes that Mr. Elkins is entitled to judgment as a matter of law with respect to all of those claims, pursuant to Rule 56(c), Fed.R.Civ.Pro. Accordingly, the undersigned recommends that Mr. Elkins' motion for dismiss, which was treated as a motion for summary judgment, be GRANTED and that the claims against him be DISMISSED with prejudice.

III. Conclusion

For all of the foregoing reasons, the undersigned recommends that the plaintiff's motion to remand this action to the Circuit Court of Mobile County, Alabama, be DENIED, and that defendant Elkins' motion to dismiss be GRANTED and the claims asserted against him be DISMISSED with prejudice.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 3RD day of September, 1996.

WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

12

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  Objection.  Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of this
document, file specific written objections with the Clerk of this
court.  Failure to  do so will bar a de novo determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the Magistrate Judge.
See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738
(11th Cir. 1988); Nettles v. Wainright, 677 F.2d 404 (5th Cir.
Unit B, 1982)(en banc).  The procedure for challenging the findings
and recommendations of the Magistrate Judge is set out in more
detail in Local Rule 26(4)(b), which provides that:

     Any party may object to a magistrate judge's proposed
     findings, recommendations or report made under 28 U.S.C.
     § 636(b)(1)(B) within ten (10) days after being served
     with a copy thereof.  The appellant shall file with the
     Clerk, and serve on the magistrate judge and all parties,
     written objections which shall specifically identify the
     portions of the proposed findings, recommendations or
     report to which objection is made and the basis for such
     objections.  A judge shall make a de novo determination
     of those portions of the report or specified proposed
     findings or recommendation to which objection is made and
     may accept, reject, or modify in whole or in part, the
     findings or recommendations made by the magistrate judge.
     The judge, however, need conduct a new hearing only in
     his discretion or where required by law, and may consider
     the record developed before the magistrate judge, making
     his own determination on the basis of that record.  The
     judge may also receive further evidence, recall witnesses
     or recommit the matter to the Magistrate judge with
     instructions.

     A Magistrate Judge's recommendation cannot be appealed to a
Court of Appeals; only the District Judge's order or judgment can
be appealed.

2.  Transcript (applicable Where Proceedings Tape Recorded).
Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate
Judge finds that the tapes and original records in this case are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript, is
advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost of
the transcript.

