IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT BLANKENSHIP,                    )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )
                                       )    CIVIL ACTION NO. 2:06cv-648
PFIZER, INC., BOEHRINGER               )
INGELHEIM PHARMACEUTICALS,             )
INC.; DAVID ROHLING; KMART OF          )
MICHIGAN, INC.; ART REDDING;           )
KELLI STRANGE, et al.,                 )
                                       )
        Defendants.                    )

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiff, Robert Blankenship, hereby submits his brief in support of his Motion to Remand. Defendant, Boehringer Ingelheim Pharmaceuticals, Inc. (hereinafter "BIPI") has failed to establish that this Court has jurisdiction over these proceedings, and, as such, the Plaintiff's Motion to Remand is due to be granted, and this cause remanded back to the Circuit Court for Barbour County, Alabama for the following reasons:

1. This Court lacks subject matter jurisdiction. The Plaintiff and two of the named Defendants are residents of the State of Alabama. As such, complete diversity of jurisdiction is absent. Defendant BIPI has failed to establish that Defendants David Rohling and Kelli Strange ("Individual Resident Defendants") were fraudulently joined as parties to this cause to defeat federal jurisdiction. Defendant has failed to establish that there is "no possibility" that the Plaintiff

cannot prevail in state court against the Individual Resident Defendants. In fact, the allegations made against the Individual Resident Defendants are sufficiently pleaded under and supported by Alabama law. Further, the allegations set forth in Plaintiff's state court complaint adequately set forth factual and legal basis to support the claims against the Individual Resident Defendants, and the stated allegations clearly indicate that the Individual Resident Defendants acted independently and in concert with Defendant BIPI.

2.    The affidavit filed by Defendant Rohling proves that he is properly joined and clearly demonstrates that the Plaintiff has a valid cause of action against said Defendant.

3.    The cases cited by Defendants do not support the conclusion that joinder of the Individual Resident Defendants in this case was fraudulent.

I.    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This product liability action arises from damages sustained by Robert Blankenship as a result of taking the prescription drug Mirapex (Pramipexole Dihydrochloride), a prescription drug designed to treat certain movement disorders including Parkinson's Disease by chemically altering the brain. As set forth in his state-court complaint, Mr. Blankenship was prescribed and used Mirapex beginning in November of 2000. Mr. Blankenship continuously took the drug up until May 1, 2006 when Mr. Blankenship's treating physician, Dr. Alan Prince, realized the association between Mr. Blankenship's use of the drug Mirapex and his compulsive gambling. (Exhibit "A"). Mr. Blankenship had no history of compulsive gambling until he started taking Mirapex. Unfortunately,

BIPI failed to notify Dr. Prince by and through its drug representative, David Rohling, until after Mr. Blankenship had lost his life savings and incurred huge gambling debts. As soon as Mr. Blankenship discontinued use of Mirapex, he was able to stop gambling. Mr. Blankenship has suffered financial loss as well as mental suffering and emotional distress and other damages as set forth in the state court complaint as a result of taking Mirapex.

Scientific research has linked the use of dopamine agonists such as Mirapex and its effects on the brain with compulsive behavior including compulsive gambling. The evidence will show that BIPI as well as Rohling knew or should have known of the association between compulsive behavior and the use of Mirapex before Mr. Blankenship was damaged. These Defendants should have notified Dr. Prince as a learned intermediary, as well as Robert Blankenship, through its direct marketing of that potential risk. (Exhibits "B" & "C" – medical research). Defendant BIPI, designed, manufactured and marketed or distributed Mirapex despite knowing that Mirapex causes brain alterations including compulsive behavior in some people. Defendants BIPI and Pfizer jointly and severally encouraged the use of Mirapex through an aggressive marketing campaign, including through its sales representatives detailing physicians, and through direct-to-consumer advertising. The direct-to-consumer advertising included advertisements on television throughout Alabama. In addition, the Defendants misrepresented or concealed the known and serious side effects from physicians and from the consuming public, including Robert Blankenship. The Defendants knew of the defective and unreasonably

dangerous nature of Mirapex, yet continued to manufacture and sell Mirapex so as to maximize gross sales and profits in conscious disregard of the foreseeable harm to be caused by Mirapex. The Individual Resident Defendants and the sales representative who detailed the prescribing physician in this cause were informed of the drug's dangerous propensities, but participated in the scheme to suppress and withhold this information from physicians and the consuming public. The affidavit of David Rohling clearly shows that he was aware of the association between Mirapex and compulsive gambling because he was notified by his employer, BIPI.[1] David Rohling also admits that he detailed this drug to Robert Blankenship's treating physician, Dr. Alan Prince of Dothan from September 2003 through December 2004. The evidence will show that is the precise time when Mr. Blankenship lost the bulk of his life savings while taking Mirapex. Dr. Prince was never notified by the drug detail person of the association between compulsive gambling and the use of the drug, nor was he aware of the association, until shortly before Dr. Prince took Mr. Blankenship off the drug.[2] The sales representatives, in concert with Defendant BIPI and Pfizer, benefited by the suppression of this critical information by increasing the sales of the drug, which correspondingly increased commissions, bonuses and incentives earned from the sale of Mirapex.

---

[1] The affidavit of David Rohling's paragraph 7 says "my knowledge about Mirapex, and the information that I used in the course of my employment, was provided to me by my employer, BIPI. I had no knowledge of any alleged association between Mirapex and compulsive gambling until informed by my employer BIPI, as a part of its sales force communication."
[2] See affidavits of Robert Blankenship and Dr. Alan Prince. Exhibits "D" & "E" attached and filed with this brief.

The evidence in this case will show that Defendants were well aware of the scientific community making the association between the use of Mirapex and compulsive behavior, including compulsive gambling before Mr. Blankenship lost his life savings.

While Mr. Rohling says he didn't do independent research to study the drug, that is not determinative nor does it set the standard of care. Mr. Rohling may have been negligent in <u>not</u> doing such study.

The scientific research which predates Mr. Blankenship's use of Mirapex clearly shows that not only does Mirapex cause compulsive behavior, a simple discontinuation or reduction of the dose can alter the behavior almost immediately. Therefore, a warning to the treating physician so that they may monitor the patient's behavior could significantly reduce the risk of the use of the drug and damage to the patients.

Mr. Blankenship first became aware of the potential association between Mirapex and compulsive gambling not from his treating physician or from Defendants but from friends who had seen news reports reporting on scientific studies of the association between compulsive behavior and the use of the drug. Mr. Blankenship and his prescribing physician reasonably relied on the representations of Defendants including David Rohling, and their superior knowledge as to the safety and fitness for the intended use of Mirapex.

At the time the Defendants marketed, sold and distributed Mirapex for use by Mr. Blankenship, the Defendants knew their representations about the safety of Mirapex were false, or they made those representations with reckless

disregard for their falsity.  The Defendants' wrongful acts or omissions were a contributing or proximate cause of Mr. Blankenship's injuries.

Defendant Strange, a resident of Alabama, filled the prescriptions and therefore placed the drug Mirapex into the stream of commerce.

Shortly after the discovery of the association between the use of the drug Mirapex and the financial losses to Mr. Blankenship, a suit was filed in the Circuit Court for Barbour County, Alabama where Mr. Blankenship resides.  Plaintiff asserted various causes of action against the Defendants, including product liability under the AEMLD, negligence, wantonness and fraud including fraudulent misrepresentation as to the safety of the drug and suppression or concealment of the dangers of the drug.  The causes of action allege significant financial losses to Robert Blankenship and his family as well as his mental anguish and emotional distress.

On July 20, 2006, Defendants filed a Notice of Removal with this Court. Plaintiff now urges this Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c) and the authority referenced herein.

## II.    SUMMARY OF ARGUMENT

This case represents an attempt by Defendants to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. BIPI's contention that the Plaintiff has named Individual Resident Defendants as a tactic to attempt to defeat diversity is an affront to Plaintiff's due process rights to seek relief from those who are responsible for Plaintiff's injuries in the forum of his choosing.

This and other federal District Courts in the Eleventh Circuit have rejected similar frivolous attempts by Defendants to remove validly pleaded causes of action against drug manufacturers from state to federal court.  See, e.g., Irvin v. Merck & Co., Inc., et al, Case No. 03-80514-cv-Hurley (S.D. Fla. Oct. 9, 2003);[3] Turner v. Merck & Co., Inc., et al, Case No. 2:05cv702-T (M.D. Ala. Sept. 21, 2005); Struthers v. Merck & Co., Inc., et al., Case No. 2:06cv127-MHT (M.D. Ala. March 13, 2006); Leverett v. Merck & Co., Inc., et al., Case No. 3:06cv128-MHT (M.D. Ala. March 15, 2006).  This Court, in its remand orders in Struthers and Leverett, stated that:

> This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now before the court on plaintiff's motion to remand.  The Court agrees with plaintiff that this case should be remanded to state court.  First, there has not been fraudulent joinder of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Judge Hurley, in his remand order in Irvin, likewise held the plaintiffs presented colorable claims that, if proven, would subject the in-state, sales representative defendants to liability.  These cases are indistinguishable from the present case.

The sole question before this Court is whether this action should be remanded as having been improvidently removed.  Removal is improper where

---

[3] The Irvin case was removed from and remanded back to state court and resulted in the court charging costs and attorneys' fees against Merck for its frivolous removals.  Irvin v. Merck Co., Inc. Case No. 03-80514-cv-Hurley (S.D.Fla. Feb 14, 2005).  See Exhibit "F" attached and filed with this brief. See also Exhibit "G" for other federal district courts which have ruled accordingly.

complete diversity of citizenship is lacking.  In this case, the Plaintiff and two Individual Resident Defendants, as set forth in the state-court complaint, are residents of Alabama.  Thus, this Court would not have had original jurisdiction had Plaintiff chosen to prosecute this action in federal court.

Defendant BIPI has wholly failed to establish that the Plaintiff fraudulently joined the Individual Resident Defendants as a means to defeat diversity of citizenship.  The Plaintiff's Complaint alleges claims against all the Defendants that, if proven at trial, will sustain a jury verdict against all Defendants.  As averred and as set forth in more detail herein, David Rohling was active in his negligence, wantonness and was active in an attempt to mislead physicians and the consuming public about the dangers of the drug Mirapex.  Pursuant to Alabama law, Rohling can be found liable for his independent conduct in this case.

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1447(c), after a cause of action has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction." (Emphasis added.)  It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power established by Article III of the United States as authorized by Congress.  See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Because the statutes

governing removal are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal.  See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868 (1941); University of South Alabama, 168 F.3d at 411; Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999) (DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants."   Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983).   Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity; that is, every plaintiff must be diverse from every defendant.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

In an action based upon a removal petition and a motion to remand, the defendant, as the removing party, bears the burden of establishing federal subject matter jurisdiction.  See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).  Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997); and all questions of fact and controlling law should be

9

resolved in favor of the plaintiff, Shamrock Oil, 313 U.S. at 108-09; University of South Alabama, 168 F.3d at 411.  Accord Cope v. American Int'l Group, Inc., 2006 WL 317238 *1 (M.D. Ala. 2006) (Albritton, Senior J.) ("[T]he Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

A defendant seeking to prove that a co-defendant was fraudulently joined to defeat removal to federal court on diversity grounds must demonstrate either that:

(1)    There is no possibility the plaintiff can establish a cause of action against the Resident Defendant; or

(2)    The plaintiff has fraudulently pled jurisdictional facts to bring the Resident Defendant into state court; the defendant must make a showing by clear and convincing evidence.  Henderson v. Washington Nat. Ins. Co., et al., 2006 WL 1867353 *2 (11th Circuit 2006 July 7, 2006; citing Crowe v. Coleman, 113 F.3d at 1536, 1538 (11th Cir. 1997).

## IV.    ARGUMENT

### A.    Diversity jurisdiction does not exist.

Defendant BIPI does not dispute that complete diversity is missing on the face of Plaintiff's Complaint.  Rather, Defendant BIPI, in contravention of the settled law of this State, contends that the citizenship of the Individual Resident Defendants should be disregarded on the ground that they were fraudulently joined.  Defendant BIPI has failed to carry its burden on this issue and, thus, this

cause is due to be remanded back to the Circuit Court for Barbour County, Alabama.

### 1.    The standard for fraudulent joinder supports remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against a resident defendant. Id. at 1287, see also Henderson v. Washington Nat. Ins. Co., et al., 2006 WL 1867353 *2 (11th Circuit (Ala.)) July 7, 2006. The removing party bears the burden of establishing fraudulent joinder. See Coker, 709 F.2d at 1440; see also, Pacheco de Perez, 139 F.3d at 1380; Cope v. American Int'l Group, Inc., 2006 WL 317238 *2 (M.D. Ala. 2006) (Albritton, Senior J.). That burden is a heavy one. See Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that (1) "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Henderson v. Washington Nat. Ins. Co., et al., 2006 WL 1867353 *2 (11th Circuit (Ala.)) July 7, 2006. The defendant must make a showing by clear and convincing evidence. Id. at *3. "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's

claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. According to the Court in Crowe:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

Id. at 1541-42 (quoting B., Inc., 663 F.2d at 550)(emphasis added).

### 2.    The resident defendants were not fraudulently joined.

Defendant BIPI has made no claim that Plaintiff fraudulently pleaded jurisdictional facts. Accordingly, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiff has asserted valid claims against any one of the resident defendants. See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before the Plaintiff has had full opportunity to develop his claim against the Individual Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has

12

evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n.

Defendant BIPI relies primarily upon Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005). However, that case is distinguishable from this case. In Legg, the drug detail person that detailed to the physician asserted that she had "no knowledge of Redux's alleged association with valvular heart disease until the allegation was first publicized." Id. at 1321. In this case the affidavit of David Rohling, the BIPI representative, admits that he had knowledge of the association between Mirapex and compulsive gambling because he was informed by BIPI as part of its sales force communications. It is further shown by Mr. Rohling's affidavit that he was in fact detailing Mirapex to Dr. Prince during September of 2003 through December of 2004 which was the time period when Mr. Blankenship was being damaged by the product. Under existing law, Dr. Prince is a learned intermediary and as such is the person responsible for informing the patient of the drug risk. Dr. Prince had no knowledge of the association of compulsive behavior with the use of the drug Mirapex until such time as he was informed by the drug detailer representing BIPI shortly before taking Mr. Blankenship off the drug. Unfortunately the information was provided

too late and at a time when Mr. Blankenship had suffered significant financial losses.

Dr. Prince relied on the drug detail persons to provide information to him regarding the dangers of drugs including the drug Mirapex. According to paragraph eight of Rohling's affidavit, Rohling used the FDA approved prescribing information or package inserts to discuss the drug in speaking with physicians. Unfortunately Rohling did not inform Dr. Prince of the information that BIPI had provided to him as a part of its sales force communications as shown in paragraph seven of the Rohling affidavit. Based on the affidavit filed by Mr. Rohling, it could be concluded that had Rohling provided the information to Dr. Prince that was provided to him by BIPI, then Mr. Blankenship could have been effectively warned of the association between his financial losses and the use of the drug Mirapex early enough to avoid financial loss.

Plaintiff has asserted valid claims under Alabama law against the Individual Resident Defendants.

   a.   **The Plaintiff has stated valid product liability (AEMLD) claims against the Individual Resident Defendants.**

To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)   He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

   (a)   the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

  (2) Showing the above elements, a plaintiff has proved a prima facie case although

    (a) the seller has exercised all possible care in the preparation and sale of the product, and

    (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

See Casrell v. Altec Indus., Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

   It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996).

   In the case at bar, the Individual Resident Defendant, David Rohling, marketed Mirapex to healthcare professionals including Mr. Blankenship's physician by calling on him and detailing the drug. In addition, Kelli Strange, the pharmacist who admittedly sold the drug to Robert Blankenship placed the drug into the stream of commerce and failed to provide Mr. Blankenship with

appropriate warnings regarding the effect of a dopamine agonist on an individual's behavior.

