## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT BLANKENSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | 2:06-cv-0648-MHT |
| PFIZER, INC., BOEHRINGER | ) | |
| INGELHEIM PHARMACEUTICALS, | ) | |
| INC., DAVID ROHLING, KMART OF | ) | |
| MICHIGAN, INC., ART REDDING, | ) | |
| KELLI STRANGE, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") respectfully submits this Brief in opposition to plaintiff's Motion to Remand.  Plaintiff has sought to evade federal jurisdiction by joining two non-diverse individuals, one a BIPI sales representative and the other a pharmacist, against whom he has no valid cause of action under Alabama law.  The Court should deny plaintiff's Motion to Remand because these two non-diverse defendants have been fraudulently joined.

Plaintiff's joinder of pharmaceutical sales representative David Rohling and pharmacist Kelli Strange is fraudulent because none of his claims against them can possibly succeed under Alabama law.  Defendant Strange performed a single act with regard to plaintiff and Mirapex®: she dispensed an FDA-approved medication in accordance with a physician's instructions. Under Alabama law, Strange cannot face liability for such activity.  Plaintiff does not allege that Strange improperly filled the prescription.  Rather, he alleges that she failed to warn about an

alleged association between Mirapex® and compulsive gambling. Because Alabama law imposes no duty to warn on a pharmacist when the prescription is regular and valid on its face, plaintiff has no valid cause of action under Alabama law against Strange. *Walls v. Alpharma USPD*, 887 So.2d 881, 886 (Ala. 2004); *Lansdell v. American Home Products Corp.*, 1999 WL 33548541 (N.D. Ala. Oct. 26, 1999); *Sanks v. Parke-Davis*, 2000 WL 33910097 (M.D. Ala. 2000).

In addition, plaintiff's claims against David Rohling, a BIPI sales representative, are invalid under Alabama law because he is not a seller or manufacturer of Mirapex® and because pharmaceutical sales representatives have no duty to warn under recent and controlling authority. First, AEMLD claims are only valid against sellers or manufacturers of a product, and Rohling is neither; rather, he is a sales representative who merely detailed the product. Second, controlling law on the issue of duty in a failure to warn claim plainly instructs that any duty to warn was owed by BIPI, not Rohling, an individual employee. In the recent case of *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), the court emphasized this important point and at least two other Alabama District Courts have adhered to this decision. *See Gordon v. Pfizer, Inc.*, No. CV-06-RRA-70-E, 2006 WL 2337002 at * 7 (N.D. Ala. May 22, 2006); *Southern v. Pfizer, Inc.*, Case No.: 2:06-CV-836-VEH at *9-*15 (N.D. Ala. June 23, 2006). This Court should apply current law, and deny plaintiff's motion to remand.

Because plaintiff's claims against Strange and Rohling have no reasonable possibility of succeeding under current Alabama law, this Court should deny plaintiff's motion to remand and retain jurisdiction over this case.

## **BACKGROUND**

In this pharmaceutical products liability action, plaintiff alleges he ingested the pharmaceutical medication Mirapex® which caused him to develop compulsive gambling and

incur substantial financial losses. Plaintiff asserts claims under the Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD") and for negligence, wantonness and fraud against the two companies responsible for manufacturing, marketing and distributing Mirapex®, BIPI and Pfizer Inc. ("Pfizer"), and a BIPI sales representative named David Rohling. *See* Complaint. Plaintiff's Complaint asserts the same four claims against Kmart of Michigan, Inc. ("Kmart"), the pharmacy which allegedly filled plaintiff's prescriptions for Mirapex®, and two of its pharmacists, Art Redding and Kelli Strange. BIPI, Pfizer, Kmart and Redding are all non-residents, therefore subjecting this action to federal diversity jurisdiction. Defendants Rohling and Strange, who are alleged to be Alabama residents, were fraudulently joined as defendants in an attempt to defeat diversity jurisdiction.[1]