_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT  G

## JURY AWARDS IN AEMLD CASES

| | |
|---|---|
| $950,000 | Castleberry v. Cantrell Mach. Co., 2004 WL 3201180 (Ala. Cir. Ct., Blount County, Sept. 2, 2004) (products liability action by a woman whose hand was injured by a chicken heart and liver harvesting machine) |
| $50,000,000 (Original Verdict) | Mack Trucks, Inc. v. Witherspoon, 867 So. 2d 307 (Ala. 2003) (products liability case arising out of a tractor-trailer rollover) |
| $12,000,000 ($6,000,000 Compensatory, $6,000,000 Punitive) | Morgan v. ProTech Industries, 2003 WL 23111870 (Ala. Cir. Ct., Lamar County, Aug. 29, 2003) (wrongful death case based on products liability claim against truck manufacturer arising out of rollover and absence of cab guard on logging truck) |
| $7,000,000 | Daniel v. Snap Products, 2003 WL 23111815 (Ala. Cir. Ct., Baldwin County, May 28, 2003) (wrongful death case based on products liability claim against manufacture of tire repair product after treated tire exploded) |
| $4,168,500 ($1,068,500 Compensatory, $3,100,000 Punitive) | McClain, et al. v. Metabolife Intl., Inc., 259 F. Supp. 2d 1225 (N.D. Ala. 2002) (products liability action by four plaintiffs who suffered cardiac symptoms after using ephedra-based diet drug) (reversed on appeal, 401 F.3d 1233 (11th Cir. 2005), and remanded for a new trail) |
| $960,000 ($25,000 over and above $935,000 in pro tanto settlements) | Hannah v. Gregg Bland & Berry, 2002 WL 32169853 (Ala. Cir. Ct., Colbert County, Oct. 25, 2002) (wrongful death case arising out of fatal crush injury in industrial belt equipment) |
| $122,000,000 ($22,000,000 Compensatory, $100,000,000 Punitive) | Jernigan v. General Motors Corp., Bullock County (May 3, 2002) (products liability case arising out of collapse of Oldsmobile passenger compartment) (reversed on appeal, 883 So.2d 646 (Ala. 2003), and remanded for new trial) |
| $510,000 (Compensatory) $10,000,000 (Punitive) | Hobart Corporation v. Scottie W. Scoggins, 776 So.2d 56 (Ala. 2000) (products liability action by a man who was injured while using a meat saw manufactured by Hobart) |
| $3,000,000 ($2,500,000 Compensatory $500,000 Punitive) | Cessna Aircraft Company v. Robert Trzcinski, 682 So. 2d 17 (Ala. 1996) (products liability action by a man who was injured in an airplane crash due to a defective shoulder harness) |
| $1,000,000 (Original verdict $825,000) | Uniroyal Goodrich Tire Company v. Jackie Darryl Hall, 681 So. 2d 126 (Ala. 1996) (products liability action by a man who was injured when wheel rim exploded) |
| $1,225,000 | Ford Motor Company v. June Burdeshaw, 661 So. 2d 236 (Ala. 1995) (wrongful death case brought against truck manufacturer after decedent was killed by a truck's transmission slipping out of neutral and crushing him) |

| | |
|---|---|
| $13,000,000 | General Motors Corporation v. Pamela L. Saint, 646 So. 2d 564 (Ala. 1994) (products liability action by a woman who was injured due to a defective seat belt) |
| $250,000 ($100,000 Compensatory, $150,000 Punitive) | Flagstar Enterprises, Inc. v. Maureen Davis, 709 So. 2d 1132 (Ala. 1998) (products liability action by a woman who found human blood in styrofoam package containing biscuit gravy) |
| $250,000 | Caterpillar, Inc. v. Hightower, 605 So. 2d 1193 (Ala. 1992) (product liability action brought by a man who was injured by a broken tree trunk while handling machinery during logging operation) |
| $115,000 | Banner Welders, Inc. v. Knighton, 425 So. 2d 441 (Ala. 1982) (product liability claim against manufacture for personal injuries received on shuttle welder) |
| $6,500,000 | Sears, Roebuck & Co. v. Harris, 630 So. 2d 1018 (Ala. 1993) (wrongful death case based on product liability claims against manufacturer and retailer of gas water heater that caused carbon monoxide poisoning) |
| $7,500,000 | General Motors Corp. v. Johnson, 592 So. 2d 1054 (Ala. 1992) (wrongful death case based on product liability claim where child was killed in automobile accident) |
| $5,000,000 | Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So. 2d 812 (Ala. 1989) (widows of two workers killed in industrial accident brought wrongful death action against distributor of cleaning substances that ignited and caused death of workers) |
| $2,800,000 | General Motors Corp. v. Edwards, 428 So. 2d 1176 (Ala. 1985) (wrongful death case based on products liability claim where two boys were killed in automobile accident) |
| $200,000 | Interstate Engineering, Inc. v. Burnett, 474 So. 2d 624 (Ala. 1985) (wrongful death case brought against manufacturer of heat detectors after decedent was killed in a fire) |
| $800,000 | Piper Aircraft Corp. v. Evans, 424 So. 2d 586 (Ala. 1982) (damages in wrongful death case based on product liability claims against airplane manufacturer where decedent was killed in plane crash) |
| $500,000 | Caterpillar Tractor Co. v. Ford, 406 So. 2d 854 (Ala. 1981) (wrongful death case based on product liability claims where decedent was killed in an accident on a tractor manufactured by defendant) |