Defendant BIPI, Pfizer and Individual Resident Defendants had knowledge of the efficacy and safety profile of Mirapex over that of a prescribing physician and especially the patient who took the drug. Plaintiff and his prescribing physician detrimentally relied on information provided by the David Rohling. Robert Blankenship detrimentally relied on information provided by the Individual Resident Defendant, Kelli Strange. The Individual Resident Defendants provided incorrect, misleading and/or incomplete information about this drug. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendants is more than a mere "possibility."

In Clay and Seaborn, supra, this court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." Clay, 77 F. Supp. 2d at 1224; Seaborn, 1996 WL 943621 at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Other United States District Courts have also consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in

the context of products liability actions, seeking damages as the result of a defective drug. See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996).

As Judge Ira DeMent wrote in Clay, 77 F. Supp. 2d at 1223, quoting de Perez, 139 F.3d at 1380-81 and Crowe, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."    The question of whether drug sales representatives can be held liable under the AEMLD is "arguable under state law."  As a result, the Plaintiff has stated "possible" viable claims against the Individual Resident Defendants.

> **b.    The Plaintiff has alleged valid claims of negligence or wantonness against the Individual Resident Defendants.**

Under Alabama law, the manufacturer of a product which may be reasonably anticipated to be dangerous if used in a way which he should reasonably foresee it would be used is under a duty to exercise reasonable care to give reasonable and adequate warning of any danger known to him, or which in the exercise of reasonable care he should have known in which the user of the produce obviously could not discover.  Reasonable care means that degree of care which a reasonably prudent person would exercise under the same circumstances. *Alabama Pattern Jury Instructions* 32.07.  In this case, BIPI had the duty to warn Robert Blankenship of the dangers in association with the drug.

One of their systems for providing that warning is through the drug detailman to the treating physicians, in this case, Dr. Alan Prince, who is the learned intermediary. David Rohling in his affidavit, admitted that he detailed the drug to Dr. Prince during the time period when Robert Blankenship was suffering his loss. Dr. Prince's affidavit proves that he was never told by the drug detailman of the association between the use of the drug Mirapex and compulsive gambling until it was too late. David Rohling had that information as shown by his own affidavit in paragraph seven.

Even though David Rohling was working as a corporate agent for BIPI, he still remains individually liable. A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort. Seiber v. Campbell, 810 So.2d 641, 645 (Ala. Sup. Ct. 2001); citing Bethel v. Thorn, 757 So.2d 1154, 1158 (Ala. 1999).

Further, in-state Defendant, Kelli Strange, failed to warn Mr. Blankenship of the potential association between Mirapex and compulsive gambling. While she claims in her affidavit that she made no representations concerning Mirapex and did not suppress any information concerning Mirapex, the affidavit does not state that she had no knowledge of the association between Mirapex use and compulsive gambling. While Defendants cite Walls v. Alpharma USPD, 887 So.2d 881 (Ala. 2004) and Lansdell v. American Home Products Corp., 1999 WL 33548541 (N.D. Ala. Oct. 26, 1999); Sanks v. Parke-Davis, 2000 WL 33910097 (M.D. Ala. 2000) for the proposition that is no reasonable possibility of imposing liability against the pharmacy, the true test is whether or not the Plaintiff has

18

established a colorable and potentially viable cause of action against the pharmacist. The fact that the pharmacist may ultimately prevail is not the issue.[4]

> **c.      The Plaintiff has alleged valid claims of fraud, fraudulent misrepresentation, fraudulent suppression and concealment against the Individual Resident Defendants.**

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437, 439 (Ala.1991). In the case at bar, Plaintiff alleges that Defendant BIPI and the Individual Resident Defendants, together or separately, negligently, recklessly, intentionally and fraudulently made material misrepresentations that Mirapex was safe. The Individual Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Mr. Blankenship, to purchase Mirapex. Moreover, Plaintiff alleges that, at the time the Defendants made these representations or failed to disclose the information that they were aware of , the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth. Plaintiff also alleges that Robert Blankenship and his prescribing physician detrimentally relied upon the

---

[4] See Exhibit "H" attached and filed with this Brief.

19

material misrepresentations and suppressions of the Defendants and, as a result, Robert Blankenship suffered injuries.

Defendant BIPI asserts in its Notice of Removal that claims of fraud cannot be maintained against the Individual Resident Defendants. In so arguing, Defendant BIPI suggests that the Individual Resident Defendants made no representations to Mr. Blankenship. However, it "is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." Bloodsworth v. Smith & Nephew, 2005 WL 3470337 at *11 (M.D. Ala. Dec. 19, 2005) (quoting Thomas v. Halstead, 605 So. 2d 1181, 1184 (Ala. 1992)). "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." Id. at *11 (quoting Thomas, 605 So. 2d at 1184).

Furthermore, United States District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims in the context of fraudulent misrepresentation and suppression claims against pharmaceutical sales representatives and have remanded these cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have no possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be

premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); Ballard v. Wyeth, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Brunson v. Wyeth, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Blair v. Wyeth, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Storey v. Wyeth, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); Cash v. Wyeth, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); Marshal v. Wyeth, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); McGowan v. Wyeth, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); Johnson v. Wyeth, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); Bradford v. Wyeth, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Smith v. Wyeth, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Boudreaux v. Wyeth, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Bridges v. Wyeth, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); Hough v. Wyeth, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); Brogden v. Wyeth, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); Reeder v. Wyeth, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); Eaton v. Wyeth, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); Allen v. Wyeth, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); Chestnut v. Wyeth, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); King v. Wyeth, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); Culpepper

v. Wyeth, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); Braden v. Wyeth, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); Cross v. Wyeth, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); Bennett v. Wyeth, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[5]

Federal District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. Accordingly, the Individual Resident Defendant Rohling was not fraudulently joined in this case.

### d. The Plaintiff's complaint was pleaded with sufficient particularity to support claims against the Individual Resident Defendants.

Defendant BIPI also asserts that Plaintiff failed to plead his claim of fraudulent misrepresentation with particularity. However, in his Complaint, Plaintiff sufficiently alleges that the Individual Resident Defendants fraudulently misrepresented the safety of the drug by implying that the drug was safe and fraudulently suppressed evidence concerning the danger of the drug which could result in personal property loss and mental anguish. The Complaint goes on to say that the Defendants' strategy has been to aggressively market and sell Mirapex by understating risks associated with the use of the product and intentionally misleading users and treating physicians about the potential adverse consequences which the Defendants knew or should have known would result in the use of the product including compulsive behavior such as compulsive gambling. (Paragraph 18 of the Complaint).

---

[5] See Exhibit "I" attached and filed with this brief.

The allegations are with sufficient particularity.  However, to the extent the Court finds Plaintiff's Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder.  See Bloodsworth, 2005 WL 3470337 at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2d 869, 870 (N.D. Miss. 2004) ("a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

**B.  Legg v. Wyeth is not controlling or dispositive of the issues in this matter.**

Defendant BIPI refers to the recent decision of the United States Court of Appeals for the Eleventh Circuit, Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005), and argues that the decision supports a denial of the Plaintiff's motion to remand. The Defendant's argument in this respect must fail.

**1.  Legg v. Wyeth is not controlling on the issue of subject matter jurisdiction and any language in Legg relative to the remand proceedings is dictum.**

In Legg, the issue before the appellate court was whether the district court abused its discretion by awarding attorney's fees and costs to the plaintiffs as a result of the removal petition filed by the defendant, a drug company manufacturer, Wyeth.  Contrary to the position urged by Defendant BIPI in the present cause, the issue was not whether the district court abused its discretion

by remanding the case, after finding that the defendant failed to meet its burden of establishing fraudulent joinder. Indeed, the Eleventh Circuit noted that "28 U.S.C. § 1447 (d) bars our review of a remand such as this one based on lack of subject matter jurisdiction," but "the statute does not 'exclude the district court's assessment of costs from appellate review.'" Legg, 428 F.3d at 1319-20 (quoting Fowler v. Safeco Ins. Co., 915 F.2d 616, 617 (11th Cir. 1990)). The Court in Legg did not state that the trial court's remand order was in error, nor did the Court rule that the standard of review in such cases should be changed.

Since the language of Legg relied upon by Defendant BIPI is not essential to the issue in that case, it is merely dictum and should not be given *stare decisis* effect by this Court. Nevertheless, assuming *arguendo* that this Court should defer to Legg on this issue, the Legg court's holding is in contravention of well-settled Alabama law, which provides that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. See Ala. Code § 6-5-101 (1975). See also Thomas v. Halstead, 605 So. 2d at 1181 (Ala. 1992). As discussed above, Alabama law is well-established that individual employees can be held liable for torts in which they participate.

Since the Eleventh Circuit did not have within its jurisdiction the ability to address the merits of the remand order in Legg, any discussion of the merits of the district court's order remanding the case back to state court is dictum and has no legal, precedential value. As a result, this Court should disregard that aspect of the Legg decision.

**2. Even if the Eleventh Circuit's substantive discussion of removal and remand proceedings in <u>Legg v. Wyeth</u> should be considered, the "evidence" before the Court in this cause is more than sufficient to establish that there is a "possibility" of recovery against the Individual Resident Defendants.**

As stated previously, the affidavits filed in <u>Legg</u>, significantly differ from the affidavit filed by David Rohling in the case sub judice. In <u>Legg</u>, Betsy Weaver, the sales representative admitted that she promoted Redux to licensed healthcare providers and answered their questions but she denied having any knowledge of any alleged association between valvular heart disease and the drugs until the allegation was first publicized. In the case at issue, David Rohling admits that he knew of the association between Mirapex and compulsive gambling and that information was provided to him by BIPI. (Affidavit of David Rohling, paragraph 7).

## V. CONCLUSION

In all of its efforts, Defendant BIPI has failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiff can establish a cause of action against the Resident Defendants David Rohling and Kelli Strange. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiff Robert Blankenship respectfully urges the Court to remand this action in its entirety to the Circuit Court for Barbour County, Alabama.

Respectfully submitted this 4th day of August, 2006.

/s/ J.  Greg Allen
J. GREG ALLEN (ALL021)
Attorney for Plaintiff


OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
(334) 269-2343


## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing document with the Court using the CM/ECF system, which will send notification of such filing to the following on this the 4th day of August, 2006.

/s/ J.  Greg Allen
OF COUNSEL

**Attys for Defendants Boehringer**
**Ingelheim Pharmaceuticals, Inc.**
**and David Rohling**

Maibeth J. Porter
Alvin L. Fox
Edward A. Hosp
Marcia P. Braswell
MAYNARD, COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama  35203-2602

Beth S. Rose
Stuart M. Feinblatt
Jennifer Ewers Hurley
SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark,  New Jersey 07102

26

**Attys for Defendant Pfizer, Inc.**

F.M. Haston, III
Andrew B. Johnson
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama  35203

Kimberly Bessiere Martin
BRADLEY ARANT ROSE & WHITE LLP
200 Clinton Avenue West
Suite 900
Huntsville, Alabama  35801

**Attys for Defendants Art Redding
and Kelly Strange**

Philip F. Hutcheson
BOARDMAN, CARR & HUTCHESON, P.C.
400 Boardman Drive
Chelsea, Alabama  35043-8211

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.

*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1708*

**FOLLOW-UP VISIT:** May 1, 2006

**RE:** Robert Lee Blankenship                    **DOTHAN OFFICE**

**REFERRED BY:**    Glenn Terry, MD

The patient is on Stalevo 150mg three times a day. He is on Mirapex but we will take him off of it. There is the possibility that a lot of his compulsive gambling was on the basis of that drug so we do not want to use it anymore. In its place we will build him up on Requip. We will start off on Requip .25mg three times a day and after about four weeks he will be on 1mg three times a day. At about eight weeks he will be on 3mg three times a day.

**ALAN D. PRINCE, M.D.**

**ADP/trm**

PLAINTIFF'S
EXHIBIT
A
tabbies'

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.

*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:**  November 1, 2004

**RE:** Robert Lee Blankenship                        **DOTHAN**

**REFERRED BY:** Glenn Terry, MD

The patient is taking Stalevo 150 mg 3 times a day and Mirapex 0.25 mg 3 times a day.  I will not change any of the medications that he is taking.  He is doing well.  If in the future he should change in any way, we could then increase the Mirapex at that time.

_____

**ALAN D. PRINCE, M.D.**

**ADP/mjs**

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

# *Dothan Neurodiagnostic Center, P.C.*
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:** August 19, 2004

**RE:** Robert Lee Blankenship                    **DOTHAN**

**REFERRED BY:** Glen Terry, MD

The patient is currently taking Staleva 150 mg twice a day. He may get more symptomatic when he runs out of medications. I will increase his medications to Stalevo 150 mg in the morning, 150 mg in the early afternoon and 100 mg in the later afternoon and continue on the Mirapex 0.25 mg 4 times a day.


_____

**ALAN D. PRINCE, M.D.**

**ADP/mjs**

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## *Dothan Neurodiagnostic Center, P.C.*

*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:**  May 24, 2004

**RE:** Robert Lee Blankenship                                    **DOTHAN**

**REFERRED BY:** Glenn Terry, MD

The patient has been taking Stalevo 100 mg b.i.d and Mirapex 0.25 mg 4 times a day. He still has the same tremor of the right hand. He is not quite sure if we really helped him or not. I will increase the Sinemet in the form of Stalevo 100 mg t.i.d. leaving him on the Mirapex and see if this makes any difference. We may even need to go up to the higher dose.

_____

**ALAN D. PRINCE, M.D.**

**ADP/mjs**

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.

*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:** April 22, 2004

**RE:** Robert Lee Blankenship　　　　　　　　　　**DOTHAN**

**REFERRED BY:** Nelson Gwinn, MD

The patient is taking Sinemet CR 25/100 twice a day and Mirapex 0.25 mg 4 times a day. He is having increasing tremor of the right arm. He does not have very much stiffness or rigidity. I will switch him from the Sinemet to Stalevo 100 mg b.i.d. leaving him on the Mirapex 0.25 mg 4 times a day. I will see if this helps the tremor.


**ALAN D. PRINCE, M.D.**

ADP/mjs

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:**     May 17, 2001

**RE:**                          Robert Blankenship                      **DOTHAN**

**REFERRED BY:**          Nelson Gwinn, M.D.

The patient is still having movements and tremor in the right leg. He has done better time that I increased the Mirapex. He is currently taking .25 mg four times a day. I feel that he will need to be started on Sinemet. I will put him on Sinemet CR 25-100 one in the morning. If he feels after about a week that he needs more medication in the afternoon, then we will go to a twice a day dosage.

**ALAN D. PRINCE, M.D.**

**ADP/lc**

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## *Dothan Neurodiagnostic Center, P.C.*
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:**  March 22, 2001

**RE:**  Robert Blankenship                                              **DOTHAN**

**REFERRED BY:**  Nelson Gwinn, MD

The patient has some tremor in the right leg.  He had been on Mirapex 0.25 mg 3 times a day but the tremor got a little bit worse and when he went to 4 times a day the tremor is better.  He is still taking Ativan.  At this point in time since he is doing well no change is planned.  I will leave him on the medications as above.

**ALAN D. PRINCE, M.D.**

ADP/mjs

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:** December 21, 2000

**RE:** Robert Blankenship                                        **DOTHAN**

**REFERRED BY:** Nelson S. Gwinn, MD

The patient is currently taking Mirapex 0.25 mg 3 times a day and his tremor is better. When I tried to take him off of the Mirapex and adjusted his Ativan his tremor got worse. I am not sure at this time whether we are dealing with anxiety or early Parkinson's but I will consider it Parkinson's currently. We will leave him on the Mirapex 0.25 mg a day since he is doing so well.