In support of their timely removal petition, the defendants submitted affidavits from Kelli Strange and David Rohling. In her affidavit, Strange testified that as a Kmart pharmacist, she did not develop, test, compound or manufacture Mirapex® and had no knowledge of any alleged defects in the product. *Strange Aff. ¶¶ 4-7.* To the extent Strange did dispense Mirapex® to plaintiff, she testified that she did so in accordance with the instructions from plaintiff's physician. *Strange Aff. ¶ 3.*

In his affidavit, Rohling testified that he is a sales representative for BIPI and has had no involvement in the manufacturing or development of Mirapex® or in the preparation of the warnings and other prescribing information that accompanies the product. *Rohling Aff. ¶¶ 3, 6 & 9.* Rohling testified that he has no medical or pharmaceutical training and that any knowledge he obtained about Mirapex® was provided by BIPI. *Rohling Aff. ¶¶ 5 &7.* In addition, Rohling

---

[1] Since the initial filing of the Complaint, plaintiff has voluntarily dismissed his claims against defendant Kmart. In addition, defendant Redding is not alleged to be a resident of Alabama and as a result, has not been fraudulently joined. The claims against Redding, however, should be dismissed on the same grounds that defendant Strange has been fraudulently joined.

stated that he has made no misrepresentations concerning the safety or efficacy of Mirapex® and acted in good faith at all times in his dealings with physicians.  *Rohling Aff. ¶ 11.*

Although plaintiff submitted his own affidavit and an affidavit from his physician, Dr. Alan Prince, in support of his Motion to Remand, neither affidavit refutes or contradicts the evidence presented by the defendants.  *See generally,* Affidavit of Robert Blankenship and Affidavit of Dr. Alan Prince (attached to plaintiff's Brief in Support of Motion to Remand at Exhibits D & E).  Moreover, Dr. Prince never even identifies Rohling.  Instead, Dr. Prince refers to multiple "drug representatives" and "Mirapex detailers."  Dr. Prince does not testify that he ever met Rohling or had any discussions with him about Mirapex®, much less that Rohling made any misrepresentations to him.  Dr. Prince's testimony merely states:

> During the entire time that Mr. Blankenship was taking the drug, I would periodically meet with drug representatives who represented the manufacturer of Mirapex.  I was not aware of any association between Mirapex and compulsive behavior including compulsive gambling.  Shortly before taking Mr. Blankenship off of Mirapex, which he had been on for approximately five and one-half years, one of the Mirapex detailers told me that there was an association between compulsive gambling and the use of the drug Mirapex.

Affidavit of Dr. Alan Prince.  This testimony in no way contradicts Rohling's affidavit.

As a result, plaintiff is left only with his allegation that defendants Rohling and Strange failed to disclose to plaintiff and/or Dr. Prince, the alleged association between Mirapex® and compulsive gambling.  Because Defendants Rohling and Strange had no legal duty to disclose such information, however, they have been fraudulently joined to this action and should be ignored in determining whether diversity jurisdiction exists.

01377848.1

<u>**ARGUMENT**</u>

**THE COURT HAS DIVERSITY JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE EACH NON-DIVERSE DEFENDANT HAS BEEN FRAUDULENTLY JOINED.**

**I.      <u>Fraudulent Joinder Standard</u>**

The fraudulent joinder of corporate employees has become a common tactic in pharmaceutical litigation by plaintiffs who seek to avoid federal court. It is well-settled that "diversity jurisdiction 'cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *3 (M.D. Ala. Dec. 19, 2005). Removal of this suit should not be thwarted by plaintiff's attempt to join improperly defendants Rohling and Strange in order to destroy diversity jurisdiction. As the Supreme Court has stated, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court… ." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

Under Eleventh Circuit law, fraudulent joinder can be established in one of three ways:

(1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant, or (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, or (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Here, there is no possibility that plaintiff can prove any of his claims against defendants Rohling or Strange. The possibility of recovery against the non-diverse defendants must be reasonable, not merely theoretical. *Bloodsworth*, 2005 WL 3470337 at *4. "The potential for legal liability must be reasonable, not merely theoretical. In considering *possible* state law claims, possible must mean

'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg*, 428 F.3d at 1325 n.5 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) and *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004)).