_____

**ALAN D. PRINCE, M.D.**

**ADP/mjs**

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## *Dothan Neurodiagnostic Center, P.C.*
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:** December 4, 2000

**RE:** Robert Blankenship                    **DOTHAN**

**REFERRED BY:** Nelson S. Gwinn, M.D.

The patient has had a normal EEG with spike detention. Clinically his tremor is better. I had placed him on Mirapex. The patient himself doubts that he has Parkinson's and questions whether or not this could be anxiety. I tend to agree with him that it is anxiety. I will discontinue the Mirapex and place him on Ativan 0.5 mg prn and see if this will help resolve his tremor.

**ALAN D. PRINCE, M.D.**

ADP/mjs

SOUTHEAST ALABAMA MEDICAL CENTER
NEURODIAGNOSTIC LABORATORY                    13078

EEG REPORT

PATIENT: BLANKENSHIP, ROBERT                         ROOM: MI
SEX: M            DOB: 05/22/1947 AGE: 53Y    ACCOUNT: 1863039
REFERRING M.D.:                                      M/R: 54677
ATTENDING M.D.: ALAN D. PRINCE, M.D.
RECORD: 00-4604n
TECH:  AJ

EXAM DATE:  11/14/00

EXAM:  EEG WITH SPIKE DETECTION ANALYSIS

DESCRIPTION:

The EEG is done with standard 10/20 International System, electrode
placement and no sedation is a 16-channel recording using digital spike
analysis.  This is a 8 to 9 cycle moderate amplitude bilaterally

symmetrical alpha activity without asymmetries, paroxysmal bursts or
focal spike activity.  The digital spike analysis showed 2 spikes but
these were artifactual in nature.

IMPRESSION:

NORMAL EEG.


                         ALAN D. PRINCE, M.D.
                         NEUROLOGIST

\:  6516          DICTATED: 11/15/2000  ID: 000657003
/: mw          TRANSCRIBED: 11/16/2000  1145

cc: ALAN D. PRINCE, M.D. (06516)
>

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalography*
*Evoked Responses*
*Polysomnography*

## Dothan Neurodiagnostic Center, P.C.
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1703*

**FOLLOW-UP VISIT:**     November 16, 2000

**RE:**   Robert Blankenship

**REFERRED BY:**   Glenn Terry, M.D.

The patient continues to have a tremor on the right side of his body.   Whether or not this is Parkinson's is questioned.   We will put him on Mirapex .125 mg. three times a day and build him up to .25 mg. three times a day and then see him back.

_____
**ALAN D. PRINCE, M.D.**

ADP/kf

13078

SOUTHEAST ALABAMA MEDICAL CENTER
DOTHAN, ALABAMA
MILTON LENNICX, M.D. - GEORGE VEALE, M.D.
M. DOWNING, M.D. - S.N. TURNER, M.D. - H. HOLLOWAY, M.D.
W.L. KING, M.D. - W. BECKETT, JR., M.D. - R. SYKLAWER, M.D.
DAVID A. BRINK, M.D. - C. AHMED, M.D. - ERIC LUND, M.D.
JULIA ALEXANDER, M.D. - STEPHEN FERNANDEZ, M.D.
Radiologists

X - R A Y   R E P O R T

DATE/TIME TRANSCRIBED: 11/14/2000  1119
NAME:            BLANKENSHIP, ROBERT             ROOM#: MI
DOB:             05/22/1947                        AGE: 53Y
XRAY#/MR#:       54677                          ACCT#: 1863039
ATTENDING PHYSICIAN: ALAN D. PRINCE, M.D.        ORD#: 7315162
CPT CODE:        70551
CLINICAL INFORMATION:  MI/NE/TREMORS

EXAM REQUESTED:      MRI BRAIN WO

EXAM DATE:           11/14/2000                 PT TYPE: O
                    0743

COMPARISON:    None
LIMITATIONS:   None
HISTORY:       Tremors.
TECHNIQUE:     T1 sagittal; T1 FLAIR, T2, EP axial

FINDINGS:
Scattered non specific foci of increased signal in the periventricular
white matter.  The pattern suggests chronic small vessel ischemic
disease although demyelinating disease cannot be completely excluded.
No acute infarction or hemorrhage.  No masses or midline shift

IMPRESSION:     SCATTERED NON SPECIFIC FOCI OF INCREASED SIGNAL IN THE
                PERIVENTRICULAR WHITE MATTER IN A PATTERN SUGGESTING
                CHRONIC SMALL VESSEL ISCHEMIC DISEASE BUT DEMYELINATING
                DISEASE CANNOT BE COMPLETELY EXCLUDED.
                OTHERWISE, NEGATIVE.

                        _____
                        SIBLEY N. TURNER, MD
^1
^2
\:  ko       /:   248      DD: 11/14/2000    DT: 11/14/2000
             ID: 000655815     TD: 0843          FC:
cc: ALAN D. PRINCE, M.D. (06516)
    CHARGE COPY (99040)
    BILLING OFFICE (08885)
>

*Alan D. Prince, M.D.*
*Board Certified in Neurology*
*Board Certified in Clinical Polysomnography*

*Neurology*
*Electromyography*
*Electroencephalograph*
*Evoked Response*
*Polysomnography*

## *Dothan Neurodiagnostic Center, P.C.*
*Southeast Professional Park*
*1800 Fairview Ave., Suite 1*
*Dothan, Alabama 36301*
*(334) 793-1708*

**NEUROLOGICAL CONSULTATION:**   November 6, 2000

**RE:**  Robert Blankenship                                                        **DOTHAN**

**REFERRED BY:**    Glenn Terry, M.D.

Thank you for this consultation.

**HISTORY:**  The patient is a 53 year-old male who has had a tremor of the right leg for several months. This tremor is present when he uses his foot with a slight amount of elevation or if he is sitting with weight on the leg. He can stop this with positional change. It does not bother him when he walks. There is no pain, weakness, or numbness. His back does not bother him. There is no problem with the arms of left leg. There is no bladder or bowel dysfunction. At times he will feel a little swimmy in his head. He is a quite anxious and nervous individual. He has a brother who has had Parkinson's disease and he is fearful that he may have Parkinson's disease. He also has a sister who has an ambulatory gait problem with muscle weakness consistent with a mitochondrial myopathy.

**PAST MEDICAL HISTORY:** Arthritis.

**CURRENT MEDICATIONS:**  Celebrex, aspirin.

**ALLERGIES:**  CODEINE.

**PHYSICAL EXAMINATION:** The mental status shows profound anxiety. Cranial nerves II-XII unremarkable. Normal fields, fundi, and vision. Motor exam shows full strength, tone, and bulk throughout. Reflexes are 2+ bilaterally and symmetrical. Plantars downgoing. Coordination shows a mild intermittent tremor of the right leg that appears to be hysterical in nature. Sensory exam is normal.

**IMPRESSION:**    Tremor of the right leg. Whether or not he may actually have early hemi-Parkinson or a factitious tremor is questioned.

**NEUROLOGICAL CONSULTATION:**   November 6, 2000
**RE:**  Robert Blankenship
**Page Two**                                                                                    **DOTHAN**

**PLAN:**  At the current time, I will get MRI scan and EEG of the head to make sure there is no intercranial pathology.

**ALAN D. PRINCE, M.D.**
**ADP/kaf**



*Movement Disorders*
Vol. 15, No. 5, 2000, pp. 869–872
© 2000 Movement Disorder Society

# Pathologic Gambling in Parkinson's Disease: A Behavioral Manifestation of Pharmacologic Treatment?

*José Antonio Molina, MD, PhD, *María José Sáinz-Artiga, †Alicia Fraile, MD,
‡Félix Javier Jiménez-Jiménez, MD, PhD, *Clara Villanueva, ‡Miguel Ortí-Pareja, MD, PhD, and
*Félix Bermejo-P, MD, PhD

*Departments of *Neurology and †Psychiatry, Hospital Universitario Doce de Octubre, Madrid, Spain; and the ‡Department of
Medicine–Neurology, Hospital Príncipe de Asturias, Universidad de Alcalá, Alcalá de Henares, Madrid, Spain*

**Summary:** We describe 12 patients with Parkinson's disease and pathologic gambling. This association has apparently never been reported. The patients were selected from a Parkinson's disease unit of 250 patients. They met *Diagnostic and Statistical Manual of Mental Disorders*, 4th edition, criteria for pathologic gambling. All patients underwent a neurologic, psychiatric, and psychologic examination, specifically noting the presence or absence of psychopathology in the spectrum of impulse control disorder and the nature of the gambling. Ten patients started gambling after the onset of Parkinson's disease and treatment with levodopa. The pathologic behavior was exclusively present or was markedly increased in "on" periods in 11 patients. All patients had motor fluctuations at the time of the study. Slot machines were the preferred source of gambling for 10 patients, similar to the Spanish gambling population. That the gambling behavior appears more often in the "on" periods of motor fluctuations and that it begins after the onset of Parkinson's disease in most patients and worsens with levodopa therapy suggest that it could be related to the dopaminergic tone in patients with Parkinson's disease and motor fluctuations (that is, it could represent a behavioral manifestation of pharmacologic treatment). **Key Words:** Impulse control disorders—Movement disorders—Parkinson's disease—Pathologic gambling.

Pathologic gambling is classified as an impulse control disorder in *Diagnostic and Statistical Manual of Mental Disorders*, 4th edition (DSM-IV)[1] and ICD-10[2], and it is characterized by a failure to resist the impulse to gamble despite severe personal, family, or vocational consequences. The cause of pathologic gambling is unknown, but altered dopamine function has been shown to be involved.[3]

Parkinson's disease (PD) is characterized by a marked dopamine depletion in the nigrostriatal system[4] that is unphysiologically corrected with the treatment. Several cognitive and behavioral changes are associated with PD.[5] We describe 12 patients with PD who developed pathologic gambling, 10 in the course of their illness and 2 before the development of motor symptoms. To our knowledge, this association has not been described previously.

Received December 15, 1999. Accepted March 15, 2000.
Address correspondence and reprint requests to Felix Javier Jimenez-Jimenez, MD, PhD, C/ Corregidor Jose de Pasamont 24, 3° D, E-8030 Madrid, Spain.

## PATIENTS AND METHODS

Twelve patients with PD according to clinical criteria[6] were included in the study. All patients met DSM-IV criteria for pathologic gambling. They were evaluated with the Unified Parkinson's Disease Rating Scale (UPDRS)[7] and Hoehn and Yahr staging.[8] All patients were examined by a neurologist and interviewed by a psychiatrist. DSM-IV criteria were applied. They were specifically asked not only about the nature of gambling (that is, age of onset, consequences, and preferred type) but also about depression, anxiety, substance abuse, and psychopathology in the spectrum of impulse control disorders, such as kleptomania, tricotillomania, binge eating, compulsive shopping, and hypersexuality. The presence of compulsions, defined as repetitive and seemingly purposeful behaviors performed in a stereotypical way (compulsion rituals) to relieve the tension, was also noted.[9]

We studied 12 patients with PD and pathologic gambling. The clinical features are summarized in Table 1. There were 11 men and 1 woman. The mean ± standard



PLAINTIFF'S EXHIBIT

B

870    *J. A. MOLINA ET AL.*

TABLE 1. *Clinical features of 12 patients with Parkinson's disease and pathologic gambling*

| | Case no. 1 | Case no. 2 | Case no. 3 | Case no. 4 | Case no. 5 | Case no. 6 | Case no. 7 | Case no. 8 | Case no. 9 | Case no. 10 | Case no. 11 | Case no. 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sex (M/F) | F | M | M | M | M | M | M | M | M | M | M | M |
| Age (yrs) | 44 | 42 | 66 | 68 | 65 | 52 | 49 | 50 | 63 | 65 | 53 | 49 |
| Age of onset PD (yrs) | 36 | 32 | 54 | 66 | 59 | 44 | 41 | 39 | 48 | 57 | 10 | 41 |
| Age at onset gambling | 3 | 38 | 69 | 2 | 60 | 3 | 37 | 40 | 4 | 57 | 10 | 15 |
| Hoehn & Yahr (off) | | | | | 2 | 3 | | | | 1 | 4 | 3 |
| UPDRS (off) | 41 | 50 | 37 | 32 | 18 | 3 | 36 | 44 | 52 | 32 | | 35 |
| Onset after levodopa | Yes | Yes | On | Yes | Yes | No | No | Yes | Yes | Yes | Yes | No |
| Gambling in | On > off | On > off | On | Unknown | On > None | On > off | On | On | On | On | On | On |
| Psychiatric history (before PD) | None | Alcohol abuse | | Pathologic jealousy | | Alcohol abuse | Alcohol abuse | Alcohol dependence | None | None | Anxiety disorder | Alcohol dependence |
| Psychiatric symptoms (after PD) | MD | Compulsions | Compulsions | MD | Binge-eating | MD Alcohol dependence | Compulsion | None | MD | None | MD | Anxiety disorder |
| Improved with | Antidepressant therapy | Subthalamic stimulation | Stop Sinemet Retard | Psychotherapy | Family control | Self-prohibition | Family control | Subthalamic stimulation | Family control | Adjustment of treatment | Family control | Controlled gambling |

UPDRS, Unified Parkinson's Disease Rating Scale; PD, Parkinson's disease; MD, major depression.

deviation (SD) age, age at onset of PD, duration of PD, and age at onset of gambling were, respectively, $55.5 \pm 8.9$, $43.4 \pm 9.4$, $12.1 \pm 5.6$, and $46.9 \pm 11.0$ years. All patients had motor fluctuations.

Ten patients began gambling after the onset of PD, and nine of them began after starting levodopa therapy. The other two patients, who were gamblers before the onset of PD, and one who started levodopa therapy after gambling, reported that this behavior increased dramatically after the onset of PD symptoms and levodopa therapy. Eight patients gambled exclusively in the "on" periods; they clearly stated that the idea of gambling did not even cross their minds when they were "off." Another three patients gambled predominantly in "on" periods, but they also gambled in "off" periods.

Slot machines were the unique source of gambling for most (10 of 12) patients. In two patients, casinos, bingo, national lotto, and pools were also involved. The preference for slot machines is similar to that obtained from Spanish gambling samples.[10] In Spain, slot machines can be found in almost every bar or cafe all over the country with long opening hours (from 9 AM to midnight in most cases).

Other striking data include the high frequency of alcohol abuse of dependence among our patients (5 of 12) and the development of compulsions of orderliness in three patients who had neither a previous history of obsessive-compulsive disorder nor obsessive personality traits before the onset of PD. These compulsions appeared exclusively in "on" periods.

## REPRESENTATIVE PATIENTS

### Patient No. 2

A 42-year-old man had a 10-year history of PD and levodopa therapy. Before the onset of PD, he met criteria for alcohol abuse disorder, but he stopped drinking after the diagnosis. Family history was negative for psychiatric disorders. He started gambling at age 38, that is, 6 years after the onset of PD. At that time, he had complex motor fluctuations. Gambling occurred mainly in "on" periods, but it also occurred in "off" periods. Although gambling led him to significant debts and serious marital discord, he regretted these consequences but could not stop. At age 42, the patient underwent bilateral subthalamic stimulation. Parkinsonian symptoms, including motor fluctuations, improved markedly, as did the pathologic behavior, which came to an end shortly after surgery. The dose of levodopa was reduced by one half. He related the improvement of gambling with the improvement in parkinsonian symptoms.

### Patient No. 6

A 52-year-old man had a 14-year history of PD, predominantly rigid-akinetic, although the diagnosis of this disease was not made until age 44. He then started therapy with amantadine, selegiline, and pergolide, and levodopa was added at age 46. Before the onset of PD, he met criteria for alcohol abuse disorder and major depression. His mother also had a history of major depression. He started gambling at age 44, coinciding with the diagnosis of PD and 2 years before starting levodopa, but his gambling behavior increased markedly when levodopa was started. At age 48, he began to experience "wearing off" motor fluctuations, "off"-period dystonia, and panic attacks. Since then, gambling occurred mainly in "on" periods, but it also occurred in "off" periods. This behavior improved by self-prohibition.