## II.    **Defendant Kelli Strange Has Been Fraudulently Joined and Does Not Destroy Diversity Jurisdiction.**

Plaintiff's Complaint asserts all four counts against defendant Kelli Strange (AEMLD, negligence, wantonness and fraud). Kelli Strange is a pharmacist employed by Kmart who allegedly filled plaintiff's prescriptions for Mirapex®. Even assuming that Strange did fill plaintiff's Mirapex® prescriptions, plaintiff's Complaint fails to state any claim under which there is a reasonable basis to impose liability on Strange under Alabama law.

Plaintiff's only claim against defendant Strange is that she, as the pharmacist that filled plaintiff's Mirapex® prescriptions, failed to warn plaintiff and/or his physician about an alleged association between Mirapex® and compulsive behaviors. Plaintiff's Complaint, however, does not allege that Strange improperly filled any Mirapex® prescriptions. Strange has submitted an affidavit in which she attests that to the extent she dispensed Mirapex® to plaintiff, she did so strictly in accordance with the prescription of his physician. *Strange Aff., ¶ 3.*

Under Alabama law, a pharmacist is under no duty to warn a customer about the potential side effects of a pharmaceutical product when filling a prescription that is valid and regular on its face. *Walls*, 887 So.2d at 886. So long as the pharmacist dispenses a prescription drug in accordance with the instructions of the prescribing physician, the learned intermediary doctrine protects the pharmacist from liability as a matter of law. *Id.; Lansdell v. American Home Products Corp.*, 1999 WL 33548541 (N.D. Ala. Oct. 26, 1999); *Sanks v. Parke-Davis*, 2000 WL

33910097 (M.D. Ala. Oct. 30, 2000) (finding that the defendant pharmacy had been fraudulently joined where plaintiff merely claimed that the pharmacy failed to warn plaintiff about drug's side-effects because under Alabama law, pharmacies owe no such duty).  The rule applies whether the pharmacist is sued under the AEMLD, a negligence theory, or any other Alabama law.  *Walls*, 887 So.2d at 886.

Plaintiff's efforts to minimize the holdings in *Walls* and *Lansdell* lack merit.  Contrary to plaintiff's contentions, because the pharmacist has no duty to warn customers about the potential side effects of pharmaceutical products, the controlling issue is whether the pharmacist dispensed the prescription drug in accordance with the physician's instructions; not whether the pharmacist had knowledge of the alleged risks.  *See Walls*, 887 So. 2d at 886.  Plaintiff incorrectly relies on *Pace v. Parke–Davis*, No: 3:00-3046 (N.D. Ala. Nov. 21, 2000) (Johnson, J.) and *McCaffery v. Warner-Lambert Co.*, et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.) to support this argument.  Plaintiff's Brief at p. 19 n.4.  Contrary to plaintiff's assertions, neither the *Pace* nor the *McCaffery* cases involved claims against a pharmacist.  In both *Pace* and *McCaffery*, the courts held that the joinder of the plaintiff's non-diverse prescribing physicians to the action did not constitute fraudulent joinder.  Neither *Pace* nor *McCaffery* address the issues presented here.

As plaintiff has not alleged, much less established, that defendant Strange failed to properly dispense Mirapex® to plaintiff in accordance with his physician's prescription, plaintiff has no reasonable possibility of imposing liability against Strange based on the AEMLD or his negligence, wantonness or fraud claims.

Additionally, plaintiff states no cause of action against Strange under the Alabama Medical Liability Act ("AMLA"), which subsumes all claims against a "healthcare provider" in the course of the healthcare relationship.  *See* Ala. Code § 6-5-542 (1987); *Ex parte Rite Aid of*

*Alabama, Inc.*, 768 So.2d 960, 962 (Ala. 2000); *Cackowski v. Walmart*, 767 So.2d 319, 324 (Ala. 2000); *Mobile Infirmary v. Delchamps*, 642 So.2d 954 (Ala. 1994); *Allred v. Shirley*, 598 So.2d 1347 (Ala. 1992). The only cause of action available to a plaintiff under the AMLA is for breach of the standard of care. Ala. Code § 6-5-542(2) (1987).