### DISCUSSION

Pathologic gambling, as an impulse control disorder, has been related with alcoholism and other substance abuse disorders.[11] It has been associated with several neurotransmitter disturbances, such as increased cerebrospinal fluid levels of dopamine, with a decrease of the metabolites 3,4-dihydroxyphenylacetic acid and homovanilic acid, and increased levels of norepinephrine and 3-methoxy-4-hydroxyphenylglycol,[3,12] but cerebrospinal fluid levels of 5-hydroxyindoleacetic acid are normal.[3,12] Low platelet monoamine oxidase activity has also been reported,[13] and it has been suggested that serotonin may play a role in the genesis of pathologic gambling.[14]

The neurochemistry and neuropharmacology of PD are well known and show a marked reduction in the concentration of dopamine and homovanillic acid in the caudate, putamen, substantia nigra, and other dopaminergic systems; increased cholinergic activity in the striatum, possibly as a consequence of the decreased inhibitory dopaminergic tone; decreased norepinephrine and 3-methoxy-4-hydroxyphenylglycol levels in the locus coeruleus and in some cortical and subcortical areas; and decreased serotonin and 5-hydroxyindoleacetic acid levels in some raphe nuclei and in several regions of the forebrain, including the basal ganglia, hypothalamus, hippocampus and frontal cortex.[15,16]

There is a good relationship between the dopaminergic system and brain reward system so that dopamine system dysfunction might result in abnormal drug and alcohol seeking behavior,[17,18] suggesting that dopamine receptor genes could be involved in alcoholism, gambling, and other addictive behaviors.[19,20] A strong correlation between the Taq A1 variant of the *DRD2* gene and gambling has been reported.[21] In addition, $D_2$ receptor antagonists increased alcohol intake in alcohol-preferring

rats, whereas $D_2$ receptor agonists reduced it.[22] More recently, an association between *DRD4* gene polymorphism and pathologic gambling has been reported.[23] Thus, the possible existence of a relationship between PD, in which there is a severe loss of presynaptic dopaminergic neurons expressing $D_2$ receptors, and pathologic gambling is reasonable.

A number of features of patients with PD and pathologic gambling are remarkable. The age at onset of PD was relatively young, so most patients had advanced PD and, unsurprisingly, motor fluctuations at the time of examination. Pathologic gambling seemed to be related to levodopa therapy, because this behavior appeared for the first time (in 10 patients) or increased markedly (in two patients) after starting this therapy, and it was present exclusively or more frequently in the "on" periods of motor fluctuations. Although pathologic gambling is not uncommonly seen in manic states, none of our patients met DSM-IV criteria for manic episodes, as the diagnosis of pathologic gambling requires.[1] The occurrence of euphoria and manic-like states has been well described as a phenomenon associated with "on" periods in patients with PD and fluctuations. That the gambling behavior appeared almost exclusively in "on" periods suggests that it could also be, as manic-like states are, related to an increase in the dopaminergic tone. In addition, it is of note that 5 of 12 patients with PD and gambling had premorbid alcohol abuse or dependence. This is surprising because patients with PD usually have low premorbid trends toward alcohol consumption.[24,25]

Because this work is only descriptive and we have not conducted a case-control study, no data of prevalence can be obtained. However, the proportion of gamblers in our sample (12 of 250 patients in a Parkinson's disease unit) seems clearly larger than the estimated prevalence for the Spanish general population (1.5–1.7%).[10] We conclude that pathologic gambling may be a behavioral manifestation of the pharmacologic treatment of PD and could be related to the "on" periods of motor fluctuations.

Acknowledgments: This study has been partially financed by the grant 08.5/005/97 from Comunidad de Madrid and Fundacion Neurociencias y Envejecimiento.

### REFERENCES

1. *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed Washington: American Psychiatric Association, 1994.
2. *International Classification of Mental and Behavioural Disorders*, 10th ed. Geneva: World Health Organization, 1992.
3. Bergh C, Eklund T, Sildersten P, Nordin C. Altered dopamine function in pathological gambling. *Psychol Med* 1997;27:473–475.

4. Lloyd KG, Davidson L, Hornykiewicz O. The neurochemistry of Parkinson's disease: effects of L-dopa therapy. *J Pharmacol Exp Ther* 1975;195:453–464
5. Foti DJ, Cummings JL. Neurobehavioral aspects of movements disorders. In: Watts RL, Koller WC, eds. *Movement Disorders. Neurologic Principles and Practice.* New York, NY: McGraw-Hill. 1997:15–30.
6. Hughes AJ, Ben-Shlomo SE, Daniels SE, Lees AJ. What features improve the accuracy of clinical diagnosis in Parkinson's disease? *Neurology* 1992;42:1142–1146
7. Hoehn MM, Yahr MD. Parkinsonism: onset, progression and mortality. *Neurology* 1967;17:427–442.
8. Fahn S, Elton RL, and members of the UPDRS Development Committee. Unified Parkinson's Disease Rating Scale. In: Fahn S, Marsden CD, Goldstein M, Calne DB, eds. *Recent Developments in Parkinson's Disease*, vol 11. Florham Park, NJ: MacMillan, 1987:153–163
9. Gelder M, Gath D, Mayou R, et al. Signs and symptoms of a mental disorder. In: Gelder M, Gath D, Mayou R, Cowen P, eds. *Oxford Textbook of Psychiatry*, 3rd ed. Oxford: Oxford University Press, 1996:1–24.
10. Becona E. Pathological gambling in Spanish children and adolescents: an emerging problem. *Psychol Rep* 1997;81:275–287.
11. MacElroy SL, Hudson JI, Harrison GP, et al. The DSM-III-R impulse control disorders not elsewhere classified: clinical characteristics and relationship to other psychiatric disorders. *Am J Psychiatry* 1992;149:318–327.
12. Roy A, Adinoff B, Roehrich L, et al. Pathological gambling. A psychobiological study. *Arch Gen Psychiatry* 1988;45:369–373.
13. Carrasco JL, Sáiz-Ruiz J, Hollander E, et al. Low platelet monoamine oxidase activity in pathological gambling. *Acta Psychiatr Scand* 1994;90:427–431.
14. DeCaria CM, Begaz T, Hollander E. Serotoninergic and noradrenergic function in pathological gambling. *CNS Spectrums* 1998;3:38–47.
15. Agid Y, Ruberg M, Raisman R, et al. The biochemistry of Parkinson's disease. In: Stern GM, ed. *Parkinson's Disease.* London: Chapman and Hall Medical, 1990:99–125.
16. Pascual-Gómez J. Neuroquímica de los trastornos del movimiento. In: Jiménez-Jiménez FJ, Luquin MR, Molina JA, eds. *Tratado de los Trastornos del Movimiento.* Madrid: IM&C, 1998:83–100
17. Nakajima S. Subtypes of dopamine receptors involved in the mechanism of reinforcement. *Neurosci Biobehav Rev* 1989;13:123–128.
18. Blum K, Sheridan PJ, Wood RC, et al. The D2 dopamine receptor gene as a determinant of reward deficiency syndrome. *J R Soc Med* 1996;89:369–400.
19. Comings DE, Gade R, Wu S, et al. Studies of the potential role of dopamine D1 receptor gene in addictive behaviors. *Mol Psychiatry* 1997;2:44–56.
20. Blum K, Braverman ER, Wu S, et al. Association of polymorphisms of dopamine receptor gene (DRD2), and dopamine transporter (DAT1) genes with schizoid/avoidant behaviors (SAB). *Mol Psychiatry* 1997;2:239–246.
21. Comings DE, Rosenthal RJ, Lesieur HR, et al. A study of the dopamine D2 receptor gene in pathological gambling. *Pharmacogenetics* 1996;6:223–234
22. Dyr W, McBride WJ, Lummeng L, et al. Effects of D1 and D2 dopamine receptor agents on ethanol consumption in the high-alcohol-drinking (HAD) line of rats. *Alcohol* 1993;10:207–121
23. Perez de Castro I, Ibanez A, Torres P, et al. Genetic association study between pathological gambling and a functional DNA polymorphism at the D4 receptor gene. *Pharmacogenetics* 1997;7:345–348.
24. Jiménez-Jiménez FJ, Mateo D, Giménez-Roldán S. Premorbid smoking, alcohol-consumption and coffee-drinking habits in Parkinson's disease: a case-control study. *Mov Disord* 1992;7:339–344.
25. Morano A, Jiménez-Jiménez FJ, Molina JA, Antolín MA. Risk-factors for Parkinson's disease: a case-control study in the province of Cáceres, Spain. *Acta Neurol Scand* 1994;89:164–170.

Is Gambling a Risk for Patients With Parkinson's Disease?　　　　Page 1 of 3

Case 2:06-cv-00648-MHT-VPM　　Document 24-4　　Filed 08/04/2006　　Page 1 of 3



# NEUROLOGY REVIEWS.COM

### Clinical trends and news in neurology

**Vol. 11, No. 9**　　　　　　　　　　　　　　**September 2003**

Return to table of contents

**About *Neurology Reviews***

**Featured Issues**

**Editorial Board**

**Publishing Staff**

**Advertising Information**

**Subscription Information**

**CME Courses**

**Career Center**

Search:

Sort by:
Date ▾　　Search

# IS GAMBLING A RISK FOR PATIENTS WITH PARKINSON'S DISEASE?

Patients with Parkinson's disease who take certain dopamine agonists may have an increased risk of compulsive gambling. According to Mark A. Stacy, MD, "The risk of gambling problems in a patient with Parkinson's disease is very small. However, it may be appropriate for doctors to inform patients of this potential risk," particularly if their patients have a documented history of depression or anxiety disorder and are taking high dosages of a dopamine agonist, he said.

Dr. Stacy is the Medical Director of the Parkinson's Disease and Movement Disorders Center at Duke University Medical Center in Durham, North Carolina. He reported his team's findings in the August 12 issue of *Neurology*.

## HIGH-STAKES DOPAMINE AGONISTS?

Dr. Stacy and colleagues analyzed the data of 1,884 patients with Parkinson's disease who were observed during a one-year period at the Muhammad Ali Parkinson Research Center in Phoenix. A total of 529 patients were treated with pramipexole, 421 with ropinirole, and 331 with pergolide. The researchers found that nine patients (seven men and two women) had developed pathologic gambling problems. These



PLAINTIFF'S EXHIBIT

*C*

tabbies

Is Gambling a Risk for Patients With Parkinson's Disease?    Page 2 of 3

Case 2:06-cv-00648-MHT-VPM    Document 24-4    Filed 08/04/2006    Page 2 of 3

nine patients were taking both levodopa and a dopamine agonist. Eight of the patients took pramipexole as their dopamine agonist, and one patient was taking pergolide. None of the other patients taking ropinirole or only levodopa were identified as having a gambling problem.

The majority of the patients were in advanced stages of Parkinson's disease, according to Dr. Stacy. On average, they had been diagnosed with the disease more than 11 years before their gambling problems began. The patients were taking pramipexole or pergolide anywhere from six to 64 months before the onset of gambling, and seven patients started gambling within one month of an increased dosage of the dopamine agonist. None had a history of gambling.

## A RARE BUT SERIOUS PROBLEM

Some patients developed serious financial problems as a result of their gambling; two had losses of more than $60,000 each. For most patients, the gambling was controlled or stopped under a new treatment plan. For eight patients, the dopamine agonist was switched to lower comparative dosages of ropinirole, and the remaining patient received a decreased dosage of pramipexole and an increased dosage of levodopa. Two of the patients who switched to ropinirole also required additional psychiatric treatment; one withdrew from the therapy program and later committed suicide after a relapse of her gambling behavior when her caregiver was out of town.

For those patients who have already developed a gambling problem, Dr. Stacy offered some practical advice for their physicians: The first step is to "reduce their dopamine agonist dosage or change to another dopamine agonist," he told NEUROLOGY REVIEWS. "Then, counsel families to take [control of] credit cards and other types of assets. Offer therapy for depression, refer to counseling, and provide Gamblers Anonymous information."

Overall, the incidence of pathologic gambling in patients with Parkinson's disease regardless of therapy was .05%. The incidence was 1.5% in the pramipexole group and .3% in the pergolide group. Dr. Stacy noted that the rate of pathologic gambling in the general population ranges from .3% to 1.3%, and therefore, the 1.5% incidence in the pramipexole therapy group "may not be unexpected." In addition, he said, the availability of casinos in a retirement and vacation setting such as Arizona may have contributed to

the development of this behavior in these patients.

"However, this clinical observation suggests that higher dosages of dopamine agonists may be a catalyst to bringing out this destructive behavior," said Dr. Stacy. In addition, he reported, "These subjects illustrate that excessive gambling may occur in advancing Parkinson's disease, and in this series, appeared to begin with an increase in [dopamine agonist] therapy and to resolve with dosage reduction. Given the complex world of the patient with Parkinson's disease—dopaminergic therapy, chronic illness, and casino availability—it may be appropriate to inform subjects of a potential risk of this behavior."

Since his team's findings were published, "A number of people with similar problems have contacted me," said Dr. Stacy. He added that he is considering conducting "a more formal—and more scientific—study of this issue."

**NR**

**—Colby Stong**

**Suggested Reading**
Driver-Dunckley E, Samanta J, Stacy M. Pathological gambling associated with dopamine agonist therapy in Parkinson's disease. *Neurology.* 2003;61:422-423.
Molina JA, Sainz-Artiga MJ, Fraile A, et al. Pathologic gambling in Parkinson's disease: a behavioral manifestation of pharmacologic treatment? *Mov Disord.* 2000;15:869-872.

Return to table of contents

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT BLANKENSHIP,         )
                                 )

     Plaintiff,           )
                                 )

vs.                             )
                               )   CIVIL ACTION NO. 2:06cv-648

PFIZER, INC., BOEHRINGER     )
INGELHEIM PHARMACEUTICALS, )
INC.; DAVID ROHLING; KMART OF )
MICHIGAN, INC.; ART REDDING;  )
KELLI STRANGE, et al.,         )
                               )

     Defendants.       )

STATE OF ALABAMA     )

COUNTY OF BARBOUR   )

## AFFIDAVIT OF ROBERT BLANKENSHIP

My name is Robert Blankenship and I am a resident of the State of Alabama. I am a farmer and have worked hard all of my life to be successful growing peanuts. I had saved a significant amount of money and intended to retire on my life savings. Before taking the drug Mirapex I had no history of compulsive gambling.

In or about September, 2000 I started developing a slight shaking in my right leg. I went to see Dr. Alan Prince for this condition. Dr. Prince prescribed a drug known as Mirapex for me. Within several months after taking the drug Mirapex I developed an interest in gambling. I had never had that interest before. While taking Mirapex, I could not control the urge to gamble. I lost

1

PLAINTIFF'S
EXHIBIT
D

significant money to gambling in 2003, 2004 and 2005. I could not control the urge to risk my savings. I did not have any understanding of why my behavior had changed. However, in 2006 I was notified by a friend that there had been some publicity on compulsive gambling and its association with the use of Mirapex. I found that when I reduced my dosage of Mirapex the urge to gamble diminished appreciably. I discussed this with my doctor and he removed me from the drug. After stopping Mirapex, I lost the urge to gamble.

If I had been told that this drug was associated with compulsive gambling I would have been able to avoid losing my life savings.

This affidavit is based upon my personal knowledge and is true and accurate to the best of my knowledge and belief.

_____
ROBERT BLANKENSHIP

SWORN to and SUBSCRIBED before me this 4ᵗʰ day of _August_, 2006.