Plaintiff has failed to allege any breach of any standard of care by defendant Strange and fails to offer any evidence of any breach, as required by the AMLA. Alabama Code § 6-5-551 (1987). Thus, on its face, the complaint makes no legally cognizable claim against Strange. For this additional reason as well, Strange is fraudulently joined and due to be dismissed.

Lastly, plaintiff's claims against Strange fail as a matter of law because he cannot show any causal relationship between her conduct and the defects of which plaintiff complains. Strange did not develop, test, compound or manufacture Mirapex®, had no knowledge of any alleged defective condition of Mirapex®, and did not contribute to the alleged defect. *Strange Aff., ¶¶4-7.* As such, plaintiff has no claim against Strange under Alabama law. *See Fleming Farms v. Dixie AG Supply, Inc.*, 631 So. 2d 922, 928 (Ala. 1994) (affirming summary judgment for distributor on AEMLD claim where distributor received product from manufacturer in a sealed container, received the product in its already defective condition and did not contribute to the defect, had no knowledge of the defective condition, and had no opportunity to inspect the product that was greater than that of the consumer's).

## III.    Defendant Rohling Has Been Fraudulently Joined and Should Be Dismissed.

### A.    David Rohling Cannot Be Considered a "Seller" or "Manufacturer" Under the Facts of This Case And Thus Cannot Be Held Liable Under The AEMLD.

The first count of plaintiff's Complaint seeks recovery under the AEMLD. The AEMLD provides plaintiffs with a cause of action against "a manufacturer, or supplier, or seller, who

01377848.1

markets a product not reasonably safe when applied to its intended use in the usual and customary manner, [thereby] constitut[ing] negligence as a matter of law." *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 132 (Ala. 1976). There is no reasonable basis to predict that plaintiff can prevail on such a claim because the AEMLD applies only to "sellers" and "manufacturers" and Rohling cannot, under the specific facts and allegations in this case, be considered either.[2]

Because the purpose of the AEMLD is to place the burden of loss on those with the authority to control the sale and distribution of products and who are in a better position to compensate for losses caused by defective products, liability under the AEMLD has not been extended to sales representatives. *See In re Baycol,* MDL 1431 *4-*5 (D. Minn. Mar. 26, 2004). The manufacturer or seller of the product, rather than an individual sales representative, has the authority to prevent the sale and distribution of products and is in the best position to shoulder the financial burden for losses caused by defective products. *Id.* Many Alabama state court decisions support the proposition that sales representatives cannot face liability as sellers under the AEMLD. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (noting that, to state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product.").

In addition, federal courts interpreting Alabama law have held that a sales representative cannot be held liable under the AEMLD. *See, e.g.*, *Gordon v. Pfizer, Inc.*, 2006 WL 2337002, * 7 (N.D. Ala. May 22, 2006); *Southern v. Pfizer, Inc.*, Case No.: 2:06-CV-836-VEH at *9-*15 (N.D. Ala. June 23, 2006); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 287-88 (S.D.N.Y. 2001) ("The sales representative  . . . neither manufactured, sold nor supplied [the

---

[2] Plaintiff has also offered no evidence that Rohling is a "supplier" of Mirapex®. As established in his unrefuted affidavit, Rohling never supplied or left samples of Mirapex® with plaintiff's physician. *Rohling Aff., ¶ 12.*

drug] . . . [but] was an agent of the manufacturer and seller. . . .  In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."); *In re Baycol Prods. Liab. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing liability of a professional representative under the AEMLD); *In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, *1 (E.D. Ark. Mar. 8, 2006) ("[T]here is no possibility that plaintiff can establish a claim against the sales representative under the AEMLD.") (citing *Bloodsworth*, 2005 WL 3470337, at *6).

In *In re Rezulin*, the court held that there was no reasonable basis to suppose that an Alabama court would impose liability on a sales representative because such an individual was not in a position to prevent the sales of defective drugs.  *In re Rezulin*, 133 F. Supp. 2d at 288. *See also Bloodsworth*, 2005 U.S. Dist. Lexis 38756 at *17-*22.  Similarly, in *In re Baycol Prods. Litig.*, the plaintiffs asserted AEMLD claims against the manufacturer and several of its district managers and sales representatives.  The case, which was initially filed in Alabama state court, was removed to federal court and transferred to the United States District Court for the District of Minnesota.  The defendants argued that joinder of the non-diverse district managers and sales representatives constituted fraudulent joinder.  In denying plaintiffs' motion to remand, the court studied the history of the AEMLD and held that its purposes would not be advanced in any way by holding sales representatives individually liable.  *In re Baycol*, MDL 1431 at *4-*5.