_____
Notary Public
My Commission Expires: _10-23-06_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| ROBERT BLANKENSHIP,      ) | |
|         ) | |
|     Plaintiff,      ) | |
|         ) | |
| vs.      ) | CIVIL ACTION NO. 2:06cv-648 |
|         ) | |
| PFIZER, INC., BOEHRINGER      ) | |
| INGELHEIM PHARMACEUTICALS,      ) | |
| INC.; DAVID ROHLING; KMART OF      ) | |
| MICHIGAN, INC.; ART REDDING;      ) | |
| KELLI STRANGE, et al.,      ) | |
|         ) | |
|     Defendants.      ) | |

STATE OF ALABAMA    )

COUNTY OF HOUSTON  )

### <u>AFFIDAVIT OF DR. ALAN PRINCE</u>

My name is Alan Prince. I am a medical doctor specializing in the field of neurology. My practice is located in Dothan, Alabama. I am the treating physician of Robert Blankenship. In November of 2000, Mr. Blankenship was diagnosed as suffering from a tremor of the right leg that was thought possibly to be early stage of Parkinson's Disease. I prescribed the drug Mirapex. Mirapex is designed to control the tremors. Mr. Blankenship was started at .125 mg three times a day and later was moved to 0.25 mg three times a day. Mr. Blankenship's dose was later moved to four times a day.

Mr. Blankenship was maintained on the drug Mirapex up until May 1, 2006. During the entire time that Mr. Blankenship was taking the drug, I would

1



periodically meet with drug representatives who represented the manufacturer of Mirapex. I was not aware of any association between Mirapex and compulsive behavior including compulsive gambling. Shortly before taking Mr. Blankenship off of Mirapex, which he had been on for approximately five and one-half years, one of the Mirapex detailers told me that there was an association between compulsive gambling and the use of the drug Mirapex. Soon thereafter, I discovered Mr. Blankenship to have been engaged in compulsive gambling and I removed him from the drug. If I had known earlier that there was an association between the use of the drug Mirapex and compulsive behavior, I would have discussed these issues with Robert Blankenship.

This affidavit is based upon my personal knowledge and is true and accurate to the best of my knowledge and belief.

_____
DR. ALAN PRINCE

SWORN to and SUBSCRIBED before me this __3__ day of __August__ 2006.

_____
Notary Public
My Commission Expires: _____ My Commission Expires May 8, 2007

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80514-CIV-HURLEY

EVELYN IRVIN, as personal representative of
the Estate of RICHARD IRVIN, JR.,
    plaintiff,

vs.

MERCK & CO., INC. , JOE GHEZZI and
CHRIS METROPULOS,
    defendants.

_____/

FILED by _____ D.C.

OCT - 9 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### ORDER REMANDING CASE TO FIFTEENTH JUDICIAL CIRCUIT
### IN AND FOR PALM BEACH COUNTY, FLORIDA
### and CLOSING FILE

THIS CAUSE is before the court upon plaintiff's motion for remand for lack of subject

matter jurisdiction [DE# 6], the defendants' response in opposition [DE#17] and the plaintiff's

reply [DE#19]. For reasons stated below, the court will grant the motion and remand this case

to the state court in which it was originally filed.

### I. BACKGROUND

Plaintiff originally filed suit against defendants in state court on May 14, 2003 in the

Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging

state common law tort claims arising out of the wrongful death of plaintiff's decedent in

consequence of his ingestion of the prescription drug Vioxx, a product manufactured and

marketed by defendant Merck & Co., Inc. According to the complaint, Joe Ghezzi and Chris

Metropulos, both Florida residents, were sales representatives or sales managers employed by

1

PLAINTIFF'S
EXHIBIT

E

Merck to promote, distribute and sell this prescription drug to physicians in the State of Florida, including the plaintiff's decedent's physician.

The defendant Merck filed a notice of removal in this court on June 6, 2003 [DE#1] asserting diversity jurisdiction under 28 U.S.C. §1332 on theory that the two non-diverse individual defendants, Ghozzi and Metropulos, were fraudulently joined to defeat the jurisdiction of this court that would otherwise exist.

## II. DISCUSSION

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity in three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Triggs v John Crump Toyota, Inc*, 154 F 3d 1284, 1287 (11th Cir 1998)

The burden of establishing fraudulent joinder is a heavy one. The determination must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavit and deposition transcripts submitted by the parties, with all factual allegations construed in the light most favorable to the plaintiff, with any uncertainties about the applicable law resolved in the plaintiff's favor. *Pacheco de Perez v AT & T Co*, 139 F 3d 1368 (11th Cir. 1998). If even a colorable claim against a non-diverse defendant is stated, joinder is proper and the case should be remanded to state court. *Id.*

2

In this case, plaintiff has asserted facts which state potential causes of action against the individual Florida defendants, having specifically alleged that these defendants were personally involved in the marketing of the prescription drug Vioxx to Florida physicians, including the plaintiff's decedent's physician. In opposing remand, defendants have filed affidavits of the individual defendants who both aver that their sales territory encompasses Broward and Palm Beach County, Florida, but not St. John's County. "Presuming" that plaintiff's decedent and relevant treating physician resided and worked in St. John's County-- the alleged county of the plaintiff's residence-- from here the defendant urges the inference that there can be no causal connection between the marketing activities of these defendants and the alleged injury to plaintiff's decedent; thus, defendants contends that plaintiff can state no viable cause of action against the non-diverse defendants, and that they are therefore fraudulently joined.

It is not appropriate for the court, in passing on a motion for remand, to make a fact finding on causation drawn from an inference upon an inference. Reminded that the court is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law, *Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir 1997), the court concludes that the defendants in this case have failed to carry their burden of establishing that plaintiff can state no colorable claim against the non-diverse defendants who are therefore not fraudulently joined. Because their presence as party defendants defeats complete diversity among the parties, this court does not have subject matter jurisdiction to hear this case.

3

It is accordingly ORDERED and ADJUDGED :

1.   Because the court lacks subject matter jurisdiction over this case, this action is REMANDED to the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

2.   The clerk of the court shall CLOSE this case, DENY any pending motions as MOOT and send a certified copy of this order to the Clerk of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida pursuant to 28 U.S.C §1447.

DONE and SIGNED in Chambers in West Palm Beach, Florida this ___ day of October, 2003.

<div style="text-align:right">

Daniel T K Hurley
United States District Judge

</div>

copies to:

Philip L. Valente, Jr., Esq.
Angelo Patacca, Jr., Esq.
David Miceli, Esq
Sharon Kegerreis, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80012-C.V.-HURLEY

EVELYN IRVIN, as Personal Representative of the
Estate of RICHARD IRVIN, JR.,
　　　　plaintiff,
vs.

MERCK & CO., INC., JOE GHEZZI, and
CHRIS METROPULOS,
　　　　defendants.
_____/



### ORDER DIRECTING REMAND & CLOSING FILE

THIS CAUSE is before the court *sua sponte* for review of its subject matter jurisdiction for the second time on the successive notice of removal filed by defendant Merck & Co., Inc. For reasons discussed below, the court shall again remand the case, this time with taxation of attorney's fees and costs.

### I. INTRODUCTION

Plaintiff originally filed this suit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, on May 14, 2003, asserting state law claims arising out of the wrongful death of plaintiff's decedent in consequence of his ingestion of the prescription drug Vioxx, a pharmaceutical product manufactured and marketed by defendant Merck & Co.

On June 6, 2003, defendant Merck filed its first notice of removal, asserting the diversity jurisdiction of this court under 28 U.S.C. §1332. On October 7, 2003, the court remanded the case to state court for lack of subject matter jurisdiction due to defendant's failure to sustain its burden of establishing the claimed fraudulent joinder of defendants Joe Ghezzi and Chris

Metropulos.

On January 7, 2005, Merck filed its second notice of removal in this court. The sole basis for its renewed removal effort is that discovery in the state court proceedings has now proven that defendants Ghezzi and Metropulos are not the correct individuals involved in marketing the Vioxx product at issue in this case. According to Merck, the non-involvement of these individuals was conclusively established at the December 7, 2004 deposition of Dr. Christopher Schirmer, the prescribing physician. Thus, defendant does not assert a new basis for removal, but rather, argues that discovery in the state court proceeding has revealed additional facts which buttress its original contention regarding the fraudulent joinder of defendants Ghezzi and Metropulos.

## II. DISCUSSION

28 U.S.C. § 1446(b), provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or procedure is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

This section, which allows a defendant to remove a previously remanded case where subsequent pleadings or events reveal a new and different basis for removal, *see e.g.*

2

*Browning v Navarro*, 743 F.2d 1069, 1079 n. 29 (5th Cir. 1984), must be read in harmony with 28 U.S.C. §1447(d), which provides that a remand order is "not reviewable on appeal or otherwise." Section 1447 (d) thus not only forecloses appellate review, but also bars reconsideration by the district court of its own remand order based on lack of subject matter jurisdiction or defects in the removal procedure. *See First Union National Bank v Hall*, 123 F.3d 1374 (11th Cir. 1997), *cert. dism'd,* 523 U.S.1135 (1998); *Harris v Blue Cross/Blue Shield of Ala., Inc.*, 951 F.2d 325, 330 (11th Cir 1992).

A party may not circumvent the §1447(d) prohibition on motions for reconsideration by filing a second notice of removal which simply supplies additional evidentiary support in an effort to demonstrate the inaccuracy of the previous remand order. Thus, in this case the newly acquired deposition testimony of Dr. Schirmer is not a legitimate basis upon which the court may reassess its subject matter jurisdiction. *See e.g. Roughton v Warner-Lambert*, 2001 WL 910408 (M.D. Ala. 2001); *Nicholson v National Accounts, Inc.* 106 F. Supp.2d 1269 (S.D. Ala. 2000).

Having previously remanded this case for lack of subject matter jurisdiction pursuant to §1447(c), the court is now powerless under §1447(d) to reconsider that order and reevaluate the accuracy of its initial decision to remand. *See generally Whittley v Burlington Northern & Santa Fe R.R. Co.*, 2005 WL 221467 (8th Cir. 2005).

Accordingly, it is **ORDERED AND ADJUDGED:**

1. This case is **REMANDED** for lack of subject matter jurisdiction to the Circuit Court of Palm Beach County, State of Florida, pursuant to 28 U.S.C. §1447(c).

2. It is further ordered that plaintiff shall recover from defendant Merck all "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal" pursuant to 28

3

U.S.C. 1447(c). *See e.g. Moates v Cargill*, 2001 WL 910410 (M.D. Ala. 2001). Plaintiff shall submit her duly supported petition for fees and costs within **TEN (10) DAYS** from the date of this order.

3. The court shall retain jurisdiction only for the limited purpose of assessing the attorney fee and cost award made pursuant to 28 U.S.C. §1447(c).

4. The clerk is directed to **CLOSE** this file, **DENY** any pending motions as **MOOT**, and send a certified copy of this order to the Clerk of the Fifteenth Judicial Circuit in and for Palm Beach County pursuant to 28 U.S.C. §1447.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this _14th_ day of February, 2005.

Daniel T. K. Hurley
United States District Judge

copies to:

Angelo Patacca, Esq.
Phillip L. Valente, Jr.
Patricia Lowry, Esq.
Sharon Kegerreis, Esq.

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

GLENDORA TURNER, individ-        )
ually and as Administratrix      )
of the Estate of                 )
William Lee Turner,              )
                                 )
        Plaintiff,               )
                                 )        CIVIL ACTION NO.
        v.                       )        2:05cv702-T
                                 )
MERCK & CO., INC., a             )
foreign corporation,             )
et al.,                          )
                                 )
        Defendants.              )

ORDER

        This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiff's motion to remand.    The court agrees with

plaintiff that this case should be remanded to state court.

The court agrees with plaintiff that there has been neither

fraudulent joinder, Coker v. Amoco Oil Co., 709 F.2d 1433,

1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883



PLAINTIFF'S
EXHIBIT
G

F.2d 1553, 1561 (11th Cir. 1989), nor fraudulent misjoinder,

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360

(11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of

the court that plaintiff's motion to remand (Doc. no. 11)

is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this

cause is remanded to the Circuit Court of Bullock County,

Alabama.

It is further ORDERED that the motion to stay (Doc. No.

5) is denied and the motion to dismiss (Doc. No. 3) is left

for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate

steps to effect the remand.

DONE, this the 21st day of September, 2005.


___/s/ Myron H. Thompson___
UNITED STATES DISTRICT JUDGE

FROM:305-523-5226 USDC-FLS   ??: 9-1-904-632-0549    PAGE: 1 OF 5    CONTROL: #B85646-CV



# United States District Court
## Southern District of Florida

---

**NOTICE:** Only certain Judges are E-NOTICING, so continue to provide envelopes for cases before non-participating Judges. Visit the court's website: www.flsd.uscourts.gov or call the Help Line (305) 523-5212 for an updated listing of participating Judges

---

### Notice of Orders or Judgments

**Date:**     02/16/05

**To:**     Angelo Patacca (aty)
            233 East Bay Street
            Suite 804 Blackstone Bldg
            Jacksonville, FL  32202

**Re: Case Number:**     9:05-cv-80012     **Document Number:**     9

NOTE: If you are no longer an attorney in this case, please disregard this notice.
Be sure to promptly notify the Clerk of Court in writing of any changes to your name, address, law firm, or fax number. This notification should be sent for each of your active cases.
If this facsimile cannot be delivered as addressed, or you have ANY problems with this fax transmission, please call the Help Line (305) 523-5212 and the problem will be rectified. Since this transmission originated from the Clerk's Office, JUDGES CHAMBERS SHOULD NOT BE CONTACTED.

**Number of pages including cover sheet:**     5

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JAMES O. STRUTHERS, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:06cv127-MHT |
| | ) | |
| MERCK & CO., INC., a | ) | |
| foreign Corporation, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C. §§ 1332, 1441, is now before the court on

plaintiff's motion to remand.  The court agrees with

plaintiff that this case should be remanded to state

court.  First, there has not been <u>fraudulent joinder</u> of

any resident defendant (that is, plaintiff has colorable

claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil</u>

<u>Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v.</u>

Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any

resident defendant (that is, plaintiff has reasonably

joined such a defendant with other defendants pursuant to

Rule 20 of the Federal Rules of Civil Procedure), see

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360

(11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE

of the court that plaintiff's motion to remand (doc. no.

13) is granted and that, pursuant to 28

U.S.C. § 1447(c), this cause is remanded to the Circuit

Court of Montgomery County, Alabama, for want of

subject-matter jurisdiction.

It is further ORDERED that the motion to stay (Doc.

No. 6) and the motion to expedite (Doc. No. 18) are

denied.

It is further ORDERED that all other outstanding

motions are left for disposition by the state court

after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 13th day of March, 2006.


                        /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


| | | |
|---|---|---|
| ROSEMARY LEVERETT, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:06cv128-MHT |
| | ) | |
| MERCK & CO., INC., etc., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now before the court on plaintiff's motion to remand. The court agrees with plaintiff that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiff has colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v.</u>

Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).
Second, there has not been fraudulent misjoinder of any
resident defendant (that is, plaintiff has reasonably
joined such a defendant with other defendants pursuant to
Rule 20 of the Federal Rules of Civil Procedure), see
Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360
(11th Cir. 1996).

    Accordingly, it is the ORDER, JUDGMENT, and DECREE
of the court that plaintiff's motion to remand (doc. no.
1) is granted and that, pursuant to 28 U.S.C. § 1447(c),
this cause is remanded to the Circuit Court of
Tallapoosa County, Alabama, for want of subject-matter
jurisdiction.

    It is further ORDERED that the motion to stay (Doc.
No. 9) is denied.

    It is further ORDERED that all other outstanding
motions are left for disposition by the state court
after remand.

2

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 15th day of March, 2006.


        /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE

FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

MON 22  '00 10: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

BARRY PACE and
DIANNE W. PACE,

     Plaintiffs,

v.                                                                CV-OO-J-3046-NW

PARKE DAVIS, a division of
the WARNER-LAMBERT
COMPANY; WARNER-
LAMBERT COMPANY; and
RALPH AQUADRO, M.D.,



     Defendants.                                    NOV  2000


**MEMORANDUM OPINION**

     This action is before the court on defendants' motion to sever (doc.1) and

plaintiffs' motion to remand (doc. 5).  This matter was taken up at the court's November

21, 200 motion docket.  The court having considered the motions, memorandum and oral

argument of the parties, the court is of the opinion said motion to remand is due to be

granted.