The court's holding in *Gordon* is the most instructive.  In *Gordon*, the plaintiff sued the manufacturer and its sales representative for alleged defects in the prescription drug Bextra he ingested.  The case was initially filed in state court and removed to the United States District Court for the Northern District of Alabama by the defendants who contended that the non-diverse sales representative had been fraudulently joined.  In denying the plaintiff's remand

motion, the court concluded that plaintiff had no reasonably possible claim against the sales representative under the AEMLD even though the sales representative had detailed the product to plaintiff, a self-prescribing physician, based on the information provided to him by Pfizer, his employer. *Gordon*, 2006 WL 23370002 at *7. The court reinforced that the AEMLD only applies to sellers and manufacturers and that sales representatives or "detailers" do not fit these categories. *Id.* The court noted that sales representatives, who have no personal involvement in the manufacture, sale, design, testing or development of the products they detail, cannot be held liable under the AEMLD. *Id.*

Here, plaintiffs do not even allege that Rohling had any involvement whatsoever in the sale or distribution of Mirapex®. Indeed, in his supporting and unrebutted affidavit, Rohling states that he had no involvement in the manufacture, development or testing of Mirapex® or in the development or preparation of the prescribing information, package inserts and other written warnings for the product. *Rohling Aff., ¶¶ 6 & 8.* In addition, as a BIPI sale representative, Rohling obtained all his information about Mirapex® from BIPI. *Rohling Aff., ¶ 7.* Contrary to the unsupported allegations in plaintiff's brief (plaintiff's Brief at p. 5), Rohling had no obligation and was not expected to conduct independent research regarding Mirapex®. *Rohling Aff., ¶ 10.* Lastly, at no time did Rohling make any misrepresentations about Mirapex® to Dr. Prince, or any other physicians who may have prescribed Mirapex®. *Rohling Aff., ¶ 11.* As discussed, plaintiff's motion papers do not offer any evidence refuting these facts.

Plaintiff's reliance on *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999) and *Seaborn v. R.J. Reynolds Tobacco Co.*, 1996 WL 943621 (M.D. Ala. Dec. 30, 1996) is also misplaced. Plaintiff's Brief at p. 16. In both *Clay* and *Seaborn*, the non-diverse individuals and entities named by the plaintiff had allegedly been involved in the sale and/or

distribution of the defective products. There are no allegations here that defendant Rohling had any involvement in the actual sale or distribution of Mirapex®.[3] In addition, both *Clay* and *Seaborn* pre-date the Eleventh Circuit's decision in *Legg*.

Given these undisputed facts, plaintiff has no reasonable possibility of stating a claim against Rohling under the AEMLD because Rohling does not qualify as a "seller" or "manufacturer" of Mirapex®.

### B.    Plaintiff Does Not Have a Valid Negligence, Wantonness or Fraud Claim Against Defendant Rohling as He Did Not Owe Plaintiff a Duty to Disclose.

The final three counts of plaintiff's Complaint assert claims of negligence, wantonness and fraud against all of the defendants, including defendant Rohling. As already discussed, plaintiff's only contention is that the defendants failed to warn plaintiff and/or his physician about the alleged association between Mirapex® and compulsive behaviors. Plaintiff offers no evidence that Rohling made any affirmative statements, improper or otherwise, to plaintiff or his physician.