     Plaintiffs claims are all based upon injuries incurred as a result of taking the

prescription drug Rezulin.  These claims are made against the manufacturers of Rezulin,

Parke-Davis and Warner-Lambert, and the physician, Dr. Ralph Aquadro, who prescribed

Rezulin to Barry Pace.  Plaintiffs claims against the manufacturers are grounded in

1



**PLAINTIFF'S EXHIBIT**

tabbies

H

products liability. The claims against Dr. Aquadro allege that he failed to inform the

plaintiff of the dangers associated with Rezulin and he failed to monitor the plaintiff once

Rezulin dosage began. The plaintiffs allege joint and several liability. Defendants allege

that Dr. Aquadro, the sole Alabama resident, was improperly joined with the other

defendants, and on that basis, filed a notice of removal (doc. 1) to this court alleging

diversity existed, under 28 U.S.C. §1332.

28 U.S.C. §1332 requires complete diversity between all parties and all defendants

and that the controversy in question involve more than $75,000.00, exclusive of interest

and costs. *See* 28 U.S.C. sections 1332 and 1441(b)("Any other such action shall be

removable only if none of the parties in interest properly joined and served as defendants

is a citizen of the state in which such action is brought"); *see also Tapscott v. MS Dealer

Service Corp.*, 77 F.3d 1353, 1359 (11th Cir.1996).

The Eleventh Circuit has placed on the defendants the burden of showing that the

plaintiff has no possible cause of action under Alabama law, based upon the allegations

of the complaint. *Cabalceta v. Standard Fruit Company*, 883 F.2d 1553, 1562 (11th Cir.

1989) (where district court found "no possibility" that plaintiffs would be able to state a

colorable cause of action against the resident defendant). The removing party bears the

burden of proving that the joinder of the resident defendant was fraudulent. *Pacheco de

Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). *Triggs v. John Crump Toyota,

Inc.*, 154 F.3d 1284 (11th Cir. 1998); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th

Cir. 1983). Joinder has been deemed fraudulent in two situations. "The first is where

2

there is no possibility that the plaintiff can prove a cause of action against the resident defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The defendants here seem to allege that their claim of fraudulent joinder here falls under the first category – that the plaintiff is unable to state a cause of action against defendant Aquadro.

However, this court finds that under Rule 20, Federal Rules of Civil Procedure, that the standard for joinder of defendants is that "All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief arising out of the same transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." *See also* Rule 20, Alabama Rules of Civil Procedure. Furthermore, the Eleventh Circuit has stated that if there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court. *Triggs*, 154 F.3d at 1287; citing *Coker* 709 F.2d at 1440-41. The court then emphasizes in *Triggs* that the plaintiff need only a *possibility* of stating a valid cause of action in order for the joinder to be legitimate. The *Triggs* court concluded that "[i]f there is a joint liability [the plaintiff] has an absolute right to enforce it". *Triggs*, at 1291.

The court's determination of whether a defendant has been fraudulently joined must be made upon the plaintiff's pleadings at the time of removal. *Cabalceta*, 883 F.2d

3

at 1561, citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed.

334 (1939). This court must resolve all questions of fact and controlling law in favor of

the plaintiff. *Cabalceta*, 883 F.2d at 1561.

There is a clear possibility that the plaintiffs have stated a valid cause of action

against Dr. Aquadro. Defendants argue that plaintiffs have failed to state a cause of

action in light of the heightened pleading standard found in Alabama Code §6-5-551

(1993). This medical malpractice pleading standard is similar to the heightened pleading

standard for fraud. *Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993). The

purpose of the statute is to provide health care providers "fair notice of the allegedly

negligent act". *Mikkelsen*, at 1384. Plaintiffs allege Dr. Aquadro failed to give adequate

warning regarding the danger of Rezulin and that he failed to adequately monitor plaintiff

after the Rezulin dosage began. This court finds that this is possibly adequate notice for

purposes of Alabama Code §6-5-551.

The court also finds that the requirements for FRCP Rule 20 joinder has been met.

This case centers on  the manufacture, marketing, prescription and care involving the use

of the drug Rezulin. The plaintiffs claim that the defendants are jointly and severally

liable for the alleged injuries resulting from the use of this drug. As such there are

common questions of fact among these defendants and this case stems from one series of

transactions, the delivery and consequence of Rezulin use. Complete diversity is hereby

lacking and as such, this court is without jurisdiction.

In consideration of the foregoing, this court hereby **GRANTS** the plaintiffs'

4

motion to remand (doc. 5) and **DENIES** defendants' motion to sever (doc. 1).  It is

therefore **ORDERED** by the court that said case be and hereby is **REMANDED** to the

Circuit Court of Lauderdale County, from whence it was removed.

**DONE** and **ORDERED** this the _21_ day of November, 2000.


INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

5

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION



DONALD L. McCAFFERY

   **Plaintiff,**

v.            CV 00-PT-2848-M

**WARNER-LAMBERT COMPANY,**
**et al**

   **Defendants.**



## MEMORANDUM OPINION

This cause comes on to be heard on plaintiff's Motion to Remand filed on October 23, 2000. This judge does not subscribe to the philosophy of some district and appellate judges that diversity jurisdiction is to reluctantly be accepted. This judge certainly does not subscribe to the argument that it should be abrogated. On the other hand, this judge is bound to follow the law.

The basic thrust of the plaintiff's claim(s) in his complaint is that he was prescribed and ingested rezulin. It states: "As a result of the ingestion of rezulin, plaintiff incurred injuries." The complaint alleges that the "defendant Manufacturers" of rezulin committed various violations with reference to rezulin. The complaint further alleges that the defendant White improperly prescribed rezulin. There is no suggestion that the two claims are not connected.

Rule 20 of the Alabama Rules of Civil Procedure provides <u>inter alia</u>, "All persons may be joined in one action as defendants if there is asserted against them jointly, <u>severally</u>, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or <u>series of transactions or occurrences</u> and if <u>any</u> question of law or fact common to all defendants

will arise in the transaction." This is substantially the same as Rule 20 of the Federal Rules of Civil Procedure. The two causes of action were clearly properly joined.

The removing defendants suggest that since the allegations are somewhat inconsistent, the plaintiff cannot possibly recover against White. That argument is not consistent with the law or common sense. Defendants are often charged with inconsistently pleaded causes, either severally or alternatively.

The removing defendant further says that the plaintiff has not properly pleaded a cause of action against White. This judge cannot conclude that the plaintiff cannot possibly prevail against White on the allegations in the complaint. It would appear that White is on notice that he is charged with inappropriately prescribing the drug.

The Motion to Remand will be **GRANTED**.

This the 2 day of December, 2000.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 OCT 20 PH 3: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| PAMELA FLOYD, STACIE H. RICHARDS, and ANN RUTLEDGE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action Number 03-C-2564-M |
| WYETH, a corporation; STACY STUBBLEFIELD, an individual; MICHAEL T. SULLIVAN, an individual; and BETSY R. WEAVER, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

ENTERED
OCT 2 0 2003

REMAND ORDER

Because the removing Defendant has failed to carry its heavy burden of proof of fraudulent joinder, and the attendant lack of complete diversity of the parties, this case is hereby REMANDED to the Circuit Court of Marshall County, Alabama, from whence it was improvidently removed.

The costs of this action are hereby taxed against the removing Defendant.

Done this _____ day of October, 2003.

Chief United States District Judge
U.W. Clemon

PLAINTIFF'S
EXHIBIT
I

10

FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NOV 2 1 2003

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION    CLERK

U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

SHARON C. CRITTENDEN,      )
et al.,                    )
                           )
        Plaintiffs,        )
                           )
        v.                 )    CIVIL ACTION NO.
                           )    03-T-920-N
WYETH, a corporation,      )
et al.,                    )
                           )
        Defendants.        )

ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiffs' motion to remand. The court agrees with

plaintiffs that this case should be remanded to state

court. First, there has not been fraudulent joinder of any

resident defendant (that is, plaintiffs have colorable

claims against such a defendant), see Coker v. Amoco Oil

Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v.

Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

EOD  11/21/03

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motions to remand, filed on September 30 and October 15, 2003 (doc. nos. 9, 13, and 14), are granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 21st day of November, 2003.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHANIE TERRELL, et al.,          )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )          CV-03-BE-2876-S
                                    )
WYETH, et al.,                      )
                                    )
        Defendants.                 )
                                    )
                                    )
                                    )
                                    )

_MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT_

The case comes before the court on Plaintiff's Motion to Remand (Doc. 10). Having reviewed the pleadings and briefs of counsel, the court is not persuaded that the plaintiffs failed to state a viable claim against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and, therefore, the court is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on October 23, 2003 from the Circuit Court of Jefferson County, Alabama. Although the complaint purports to state claims against corporate defendants who admittedly are not Alabama residents, it also names as a defendant Pam Parker, admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441. Defendants argue, however, that Ms. Parker is fraudulently joined.

1

The standard for successfully removing a case from state to federal court is a high one, and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheco de Perez v. AT&T Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility to establish a cause of action against non-diverse defendants in state court, or (b) that the plaintiff's pleading of jurisdictional facts have been made fraudulently. Cabelceta, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." See Coker, 709 F.2d at 1440-41; see also Pacheco de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand*. See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (emphasis added). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

2

Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and timing of the injuries sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that the plaintiffs would not be successful in urging its various theories under Alabama law.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve *all* doubts in favor of remand, the Plaintiffs' Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Jefferson County, Alabama.

DONE and ORDERED this ___ day of December, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

3

01/23/2004 14:55 FAX 2052523606          K Stephen Jackson PC                    @006

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION FILED

·JAN 2 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

VALERIE BALLARD, et al.,        )
                                )
        Plaintiffs,             )
                              : )    CIVIL ACTION NO. 03-T-1255-N
        v.                      )
                                )
WYETH, et al.,                  )
                                )
        Defendants.             )

ORDER

This lawsuit, which was removed from state to federal court
based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§
1332, 1441, is now before the court on plaintiffs' motion to
remand. The court agrees with plaintiffs that this case should be
remanded to state court. First, there has not been fraudulent
joinder of any resident defendant (that is, plaintiffs have
colorable claims against such a defendant), see Coker v. Amoco Oil
Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard
Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any
resident defendant (that is, plaintiffs have reasonably joined such
a defendant with other defendants pursuant to Rule 20 of the
Federal Rules of Civil Procedure), see Tapscott v. MS Dealer
Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

12

EOD 1/23/04

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 6, 2004 (Doc. No. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2ᵗʰ day of January, 2004.

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

01/23 2004 14:55 FAX 2052523536          K Stephen Jackson PC                    ☒004

FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION JAN 23 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

RITA BRUNSON,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )     CIVIL ACTION NO. 03-T-1167-S
                                 )
WYETH, et al.,                   )
                                 )
        Defendants.              )

ORDER

This lawsuit, which was removed from state to federal court
based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§
1332, 1441, is now before the court on plaintiff's motion to
remand. The court agrees with plaintiff that this case should be
remanded to state court. First, there has not been fraudulent
joinder of any resident defendant (that is, plaintiff has colorable
claims against such a defendant), see Coker v. Amoco Oil Co., 709
F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co.,
883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any
resident defendant (that is, plaintiff has reasonably joined such
a defendant with other defendants pursuant to Rule 20 of the
Federal Rules of Civil Procedure), see Tapscott v. MS Dealer
Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

EOD  1/23/04

01/23/2004 14:55 FAX 2052523536          K Stephen Jackson PC                                    ☒006

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand, filed on December 16, 2003 (Doc. No. 11), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2oᵈ day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

01/23/2004 14:55 FAX 2052823535          N Stephen Jackson PC          ☒002
SENT BY: MORRIS & MCANNALLY L.L.C.;      304 589 1821;   JAN-23-04  2:26PM;   PAGE 2/3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

FILED

JAN 2 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA

SARA BLAIR, et al.,      )
                         )
    Plaintiffs,        : )
                         )      CIVIL ACTION NO. 03-T-1251-S
    v.                   )
                         )
WYETH, et al.,           )
                         )
    Defendants.          )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989),

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

EOD  January 23, 2004

01/23/2004 14:55 FAX 2052523636          K Stephen Jackson PC                    @003
SENT BY: MORRIS & MCANNALLY L.L.C.;       334 589 1821;      JAN-23-04  2:26PM;      PAGE 5/5

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on December 30, 2003 (Doc. No. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 23rd day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

04 JAN 30  PH 3: 46

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

DISTRICT COURT
N D. OF ALABAMA

|  |  |  |  |
|---|---|---|---|
| SANDRA STOREY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | CV-04-BE-27-E | **ENTERED** |
| | ) | | |
| WYETH, INC., WYETH | ) | | JAN 3 0 2004 |
| PHARMACEUTICAL, and | ) | | |
| ANTHONY CHERRY, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |
| | ) | | |

## MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT

The case comes before the court on the plaintiff's "Motion to Remand" (Doc. 5). Having reviewed the entirety of the pleadings and briefs of counsel, the court hereby GRANTS the motion to remand. The court is not persuaded that the plaintiffs failed to state a viable claim against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and, thus, is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on January 7, 2004, from the Circuit Court of Calhoun County, Alabama. Although the complaint purports to state claims against corporate defendants who admittedly are not Alabama residents, it also names as a defendant Anthony Cherry, admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441. Defendants argue, however, that Mr. Cherry is fraudulently joined.

The standard for successfully removing a case from state to federal court is a high one,

and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheco de Perez v. A.T.&T. Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility of establishing a cause of action against a non-diverse defendant in state court, or (b) that the plaintiff's pleading of jurisdictional facts has been made fraudulently. Cabelceta, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41; see also Pacheo de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand.* See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

Although whether the plaintiff will be able to successfully prove Mr. Cherry's liability is unclear, this court will not speculate that the plaintiff has *no* possibility of establishing its claims

of negligence and fraud against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, this court cannot make rash decisions regarding actions made by the defendants and their resulting consequences. Nor can the court conclusively determine that the plaintiff would not be successful in urging her various theories under Alabama law.

Similarly, the court is not prepared to conclude that the plaintiff's fraud claims should be struck for lack of specificity. While the complaint is indicative of a "form" pleading, it adequately informs the defendants of the nature of the fraud.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve all doubts in favor of remand, the Plaintiff's Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Calhoun County, Alabama.

DONE and ORDERED this 30 day of January, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

FILED

04 FEB -3 AH 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

SANDRA CASH,                    )
                                )
        Plaintiff,              )
                                )
                                )
                                )
vs.                        :    )    CIVIL ACTION NO. 03-RRA-3378-E
                                )
WYETH, et al.,                  )
                                )
        Defendants.             )

ENTERED 

FEB -3 2004

## MEMORANDUM OF DECISION

This action was removed from the Circuit Court of Calhoun County, Alabama. The plaintiff has filed a motion to remand. The complaint alleges that she suffered valvular heart disease as a result of taking the drug Pondimin or Redux. (The defendants state that the plaintiff took Pondimin only.) The question before the court is whether defendant Anthony Cherry, Wyeth's sales representative, was fraudulently joined as a defendant in order to defeat diversity jurisdiction.

Remand must be granted if there is a possibility that the state court would find that the plaintiff has stated a claim against the defendant in question. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). Evidence may be considered as well as the allegations in the complaint:

> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549. The federal court makes these determinations based on the plaintiff's pleadings at the



time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Growe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), *quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Along with other submissions, the defendants have submitted the affidavit of Cherry, and the plaintiff has presented the affidavit of her doctor, Omar Khalaf. The parties have not conducted discovery.