The issue surrounding plaintiff's negligence, wantonness and fraud claims is whether Mr. Rohling can be held personally liable for failure to disclose an alleged defect. It is well established under Alabama law, however, that corporate employees are not held strictly liable for the wrongdoing of their corporation. "In order to hold an officer of a corporation personally liable for the negligent or wrongful acts of the corporation, there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983)

---

[3] Plaintiff's reliance on *Pace* and *McCaffery* to support the argument that there is a possibility of imposing liability on a sales representative under the AEMLD is misplaced. *Plaintiff's Brief at p. 17*. Contrary to plaintiff's assertions, neither the *Pace* nor the *McCaffery* cases involved claims against sales representatives. As discussed earlier, both *Pace* and *McCaffery* dealt with whether the joinder of the plaintiff's non-diverse prescribing physicians was fraudulent.

(emphasis added) (quoting from FLETCHER'S CYCLOPEDIA OF CORPORATIONS § 1137 at 208 (1975)). In *Crigler*, the Alabama Supreme Court upheld a verdict against the officer of a corporation that had converted the plaintiffs' grain, finding that the officer had personally authorized, directed or actively participated in the conversion. *Crigler*, 438 So. 2d 1380.

With respect to products, the duty to provide warnings and risk information lies with the product manufacturer, not the sales representative. Indeed, plaintiff's Brief acknowledges this. Plaintiff's Brief at p. 17. ("In this case, BIPI had the duty to warn Robert Blankenship of the dangers in association with the drug."). In *Montgomery Rubber & Gasket Co. Inc. v. Belmont Machinery Co.*, 308 F.Supp.2d 1293, 1299 (M.D. Ala. 2004), this Court granted summary judgment in favor of a seller's agent on a suppression claim. The Court found that Plaintiff had not alleged or presented any evidence of any special circumstance that would give rise to a duty to disclose on the part of the seller's agent. *Id.*

In *Bloodsworth*, Judge Dement found that there was no reasonable basis under Alabama law to support a claim for failure to warn, whether predicated on allegations of negligence or wantonness. *Id.* at *7. The Court reasoned that pursuant to the learned intermediary doctrine as adopted under Alabama law, any duty to warn is owed by the manufacturer to the doctor, not by the sales representative. *Id.* ("Any duty to warn is owed by Smith & Nephew to the surgeon who performed Mrs. Bloodsworth's procedures at issue; the duty is not owed by [the sales representative]." *Id.* Moreover, the Court stated that it was inclined to agree that if plaintiff's fraudulent suppression claim was premised solely upon a failure to warn, that that claim would also have no reasonable basis. *Id.*

Similarly, in *Gordon*, the sales representative established that he was not a physician or pharmacist and that all information he obtained about the risks and benefits of the product he

detailed came from his employer. *Gordon*, 2006 WL 2337002 at *4-*5. As a result, the court held that because plaintiff failed to prove that the defendant sales representative had any unique or specialized knowledge or information about the product, beyond what was provided to him by his employer, the defendant did not owe plaintiff a duty to warn. *Id.* at *9.

The facts in *Gordon* are analogous to those presented here. Rohling has certified that he is not a physician or a pharmacist. *Rohling Aff., ¶ 5*. Rohling has also certified that any knowledge he obtained about the risks and benefits of Mirapex® was provided to him by BIPI. *Rohling Aff., ¶ 7*. Plaintiff has offered no evidence to refute these proofs. The Eleventh Circuit made clear in *Legg* that district courts must consider affidavit testimony in determining whether parties have been fraudulently joined. *Legg*, 428 F.3d at 1323 ("In the case at bar, the Defendants submitted sworn affidavits that were undisputed and, in such a case, a court cannot resolve a question of fraudulent joinder by refusing to consider the defendants' submissions."). The Court further found that where plaintiff offers no evidence to dispute a sworn statement submitted by defendants, the district court cannot remand the case based only on the allegations in the complaint. *Id.* ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint.").

Given these unrefuted facts, plaintiff's legal argument that Rohling had unique or specialized knowledge about Mirapex® which imposed upon him an independent duty to warn, is unsupported. That duty to disclose--as admitted by Plaintiff--is with the drug manufacturer. To hold otherwise would be to hold an individual employee to be the guarantor of the accuracy and completeness of written warnings, even though he had no involvement in their preparation

01377848.1

(nor the skills and background to do so).  As a result, plaintiff has no legally valid negligence, wantonness or fraud claim against defendant Rohling.