The complaint alleges the following against Cherry:

22. Upon information and belief the positive tortious acts which were committed by the Sales Rep Defendant in his individual and/or corporate capacity, include, but are not limited to, the following:

    a.    Sales Rep Defendant <u>failed to convey adequate warnings to the Plaintiff through the prescribing physician</u> set forth above regarding the risks of prescribing fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    b.    <u>Sales Rep Defendant was in the business of marketing,</u> promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™) which has caused harm to the Plaintiff SANDRA CASH;

    c.    Sales Rep Defendant <u>negligently distributed, marketed, advertised and/or promoted</u> the drugs fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    d.    Sales Rep Defendant made <u>fraudulent and reckless misrepresentations regarding the character, safety and efficacy</u> of the drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), and;

    e.    Sales Rep Defendant, <u>with knowledge of unreasonable risks</u> associated with the ingestion of fenfluramine (Pondimin®) and dexfenfluramine (Redux™), alone and/or in combination with phentermine <u>continued to make misrepresentations regarding the character, safety and efficacy</u> of drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), while providing and/or offering incentives, rebates, reimbursements, perks, and/or other consideration to Plaintiff's prescribing physician

2

in furtherance of attempting to influence the prescribing of said diet drugs.

23.   Defendant Anthony Cherry is a citizen of Calhoun County and is over nineteen years of age.  At all times material hereto, this Defendant was in the business of promoting, marketing , developing, selling and/or distributing the pharmaceutical drugs fenfluramine and/or dexfenfluramine in the State of Alabama and did market, develop, sell, detail and/or distribute said drugs to Plaintiff, Sandra Cash's prescribing physician, Omar Khalaf, M.D.  This defendant was also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiff.

*Complaint*, ¶¶22-23 (emphasis added). Thus, the complaint alleges that Cherry failed to warn of the dangers of Pondimin, negligently marketed and distributed this dangerous drug, recklessly and intentionally misrepresented its dangers, and conspired to conceal its dangers.

The defendants state that under Alabama law the plaintiff clearly cannot state a claim against Cherry.  They cite law holding that, absent personal participation, an employee is not liable for the negligence of his employer, that the fraud and conspiracy claims are not pled with particularity, and that a conspiracy claim fails when the claims underlying the conspiracy fail. Moreover, they factually contend that Cherry said nothing about Pondimin whatsoever. Relying on Cherry's affidavit, the defendants state that Cherry did not even promote Pondimin, that Wyeth composed warnings and other information concerning Pondimin for Cherry, who was not a part of that process, and that Cherry did not have the expertise to question the accuracy of any information supplied by Wyeth.  Cherry further states in his affidavit that he was unaware of any association between Pondimin and the heart disease of which the plaintiff complains, and he made no representation whatsoever concerning this

3

drug. The defendants assert in their written opposition to remand that this evidence is uncontroverted. However, Dr. Khalaf states that Cherry visited his office and "promoted and marketed" Pondimin, *Khalaf Affidavit*, ¶3, and that Cherry "continuously represented that [Pondimin and Redux] were safe and effective. Also, [Cherry] represented to [him] that the drugs were safe and effective for long term use," *id.* at ¶6.[1] Khalaf additionally states:

> The reliance I placed on Mr. Cherry and Mr. Lavender regarding safety issues for Pondimin and Redux was made even more critical by the fact that warnings to physicians prescribing Pondimin and Redux that these drugs could cause valvular heart disease were not contained in the Physicians' Desk Reference ("PDR") until the 1998 edition, which was after Pondimin and Redux were withdrawn from the market.

*Id.* at ¶7.

Whether to Defer to MDL Judge

The defendants want the court to allow this remand issue to go to the MDL court. In her motion to remand, the plaintiff responds that in an MDL hearing the judge "indicated a preference" for all remand motions to be handled by the various district courts. In their written opposition to remand, the defendants respond that a copy of the transcript of the 1998 hearing stating such "sentiments" has not been supplied by the plaintiff. The defendants, however, do not deny that the judge did, in fact, indicate such a preference.

The defendants refer to statements in an August, 2003 memorandum written by the MDL judge:

---

[1]Materials presented to the court by the defendants included information sent to Wyeth's sales force. In "Questions and Answers About Pondimin" and in the Pondimin "Fact Sheet" it is stated that Pondimin is for short-term use.

4

> [R]ecurrent issues have continued to emerge in connection with motions to remand to state courts cases removed by Wyeth on the basis of diversity of citizenship. We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts. Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203. :

This memorandum was addressing motions to remand all pending cases to the various transferor courts on the ground that the MDL had done its work. The court gave several reasons why the cases should not be remanded to the transferor courts, one of which was that, after all its work, the MDL had developed a "broader perspective than is usually available" to the transferor courts in dealing with motions to remand to state courts based on fraudulent joinder.

Also, the defendants cite *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990):

Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, *see In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988), and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years, *see In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 154-59 (2d Cir.1987) (describing history of proceedings before Judge Weinstein), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL

> Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending,
> *cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91
> L.Ed. 884 (1947) (district court has authority to issue injunction while jurisdictional
> questions are pending), that objection to be resolved by the transferee court.

*Id.* at 9. This language points out what lies at the heart of MDL litigation: common questions of law or fact.

The question of whether Cherry was negligent or made fraudulent statements is specific to this case. The MDL court would not be in a better position to decide remand than this court. Also, this court has heard oral argument and considered the parties' contentions. Wherefore, the court will exercise its discretion to decide the question of fraudulent joinder.

### Whether There Is Fraudulent Joinder

The defendants' argument against remand is premised upon the evidence being uncontroverted that Cherry did not promote or market or make any representation to Dr. Khalaf about Pondimin. If that were true, the motion to remand might be due to be denied. But there is clearly a factual dispute about what Cherry did and said, as Dr. Khalaf states that Cherry visited his office, promoted and marketed Pondimin, and represented that Pondimin was safe and effective for long-term use. Wherefore, there is at least a possibility that the plaintiff has a claim against Cherry.

### Decision

For the reasons stated above, the court has decided to exercise its discretion to decide

6

the remand issue, this is not a case of fraudulent joinder, and the motion to remand is due to be granted for lack of subject matter jurisdiction. An appropriate order will be entered.

DONE this _2nd_ day of February, 2004.

Robert R. Armstrong, Jr.
United States Magistrate Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEVENARI MARSHAL, DIANE POLITO, )
and MAXINE SMITHEY, )
)
Plaintiffs, )
)
vs. )   Case No. CV-04-TMP-179-S
)
WYETH, INC., WYETH )
PHARMACEUTICALS, INC., )
BEN LAVENDER, and WILLIAM OWEN, )
)
Defendants. )

## ORDER OF REMAND

This cause is before the court on the plaintiffs' emergency motion to remand, filed January 30, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

### Procedure History

Plaintiffs Marshal, Polito, and Smithey filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Lavender and Owen, in the Circuit Court of Jefferson County, Alabama, on December 30, 2003. It alleges claims for "strict liability (defective product)," "strict liability--failure to warn," "strict liability--failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs,

Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and heart valve defects. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, have suffered medical injuries due to that use. With respect to defendants Lavender and Owen, plaintiffs contend that these salesmen were one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with use of these medications and, further, that these defendants either innocently, negligently, or recklessly failed to reveal to physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on January 29, 2004, contending that the court has original diversity jurisdiction because Lavender and Owen, both Alabama residents, are fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Owen are not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

Fraudulent Joinder

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Owen are Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper,

2

and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Lavender and Owens were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Lavender and Owen did not sell or promote the drug Pondimin at all and that they knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender or Owen, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' B. Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).

Id. at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E.

3

Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ P. 56(b),' [B. Inc. v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco

4

Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

See also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.") Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Owen, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Owens misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians, reasonably relied upon such misrepresentations. It is unimportant that Lavender and Owen did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent

---

[1] Lavender and Owen have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. They reason from this and the fact that plaintiff Smithey took only Pondimin that there is no possibility that, at the very least, Smithey has any claim against them. They nonetheless admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979)

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Owen did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Lavender and Owen. There is a possibility that the plaintiffs can state a claim against them, as sales representatives who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Lavender and

Owen is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Owen are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

## Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this ___18___ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 24  AM 10: 15

U.S. _____ _____
N.D. __ _____

**ENTERED**

FEB 24 2004

ANN McGOWAN, BECKY PARTINGTON, )
and LAURA STANFIELD, )
)
Plaintiffs, )
)
vs. )
)
WYETH, INC., WYETH )
PHARMACEUTICALS, INC., )
BEN LAVENDER, and ANTHONY )
CHERRY. )
)
Defendants. )

Case No. CV-04-IMP-298-S

<u>MEMORANDUM OPINION AND ORDER OF REMAND</u>

This cause is before the court on the plaintiffs' emergency motion to remand, filed February 17, 2004, to which defendants responded with a motion to stay pending transfer to the MDL proceedings on February 19, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

<u>Procedure History</u>

Plaintiffs McGowan, Partington, and Stanfield filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Ben Lavender and Anthony Cherry, in the Circuit Court of Jefferson County, Alabama, on January 16, 2004. The complaint alleges claims for "strict liability–defective product," "strict liability–failure to warn," "strict liability–failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet

medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, they have suffered medical injuries due to that use. With respect to defendants Lavender and Cherry, plaintiffs contend that these salesmen were one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with the use of these medications and, further, that these defendants either innocently, negligently, or recklessly failed to reveal to physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court[1] on February 13, 2004, contending that the court has original diversity jurisdiction because Lavender and Cherry, both Alabama residents, are fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Cherry are not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

---

[1] There has been a spate of these removals in the last few weeks. The undersigned himself has dealt with two earlier removals in Marshal, et al., v. Wyeth, Inc., et al., CV-04-TMP-179-S, and Johnson, et al., v. Wyeth, et al., CV-04-TMP-224-S. Consequently, the court is thoroughly familiar with the positions and arguments of the parties

2

<u>Fraudulent Joinder</u>

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Cherry are Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction; the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Lavender and Cherry were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Lavender and Cherry did not sell or promote the drug Pondimin at all and that they knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender or Cherry, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' <u>B. Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

<u>Id.</u> at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.

3

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co.; 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a *winning* case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits . . . of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Cherry misrepresented certain material facts about the risks associated with use of Pondimin[2] and Redux and that plaintiffs,

---

[2] Lavender and Cherry have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Lavender's and Cherry's liability. They admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must

5

through their physicians, reasonably relied upon such misrepresentations.  It is unimportant that Lavender and Cherry did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs.  Alabama law recognizes an action for innocent or negligent misrepresentation as well as for reckless and intentional misrepresentations.  For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation.  The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud.  Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986).  Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud.  Mid-State Homes. Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Cherry did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama.  As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

---

undertake.

6

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Lavender and Cherry. There is a possibility that the plaintiffs can state a claim against them, as sales representatives who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Lavender and Cherry is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Uncertainties must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Cherry are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

## Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to

the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775

(2003).

    The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

    DONE this _____ day of February, 2004.

                        T. MICHAEL PUTNAM
                        UNITED STATES MAGISTRATE JUDGE

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 23  PH 3: 34

U S DISTRICT COURT
N D OF ALABAMA

| | | |
|---|---|---|
| JUANITA JOHNSON, LORETTA SUE KERCE, MYRTICE D. MILLS, VICKI N. PARSONS, DEENA L. PHILLIPS, LINDA J. PIPER, BRENDA J. ROTH, ALLISON L. WEST, | ) ) ) ) ) ) | **ENTERED** FEB 23 2004 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CV-04-TMP-224-S |
| WYETH, a corporation; DAVID WURM, an individual, et al, | ) ) ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND REMAND ORDER</u>

This cause is before the court on the plaintiffs' motion to remand and for sanctions (Doc. 8) filed February 10, 2004, as well as defendant Wyeth's motion to stay pending transfer to the Multi-District Litigation court (Doc. 10), filed February 17, 2004. For the reasons expressed below, the court finds that the motion for remand is due to be granted, the motion for sanctions denied, and the motion for a stay denied.

<u>Procedure History</u>

Plaintiffs filed their joint complaint against defendants Wyeth and one of Wyeth's pharmaceutical salesmen, David Wurm, in the Circuit Court of Jefferson County, Alabama, on January 5, 2004. They allege claims under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") and for product liability–failure to warn, breach of the implied warranty of

merchantability, negligence, wantonness, fraud, misrepresentation, and suppression, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, have suffered medical injuries due to that use. With respect to defendant Wurm, plaintiffs contend that this salesmen was one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with use of these medications and, further, that he either innocently, negligently, or recklessly failed to reveal to plaintiffs' physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on February 4, 2004, contending that the court has original diversity jurisdiction because Wurm is fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their motion to remand that Wurm is not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

2

Fraudulent Joinder

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Wurm, a pharmaceutical representative employed by Wyeth and its predecessor, American Home Products, Inc., is an Alabama resident and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Wurm was fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, his presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Wurm did not sell or promote the drug Pondimin at all and that he knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against Wurm, making his joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a "heavy one." B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).

Id. at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of

3

his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

> To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See Id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

> More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

4

For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendant, Wurm, in the form of a negligent fraud claim. To state such a possible claim, the plaintiffs need only allege that Wurm misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians,

---

[1] Wurm has filed an affidavit in which he states that he never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Wurm's liability. Wurm admits that when questioned by physicians about Pondimin, he attempted to provide answers based on the information he received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that he made misstatements about the risks of using Pondimin, as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

reasonably relied upon such misrepresentations. It is unimportant that Wurm did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Wurm did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *he* knew, his innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Wurm. There is a possibility that the plaintiffs can state a claim against him,

6

as a sales representative who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Wurm is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11ᵗʰ Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11ᵗʰ Cir. 1998). Because Wurm, a non-diverse defendant, is not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

## Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

7

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _25th_ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

8

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 04 FEB 27 AM 8:30
MIDDLE DIVISION

U.S. DISTRICT COURT
N D OF ALABAMA

RHONDA P. BRADFORD, et al.,　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Case No.: CV 03-P-3157-M
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
WYETH, et al.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

**ENTERED**

FEB 27 2004

## ORDER

Pending before the court are several motions including Plaintiffs' Motion to Remand (Doc. #10) filed on December 22, 2003, and Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) filed on February 25, 2004.

On February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, Judge Wm. Terrell Hodges, sent a letter to all judges, including the undersigned, involved with MDL-1203—*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation.* In this notice, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

With this directive from the Judicial Panel in mind and based upon the analysis set forth in recent related remand decisions by other judges of this court, Plaintiffs' Motion to Remand is GRANTED, and this case is REMANDED to the Circuit Court of Etowah County. *See, e.g., Martha M. Davis v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-

36

TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevemari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Accordingly, Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) is GRANTED IN PART as to the request for a ruling and DENIED IN PART as to the request for an emergency hearing. Plaintiffs' Motion for Sanctions (Doc. #10) is DENIED, Defendants' Motion to Stay (Doc. #23) filed on January 21, 2004, is DENIED. The various pending motions to strike (Docs. #24, #27, #29, #32) are MOOT. Defendants' Motion to Amend Answer (Doc. #16) filed on January 13, 2004, remains pending and will be transferred back with the court file to the Circuit Court of Etowah County.

DONE and ORDERED this _____26th_____ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

04 FEB 27 PM 3:26

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN W. SMITH,

    Plaintiff,

v.

WYETH, et al.,

    Defendants.

)
)
)
)
)
)
)
)
)

Case No.: CV 04-P-226-M.

**ENTERED**

FEB 2 7 2004

ORDER

On February 16, 2004, the court entered an Order staying this litigation pending action by the Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine (Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis set forth in recent related remand decisions by other judges of this court, the stay is LIFTED, Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is GRANTED, and this case is REMANDED to the Circuit Court of DeKalb County. *See, e.g., Martha M. Davis v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal. et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is DENIED.

DONE and ORDERED this ___27th___ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT  04 FEB 27  AM 10: 28
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

BOUDREAUX, et al.,                    )
                                      )
        Plaintiffs,                   )
                                      )
                                      )      Case No.: CV 04-P-227-M
v.                                    )
                                      )      **ENTERED**
WYETH, et al.,                        )
                                      )      FEB 27 2004
        Defendants.                   )

## ORDER

On February 18, 2004, the court entered an Order staying this litigation pending action by the Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine /Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis set forth in recent related remand decisions by other judges of this court, the stay is LIFTED, Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is GRANTED, and this case is REMANDED to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is DENIED.