### C.    Under *Legg v. Wyeth* and Its Progeny, Plaintiff Does Not Have a Valid Fraud Claim Against Defendant Rohling

The Eleventh's Circuit's holding in *Legg v. Wyeth* precludes any possibility that plaintiff has a valid fraud claim against Rohling.  In *Legg*, plaintiffs asserted several claims against the pharmaceutical manufacturer Wyeth and several of its sales representatives in connection with the pharmaceutical Redux.  *Legg*, 428 F.3d at 1319.  Among other claims, plaintiffs asserted claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to Redux.  *Id.* at 1324.  Wyeth removed the case on diversity grounds, arguing that plaintiff had fraudulently joined non-diverse sales representatives.  *Id.* at 1319.  Wyeth supported its removal with the affidavits of its non-diverse sales representatives, which stated in pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. . . . I had no involvement in the development or preparation of package inserts for any drugs, and had no control over content or other written warnings.  I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Id.* at 1321.

To contradict the affidavits offered by the defendants, plaintiffs offered as evidence voluminous training materials used by Wyeth and its sales representatives in marketing Redux, as well as affidavits from several physicians stating that the sales representatives had made representations to them.  *Legg*, 428 F.3d at 1321.  Plaintiffs argued that the training materials they offered as evidence established: (1) that the sales representatives had knowledge of adverse

events associated with Redux; and (2) that Wyeth prohibited its sales representatives from disclosing this information to anyone outside the company, including prescribing physicians.

In addressing the district court's remand of the case in light of all the evidence presented, the Eleventh Circuit held that:

> Quite simply, there is no reasonable basis to predict that an Alabama court would find [the sales representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the sales representative] either knew or should have known of Redux's allegedly dangerous effects.

*Id.* at 1324-25. The court elaborated on this point explaining that a fraud claim is untenable against a pharmaceutical sales representative absent a showing of bad faith because the sales representative is merely a conduit through which information is passed. *Id.* at 1324. In the case at hand, there is no evidence that Rohling acted in bad faith.

In his motion to remand, plaintiff relies on many pre-*Legg* decisions and implores the Court to ignore the Eleventh Circuit's clear holding in *Legg*. Contrary to plaintiff's contentions, *Legg* does provide valid and persuasive authority on whether a fraud claim against a non-diverse sales representative can defeat diversity jurisdiction. Simply because the *Legg* decision was handed down in response to an appeal dealing with an award of costs and fees caused by a removal petition does not negate the soundness and validity of the Eleventh Circuit's reasoning. Because remand decisions are not appealable to the Circuit Courts, it is necessary for a Circuit Court wishing to provide guidance on removal issues to do so in deciding supplemental issues.

In addition, the Eleventh Circuit's decision in *Legg* has been accepted and applied by several federal courts which have held that simply alleging fraud against sales representatives does not defeat diversity jurisdiction. In *Southern*, for instance, plaintiff alleged that the defendant sales representatives committed fraud by promoting Neurontin for off-label uses and failing to disclose known risks. In opposition to plaintiff's remand motion, one of the sales

representatives certified that she never promoted the product for off-label uses and that all of the information she obtained about the product was obtained from her employer. *Southern*, Case No 2:06-CV-836-VEH at *5-*6. Relying on *Legg*, the court held that because the sales representative was a mere conduit for the pharmaceutical company, plaintiff's fraud claim could not possibly survive in state court. *Id.* at *17.

The court's holding in *Gordon* on this issue is directly on point. In *Gordon*, the plaintiff claimed that he suffered a heart attack as a result of ingesting Bextra. Plaintiff brought suit against the manufacturer and one of its sales representatives alleging several causes of action including fraud. Plaintiff's fraud claim was based on the contention that the manufacturer and its sales representative failed to disclose that the drug could potentially cause heart attacks. The suit was initially filed in Alabama state court but was removed to the United States District Court for the Northern District of Alabama. In support of the defendants' removal petition, the sales representative submitted an affidavit which established, among other things, the he had no medical or pharmaceutical education and that all his information about the risks and benefits of Bextra was limited to the FDA-approved information that Pfizer provided to him.

In denying plaintiff's motion to remand, the court addressed the validity of plaintiff's fraud claim under the facts and in light of the *Legg* decision. The court explained:

> Without any competent evidence that [the sales representative] made knowing misrepresentations or acted in bad faith – and particularly in light of [the sales representative's] statement that he had no specialized knowledge about Bextra and relied entirely on information provided to him by Pfizer – there is no 'reasonable probability' that an Alabama court would conclude that he is liable for fraud or misrepresentation.

*Id.* at *6.

The facts presented by Rohling's affidavit are analogous with those presented to the courts in *Southern* and *Gordon*. Plaintiff has offered no evidence that Rohling made any

17

knowing misrepresentations about Mirapex® or acted in bad faith. In addition, Rohling has testified that he has no medical or pharmaceutical background and that any knowledge he has gained about the risks and benefits of the product was provided exclusively by BIPI. *Rohling Aff., ¶¶ 5 & 7.* Plaintiff offers no evidence establishing that Rohling had any specialized knowledge about Mirapex®. In light of these undisputed facts, there is no "reasonable possibility" that an Alabama court would conclude that Rohling is liable for fraud or misrepresentation.

**D.    Plaintiff Fails to Plead His Fraud Claim With Particularity to Satisfy Fed. R. Civ. P. 9(b).**

Plaintiff also cannot prevail on his fraud claim because he has failed to plead fraud with particularity. *Fed. R. Civ. P. 9(b)* (requiring that allegations of fraud be stated with particularity); *Ala. R. Civ. P. 9(b)* (stating that the Alabama rule is identical to the federal rule). Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv. Inc.*, 131 F.Supp.2d 1296, 1302 (M.D.Ala. 2001). Plaintiff's Complaint merely lumps all the defendants together and fails to attribute any specific conduct to defendant Rohling individually. Nor does the Complaint describe one alleged conversation that occurred between plaintiff's physician and Rohling. The Complaint fails to identify any particular representation by Rohling, much less a time, date and place when this alleged fraud occurred. Even the affidavits submitted by plaintiff in support of his Motion to Remand do not cure this deficiency. As a result, the Complaint fails to meet the requirements of Fed. R. Civ. P. 9(b). *Gordon*, 2006 WL 23370002 at *6-*7 (denying plaintiff's remand motion, in part, because plaintiff failed to plead his fraud claims against the defendant sales representative with sufficient particularity including the time, date and place of the alleged misrepresentations).

01377848.1

## CONCLUSION

For the foregoing reasons, Defendant Boehringer Ingelheim Pharmaceuticals, Inc. respectfully request that the Court deny plaintiff's Motion to Remand.


/s/Maibeth J. Porter
MAIBETH J. PORTER
ALVIN L. ("PECK") FOX
EDWARD A. ("TED") HOSP
MARCIE P. BRASWELL

Attorneys for Defendant Boehringer Ingelheim
Pharmaceuticals, Inc.


OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
Attorneys at Law
Suite 2400 AmSouth/Harbert Plaza
1901 Sixth Avenue, North
Birmingham, Alabama  35203-2602
Telephone:  (205) 254-1000
Telecopier:  (205) 254-1999


Ms. Beth S. Rose
Mr. Stuart M. Feinblatt
Ms. Jennifer Ewers Hurley
SILLS CUMMIS EPSTEIN & GROSS, P.C.
One Riverfront Plaza
Newark, N.J.  07102

01377848.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon the following counsel of record to this proceeding by United States Mail, properly addressed and postage prepaid, or as indicated below, this 21st day of August, 2006:

Mr. J. Gregory Allen
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

Mr. L. Shane Seaborn
Penn & Seaborn, LLC
P. O. Box 688
Clayton, AL 36016-0688

Mr. F.M. "Tripp" Haston, III
Andrew B. Johnson
Bradley Arant Rose & White LLP
One Federal Place
1819 5th Ave. North
Birmingham, AL 35203

Mr. Philip F. Hutcheson
Boardman, Carr, Weed & Hutcheson, P.C.
400 Boardman Dr.
Chelsea, AL 35043-8211

/s/Maibeth J. Porter
OF COUNSEL

01377848.1