02/27/2004 13:21 FAX 2052523636          K Stephen Jackson PC                          ☒004

DONE and ORDERED this ___*27th*___ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED

04 MAR -2 PM 3:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

MILDRED BRIDGES,

    Plaintiff,

v.

WYETH, et al.,

    Defendants.

CIVIL ACTION NO.
04-AR-0297-J

ENTERED

MAR 02 2004

## ORDER OF REMAND

For the separate and several reasons articulated by Honorable Inge Johnson of this court in *Davis v. Wyeth, et al*, CV-03-J-3167-J, and by other judges of this court in similar cases, this court finds that it lacks subject-matter jurisdiction over the above-entitled removed case. The court is not prepared to express the belief that there is no reasonable possibility that Alabama courts will allow the joinder of an agent of a manufacturer as a defendant in an Alabama Extended Manufacturer's Liability Doctrine (AEMLD) case. See the muddy water stirred by *Tillman v. R. J. Reynolds Tobacco Co.*, ___ So. 2d ___, 2003 WL 21489707 (Ala.). Accordingly, the motion to remand filed by plaintiff, Mildred Bridges, is GRANTED, pursuant to 28 U.S.C. §1447(c), and the above-entitled case is hereby REMANDED to the Circuit Court of Walker County, Alabama, from which it was improvidently removed.

Defendant, Wyeth, has, in the alternative, requested a certification for interlocutory appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b). Upon reflection, the court is

just as unwilling attempt to pass off to the Eleventh Circuit this
serious question of Alabama law as it is to pass it off to the
Multi-District Panel.

The Clerk is DIRECTED to effectuate this order.

The parties shall bear their own respective costs in this
court.

DONE this ___2nd___ day of March, 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 MAR -5 PM 2:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEBRA HOUGH, et al.,            )

    PLAINTIFF,                 )

VS.                            )            CV-04-H-393-S

WYETH, et al.,             :   )            ENTERED

    DEFENDANTS.                )            MAR 0 5 2004

ORDER OF REMAND

    The court has before it plaintiffs' emergency motion to remand filed March 2, 2004 and the response thereto of Wyeth filed on March 4, 2004 titled "Wyeth's Motion to Stay to Allow Transfer to the Multi-District Litigation Proceeding." Wyeth's motion includes a memo addressing the merits of a possible stay, and in paragraph one of Wyeth's motion counsel discusses a number of cases out of the three district courts in Alabama confronted with the same or a related issue with which this court is confronted. It is interesting to note that none of the ten very recent orders of Judges Clemon, Johnson, Bowdre, Proctor, and Acker, and Magistrate Judges Putnam and Armstrong of the Northern District of Alabama listed in footnote 3, infra, are included in the otherwise exhaustive list of relevant cases. The court also

has before it plaintiffs' opposition to Wyeth's motion to stay.[1]

It is clear to the undersigned that jurisdictional issues in a removed case should be decided as quickly as possible. The failure to do so may allow an improperly removed case to languish for many, many months before being remanded to state court.[2] Where a motion to remand is founded only on a claim of fraudulent joinder as is the circumstance before this court,[3] the motion can be resolved quickly. The court is to consider whether the removing party has met the onerous burden[4] of showing that "there

---

[1] Interestingly, plaintiff's opposition was filed on March 2, 2004 in "anticipation" of defendant's March 4, 2004 motion.

[2] It is not irrelevant that on February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, District Judge Wm. Terrell Hodges, sent a letter to all judges involved with MDL-1203 - In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation. In this letter, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

[3] Plaintiff's emergency motion to remand is based on the same issue recently addressed by the following judges in this district: Chief Judge U.W. Clemon (CV-03-C-2564-M), Judge William Acker (CV-04-AR-0297-J), Judge Karon Bowdre (CV-03-BE-2B76-S and CV-04-BE-27-E), Judge Inge Johnson (CV-03-J-3167-J), Judge David Proctor (CV-03-P-3157-M and CV-04-P-226-M), Magistrate Judge Robert Armstrong (CV-03-RRA-3378-E), and Magistrate Judge Michael Putnam (CV-04-TMP-179-S and CV-04-TMP-298-S). All of these judges have entered remand orders in factually similar cases to the one with which this court is presented. However, the application of the law pertinent to removal and fraudulent joinder is particularly well stated in Judge Putnam's orders of remand, and therefore it is Magistrate Putnam's orders to remand which this court follows most closely.

[4] The standard facing the removing party is an onerous one because absent fraudulent joinder, plaintiffs have the absolute right to choose their forum.

is no possibility that the plaintiff can establish a cause of action against the resident defendant."⁵ _Crowe v. Coleman_, 113 F.3d 1536, 1538 (11ᵗʰ Cir. 1997). The merits of the claim against a diversity destroying defendant must not be weighed by the federal court; rather the task for the court is merely to determine whether the claim against a non-diverse defendant is a possible one under applicable state law. See _id._ The court must find joinder proper and remand to state court if there is any possibility that, on the facts as pled, the complaint states a cause of action against any non-diverse defendant. See _Coker v. Amoco Oil Co._, 709 F.2d 1433, 1440-41 (11ᵗʰ Cir. 1983) (emphasis added).

For the foregoing reasons, Wyeth's motion to stay is DENIED. And upon review of the record, the court is persuaded that under Alabama law the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry.⁶

---

⁵ The removing party may also succeed in a claim for fraudulent joinder by proving that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." _Crowe_, 113 F.3d at 1538. Defendant Wyeth does not attempt to show fraudulent joinder by use of this second method.

⁶ Lavender and Cherry have given affidavits stating that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted the drug Pondimin. They also state that they never assembled, created, designed, distributed, labeled, made, manufactured, packaged, sold, sterilized, supplied, tested, or warranted the drug Redux. They assert that they were not aware of any alleged association between Pondimin and Redux and/or valvular heart disease until the time such an allegation was publicized.

Therefore, plaintiff's emergency motion to remand is GRANTED and this case is REMANDED to the Circuit Court of Blount County, Alabama for all further proceedings.

DONE this ___5th___ day of March, 2004.

_James W. Hancock_
SENIOR UNITED STATES DISTRICT JUDGE

---

Nevertheless, Lavender and Cherry's alleged innocent misrepresentations understating the risks associated with the use of the combination of drugs for weight loss constitutes a possible cause of action under Alabama law. See Ala. Code § 6-5-101 (Michie 1993); see also Ala. Pattern Jury Instructions Civil, 2d., APJI 18.03 (1993).

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION    FILED

MAR  8 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

EARLENE BROGDEN, et al.,,    )
                            )
          Plaintiffs,       )
                            )
     v.                     )    CIVIL ACTION NO.
                            )    04-T-068-S
WYETH, a corporation,       )
et al.,                     )
                            )
          Defendants.       )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand.  The court agrees with plaintiffs that this case should be remanded to state court.  First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been fraudulent misjoinder of any

EOD  3·8·04

21

resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 30, 2004 (doc. no. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

FILED

MAR 8 2004

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

JOAN REEDER,                    )
                                )
        Plaintiff,              )
                                )
        v.                      )        CIVIL ACTION NO.
                                )        04-T-066-N
WYETH, a corporation,           )
et al.,                         )
                                )
        Defendants.             )

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiff's motion to remand.  The court agrees with
plaintiff that this case should be remanded to state court.
First, there has not been fraudulent joinder of any
resident defendant (that is, plaintiff has colorable claims
against such a defendant), see Coker v. Amoco Oil Co., 709
F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard
Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).  Second,
there has not been fraudulent misjoinder of any resident

EOD  3/8/04

defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motions to remand, filed on January 30, 2004 (doc. no. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Elmore County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

WILMA SUE EATON, et al.,    )
                         )
    Plaintiffs,         )
                         )      Case No.: CV 04-P-380-M
v.               :     )
                         )
WYETH, et al.,         )
                         )
    Defendants.     )

**ENTERED**
MAR – 9 2004

## ORDER

This case is before the court on Plaintiffs' Emergency Motion to Remand (Doc. # 9) filed on February 27, 2004; Defendant Wyeth's Motion for Entry of Briefing Schedule (Doc. # 10) filed March 2, 2004; and Defendant Wyeth's Motion to Stay to Allow Transfer to the Multi-District Litigation Proceeding (Doc. # 11) filed on March 4, 2004. Plaintiffs' motion is GRANTED, and this case is REMANDED to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc , et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17). Defendant Wyeth's motions for entry of briefing schedule (Doc. # 10) and motion to stay (Doc. # 11) are DENIED.



DONE and ORDERED this ____8th____ day of March, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


KIM ALLEN, et al.,                )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )        CIVIL ACTION NO.
                                  )          2:04cv0238-T
WYETH,                            )
et al.,                           )
                                  )
        Defendants.               )

ORDER

This lawsuit, which was removed from state to
federal court based on diversity-of-citizenship
jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before
the court on plaintiffs' motion to remand. The court
agrees with plaintiffs that this case should be remanded
to state court. First, there has not been fraudulent
joinder of any resident defendant (that is, plaintiffs
have colorable claims against such a defendant), see
Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.
1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on March 12, 2004 (doc. no. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 9th day of April, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

EUNICE CHESTNUT, et al.,       )
                               )
        Plaintiffs,            )
                               )
        v.                     )     CIVIL ACTION NO.
                               )     1:04cv0295-T
WYETH,                         )
et al.,                        )
                               )
        Defendants.            )

                            ORDER

       This lawsuit, which was removed from state to

federal court based on diversity-of-citizenship

jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before

the court on plaintiffs' motion to remand.  The court

agrees with plaintiffs that this case should be remanded

to state court.  First, there has not been fraudulent

joinder of any resident defendant (that is, plaintiffs

have colorable claims against such a defendant), see

Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.

1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on April 1, 2004 (doc. no. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 3th day of May, 2004.

/s/ Myron H. Thompson

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

LONNE KING, et al.,        )
                           )
    Plaintiffs,            )
                           )
    v.                     )    CIVIL ACTION NO.
                           )      2:04cv0409-T
WYETH, INC., etc.,         )
et al.,                    )
                           )
    Defendants.            )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 1), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

BARBARA CULPEPPER, et al.,     )
                               )
        Plaintiffs,            )
                               )
    v.                      :  )     CIVIL ACTION NO.
                               )       2:04cv0411-T
WYETH, INC.,                   )
et al.,                        )
                               )
        Defendants.            )

<u>ORDER</u>

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand.  The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 10), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Montgomery County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
JERRY BRADEN, et al.,          )
                               )
        Plaintiffs,            )
                               )
    v.                         )      CIVIL ACTION NO.
                               )        1:04cv0384-T
WYSTH, etc.,                   )
et al.,                        )
                               )
        Defendants.            )
```

ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiffs' motion to remand.  The court agrees with

plaintiffs that this case should be remanded to state court.

First, there has not been fraudulent joinder of any resident

defendant (that is, plaintiffs have colorable claims against

such a defendant), see Coker v. Amoco Oil Co., 709 F.2d

1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit

Co., 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there

has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on April 27, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Coffee County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE



03/29/2004 16:03 FAX 2052520536        K Stephen Jackson. PC                    ☒ 001

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

M. REBECCA CROSS, et al.,                    )
                                             )
          Plaintiffs,            :           )
                                             )
                                             )      CIVIL ACTION NO.
     v.                                      )      03-0882-BH-M
                                             )
WYETH, et al.,                               )
                                             )
          Defendants.                        )

ORDER

This action is before the Court on plaintiffs' motion (Doc. 14) to reconsider and to lift the stay imposed on February 19, 2004 (Doc. 13), and thus to reverse the Court's prior denial of plaintiffs' motion to remand (Docs. 6 and 7). Upon consideration of the parties' oral arguments presented on March 15, 2004, as well as those set forth in Wyeth's Supplemental Response (Doc. 19), and all other pertinent portions of the record, the Court concludes that plaintiffs' motion to reconsider is due to be granted because the Court lacked jurisdiction at the outset to enter an order denying plaintiffs' motion to remand and in imposing a stay until the action could be transferred for consolidation with the pending MDL-1203 case.

As recognized by other federal Courts in Alabama, the grounds upon which Wyeth contends that the Wyeth Sales Representatives Paul Windham and John Lund have been fraudulently joined go to the merits of plaintiffs' claims against these individual resident

03/29/2004 16:03 FAX 2052520506          K Stephen Jackson PC                    ☒ 002

defendants, which is not a proper inquiry for this Court, rather than the viability of the

claims themselves.[1] See e.g., *Martha M. Davis v. Wyeth, et al.*, Civil Action No. CV 03-J-

3167-J (N.D. Ala. February 25, 2004)(J. Johnson). See also, *Michael Hall, et al. v.*

*Wyeth, et al.*, Civil Action No. CV 04-J-0434-NE (N.D. Ala. March 9, 2004)(J. Johnson);

*Smith v. Wyeth et al.*, Civil Action No. CV 04-P-226-M (N.D. Ala. February 27, 2004)(J.

Proctor); *Sharon C. Crittenden, et al., v. Wyeth, et al.*, Civil Action No. 03-T-920-N

(M.D. Ala. November 21, 2003)(J. Thompson); *Pamela Floyd, et al., v. Wyeth, et al.*, Civil

Action No. 03-C-2564-M (N.D. Ala. October 20, 2003)(J. Clemon); *Haleb v. Merck &*

*Co., Inc., et al.*, Civil Action No. CV 03-AR-1026-M (N.D. Ala. June 26, 2003) (J. Acker).

This Court cannot declare at this juncture of the litigation that "there is no possibility that

the plaintiff[s] can prove a cause of action against the resident (non-diverse) defendant[s],"

a prerequisite to any declaration that the resident defendants were fraudulently joined.

*Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). See also, *Triggs v. John*

*Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)("The plaintiff need not have a

winning case against the allegedly fraudulent defendant; he need only have the possibility of

stating a valid cause of action in order for the joinder to be legitimate.").

    For the above stated reasons, it is ORDERED that the Orders entered by this Court

on February 5, 2004 (Doc. 11) denying plaintiffs' motion to remand and February 19, 2004

---

[1]Consequently, Wyeth's reliance on such cases as *Fisher v. Comer Plantation, Inc.* 772
So.2d 455 (Ala. 2000), and *Speigner v. Howard*, 502 So.2d 367 (Ala. 1987), is misguided because
they were decided on the merits on motions for summary judgment following the completion of
discovery

2

03/29/2004 16:03 FAX 2052523536          K Stephen Jackson PC                                    ☑003

(Doc. 13) granting Wyeth's motion to stay, be and are hereby VACATED AND SET ASIDE. In lieu thereof, it is now ORDERED that plaintiffs' motion to remand (Doc. 6) be and is hereby GRANTED. The Clerk is directed to take such steps as are necessary to transfer this case back to the Circuit Court of Dallas County, Alabama, from whence it was removed.

As a final matter, the Court acknowledges that plaintiffs' motion to remand also contained a motion for sanctions against Wyeth. The Court concludes, however, that sufficient questions existed concerning the appropriateness of removal, as evidenced by this Court's initial decision to deny remand, to preclude the requisite finding that the removal in this case was not only improvident but done in bad faith. It is therefore ORDERED that plaintiff's motion for sanctions be and is hereby DENIED.

DONE this 29th day of March, 2004.

                                                    s/ W. B. Hand
                                                    SENIOR DISTRICT JUDGE

3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| VICTORIA BENNETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:04cv0416-T |
| WYETH, INC., etc., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiffs' motion to remand.    The court agrees with

plaintiffs that this case should be remanded to state court.

First, there has not been fraudulent joinder of any resident

defendant (that is, plaintiffs have colorable claims against

such a defendant), see Coker v. Amoco Oil Co., 709 F.2d

1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit

Co., 883 F.2d 1553, 1561 (11th Cir. 1989).    Second, there

has not been fraudulent misjoinder of any resident defendant.

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Crenshaw County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2nd day of June, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE